SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389)
jmeer@seyfarth.com
Romtin Parvaresh (SBN 301554)
rparvaresh@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendants
BEAVER-VISITEC INTERNATIONAL
HOLDINGS, INC. and BEAVER-VISITEC
INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CHARKY, | Case No. _____ |
| Plaintiff, | (Los Angeles Case No. 25STCV08581) |
| v. | **DECLARATION OF ROMTIN PARVARESH IN SUPPORT OF DEFENDANTS BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC. AND BEAVER-VISITEC INTERNATIONAL, INC.'S NOTICE OF REMOVAL** |
| BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC., a Delaware corporation, dba BVI Medical; BEAVER-VISITEC INTERNATIONAL, INC,, a.Massachusetts corporation, dba BVI Medical; CARA MACDONALD STUART, an individual; RYAN MIKULICH, an individual; LINDSAY LANDENBURG, an individual; DARIN DIXOND, an individual; and DOES 1-10, inclusive, | Date Action Filed: March 25, 2025 |
| Defendants. | |

DECL. OF ROMTIN PARVARESH ISO BVI DEFENDANTS' NOT. OF REMOVAL

317468848v.1

I, Romtin Parvaresh, declare and state as follows:

1.    I have personal knowledge of the facts contained in this declaration, and if called as a witness, could and would testify as to their accuracy.

2.    I am an attorney licensed to practice before this Court and the courts of the State of California. I am an attorney in the Los Angeles office of the law firm of Seyfarth Shaw LLP, and am one of the attorneys responsible for representing Defendants Beaver-Visitec International Holdings, Inc. and Beaver-Visitec International, Inc. (collectively, the "BVI Defendants") in the above-captioned lawsuit. All of the pleadings in this lawsuit are maintained in our office in the ordinary course of business under my direction and control.

## I.    FILINGS AND OTHER PAPERS IN STATE COURT PROCEEDINGS

3.    On March 25, 2025, Plaintiff John Charky ("Plaintiff") filed an unverified Complaint in the Superior Court of the State of California for the County of Los Angeles ("Los Angeles Superior Court"), entitled "*JOHN CHARKY, an individual; Plaintiff, vs. BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC., a Delaware corporation, dba BVI Medical; BEAVER-VISITEC INTERNATIONAL, INC., a Massachusetts corporation, dba BVI Medical; CARA MACDONALD STUART, an individual; RYAN MIKULICH, an individual; LINDSAY LANDENBURG, an individual; DARIN DIXOND, an individual; and Does 1-10, inclusive, Defendants*" which was designated as Case No. 25STCV08581 (the "Complaint"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

4.    On March 27, 2025, Defendant Beaver-Visitec International Holdings, Inc.'s registered agent for service of process received, via process server, a packet containing the Summons, Additional Parties Attachment, Complaint, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum and Statement of Location, Alternative Dispute Resolution (ADR) Information Package, and Notice of Case Assignment (collectively, the "Initial Packet"). A true and correct copy of the Initial Packet received by Defendant Beaver-Visitec International Holdings, Inc. is attached hereto as **Exhibit B.**

1

DECL. OF ROMTIN PARVARESH ISO BVI DEFENDANTS' NOT. OF REMOVAL

5.      On March 27, 2025, Defendant Beaver-Visitec International, Inc.'s registered agent for service of process received, via process server, the Initial Packet. A true and correct copy of the Initial Packet received by Defendant Beaver-Visitec International, Inc. is attached hereto as **Exhibit C**.

6.      On April 23, 2025, the BVI Defendants filed their Answer to the Complaint in Los Angeles Superior Court. A true and correct copy of the BVI Defendants' Answer is attached hereto as **Exhibit D**. A conformed copy has not yet been issued by the clerk.

7.      Before filing this Notice of Removal, the BVI Defendants have not received or filed any other pleadings or papers, other than those described as Exhibits A through D, in this action.

## II.    STATUS OF SERVICE OF THE INDIVIDUAL DEFENDANTS

8.      Plaintiff has named four individuals as defendants in this lawsuit, in addition to the BVI Defendants. The four individual defendants are Cara MacDonald Stuart, Ryan Mikulich, Lindsay Ladenburg, and Darin Dixon (collectively, the "Individual Defendants").

9.      I have no information indicating that Plaintiff has effected service of the Summons and Complaint on any of the Individual Defendants.

10.     On April 25, 2025, I checked the Los Angeles Superior Court's online docket for this action. Based on the online docket, Plaintiff has not filed any proof that Plaintiff has effected service of the Summons and Complaint on any of the Individual Defendants.

## III.   RESIDENCE OF DEFENDANTS LINDSAY LADENBURG AND DARIN DIXON

11.     On April 25, 2025, I conducted a search of Defendant Lindsay Ladenburg on LinkedIn, a leading social media platform for professional networking and career development. Ms. Ladenburg's LinkedIn profile shows a location of Houston, Texas. A true and correct copy of Ms. Ladenburg's profile downloaded from LinkedIn is attached hereto as **Exhibit E**.

2

DECL. OF ROMTIN PARVARESH ISO BVI DEFENDANTS' NOT. OF REMOVAL

317468848v.1

12.    On April 25, 2025, I conducted a search of Defendant Darin Dixon on LinkedIn. Mr. Dixon's LinkedIn profile shows a location of Mapleton, Utah. A true and correct copy of Mr. Dixon's profile downloaded from LinkedIn is attached hereto as **Exhibit F**.

## IV.    ANTICIPATED ATTORNEYS' FEES IN THIS LAWSUIT

13.    I have been licensed to practice law since December 2014. Over the past five years, I have represented employers in dozens of employment lawsuits. I anticipate depositions being taken in this case, and that ultimately, the BVI Defendants will file a Motion for Summary Judgment. Based on my experience, attorneys' fees in employment discrimination and wrongful termination cases often exceed $75,000. In this regard, it is more likely than not that the fees will exceed $75,000 through discovery and a summary judgment hearing, and the fees would certainly exceed $75,000 if the case proceeds to trial.

## V.    VERDICT REPORTS IN CALIFORNIA INVOLVING CLAIMS SIMILAR TO THOSE ALLEGED IN THIS LAWSUIT

14.    True and correct copies of verdict reports for discrimination cases entered in favor of plaintiffs in California where damages exceeded $75,000 are attached hereto as **Exhibit G**. I obtained these reports from Westlaw.

15.    True and correct copies of verdict reports for cases that have awarded emotional distress damages in excess of $75,000 in cases involving claims for discrimination are attached hereto as **Exhibit H**. I obtained these reports from Westlaw.

16.    True and correct copies of verdict reports for cases that have awarded attorneys' fees in excess of $75,000 in cases involving claims for discrimination are attached hereto as **Exhibit I**. I obtained these reports from Westlaw.

17.    True and correct copies of verdict reports for cases that have awarded punitive damages in excess of $75,000 in cases involving claims for discrimination are attached hereto as **Exhibit J**. I obtained these reports from Westlaw.

3

DECL. OF ROMTIN PARVARESH ISO BVI DEFENDANTS' NOT. OF REMOVAL

## VI.    PLAINTIFF'S SETTLEMENT DEMAND

18.    On July 16, 2024, I received a settlement demand from counsel representing Plaintiff. In this letter, counsel offered to settle Plaintiff's claims for $250,000. A true and correct copy of this settlement demand is attached hereto as **Exhibit K**.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on April 25, 2025 at Los Angeles, California.

*/s/ Romtin Parvaresh*
ROMTIN PARVARESH

4

DECL. OF ROMTIN PARVARESH ISO BVI DEFENDANTS' NOT. OF REMOVAL

317468848v.1

# EXHIBIT A

**MUCH SHELIST, P.C.**
Isaac R. Zfaty, State Bar No. 214987
Jonathan D. Yank, State Bar No. 215495
660 Newport Center Drive, Suite 900
Newport Beach, CA 92660
Telephone: 949.767.2200
Facsimile: 949.385.5355
IZfaty@muchlaw.com
JYank@muchlaw.com

Attorneys for Plaintiff JOHN CHARKY

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/25/2025 11:45 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Tarasyuk, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JOHN CHARKY, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC., a Delaware corporation, dba BVI Medical; BEAVER-VISITEC INTERNATIONAL, INC., a Massachusetts corporation, dba BVI Medical; CARA MACDONALD STUART, an individual; RYAN MIKULICH, an individual; LINDSAY LANDENBURG, an individual; DARIN DIXOND, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 25STCV08581<br><br>**COMPLAINT**<br><br>**(1)  PROMISSORY FRAUD**<br><br>**(2)  AGE DISCRIMINATION**<br><br>**(3)  FAILURE TO PREVENT DISCRIMINATION**<br><br>**(4)  WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>[Demand for Jury Trial included herein] |

MUCH SHELIST, P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

Plaintiff JOHN CHARKY ("Plaintiff"), an individual, complains and alleges as follows:

### THE PARTIES AND VENUE

1. Plaintiff is an individual who, at the time of the acts complained of herein, resided in Los Angeles County, California.

2. Defendant BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC. ("BVI Holdings"), dba BVI Medical, is a Delaware corporation registered to conduct and conducting business in the State of California, including in the County of Los Angeles.

3. Defendant BEAVER-VISITEC INTERNATIONAL, INC. ("BVI, Inc."), dba BVI Medical, is a Massachusetts corporation registered to conduct and conducting business in the State of California, including in the County of Los Angeles.

4. BVI Holdings and BVI, Inc., are hereinafter jointly referenced as "BVI."

5. Defendant CARA MACDONALD STUART ("Stuart") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter. Ms. Stuart's position at BVI was Director of Human Resources. As Director of Human Resources, Ms. Stuart was a managing agent of BVI.

6. Defendant RYAN MIKULICH ("Mikulich") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter. Mr. Mikulich's position at BVI was Surgical Sales Manager. As Surgical Sales Manager, Mr. Mikulich was a managing agent of BVI.

7. LINDSAY LANDENBURG ("Landenburg") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter. Ms. Landenburg's position at BVI was Director of Sales. As Director of Sales, Ms. Landenburg was a managing agent of BVI.

8. DARIN DIXON ("Dixon") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter. Mr. Dixon's position at BVI was National Sales Manager. As National Sales Manager, Mr. Dixon was a managing agent of BVI.

///

- 1 -
COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

9. Hereinafter, Defendants Stuart, Mikulich, Landenburg, and Dixon are referred to jointly as "the Individual Defendants."

10. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 20, inclusive, are unknown to Plaintiff, which therefore sues said Defendants by such fictitious names. When Plaintiff ascertains the true names and capacities of said fictitiously named Defendants, he will ask leave of this Court to amend his Complaint by setting forth the same.

11. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, each of the fictitiously-named Defendants, was and now is an agent, servant, representative, and/or alter ego of at least one of the specifically-named Defendants and/or the other fictitiously-named Defendants and, in doing the things alleged herein, was acting within the scope of its authority as its agent, servant, employee, representative, and/or alter ego with the permission and consent of at least one of the other specifically named and/or fictitiously named Defendants.

12. At all times herein mentioned, each of the Defendants named in the caption of this Complaint, were and are the agents and/or employees of each of the other defendants, and all of the things alleged to have been done by said Defendants were done in the capacity of and as agents of the other Defendants.

13. Unless otherwise stated, the use of the term "Defendants" herein shall refer to all above-referenced Defendants, including DOES 1-20.

14. Venue of this action is proper in the County of Los Angeles, California, as the wrongful acts and omissions of Defendants at issue in this action occurred within the County. Additionally, Defendants BVI Holdings and BVI, Inc., conduct business within the County.

## ADMINISTRATIVE EXHAUSTION

15. Plaintiff has satisfied all administrative prerequisites to filing and pursuing the present lawsuit. Plaintiff—through counsel—filed a charge of discrimination with the California Civil Rights Department (the "Department") on March 6, 2025. The Department issued Plaintiff a "Right-to-Sue" letter on March 6, 2025.

- 2 -
COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

**<u>DEFENDANTS LURE PLAINTIFF FROM ALCON</u>**

**<u>WITH PROMISES OF INCOME AND SUPPORT</u>**

16. In the early Fall of 2021, Plaintiff was successfully and gainfully employed as a Surgical Equipment Manager for Alcon Surgical ("<u>Alcon</u>"), selling surgical capital equipment and disposables to Ophthalmologists and Ophthalmological practice groups in surgery centers and hospitals in Los Angeles County. Plaintiff had worked in sales for Alcon for nearly thirty (30) years.

17. During his long tenure with Alcon, Plaintiff built a stellar reputation for himself and generated deep-rooted relationships with his customers, including some 250 Ophthalmologists who purchased four different generations of Phacoemulsification ("<u>Phaco</u>") systems utilized in cataract surgery.

18. Alcon repeatedly honored Plaintiff with various accolades, including the "Master's Club" distinction for being in the top four (4) in sales on seven (7) separate occasions. On one such occasion, he was the top seller in the entire company.

19. Plaintiff also had a leadership role at Alcon, including training account managers to assist in selling disposables for cataract procedures, along with the surgical equipment to remove cataracts in patients.

20. As of the early Fall of 2021, Plaintiff earned an annual salary of $104,000 and between $165,000 and $240,000 in annual sales commissions from Alcon, bringing his total annual compensation to between $270,000 and $344,000.

21. Beginning on September 16, 2021, 2021, Defendants—through the Individual Defendants—approached Plaintiff for the purpose of recruiting him to leave Alcon to work as an Equipment Sales Manager at BVI.

22. Plaintiff, however, was reluctant to leave Alcon, his longtime employer of nearly thirty (30) years, which had always compensated him fairly and rewarded him for his loyalty, hard work, and success.

23. Due to this reticence, Plaintiff required certain assurances that would enable him to transition successfully to BVI and to exceed the success and earnings he enjoyed while at Alcon.

COMPLAINT

Plaintiff, therefore, requested and the Individual Defendants provided the following guarantees on behalf of BVI:

    A.     At BVI, Plaintiff would always have strong account managers.

    B.     BVI would provide Plaintiff with a company credit card for expenses.

    C.     BVI's endoscopy system was "cutting edge."

    D.     The Beyeonics 3D systems ("Beyeonics system") would be ready and available for Plaintiff to market and sell. The Beyeonics system was a surgical system intended to allow a surgeon to better view details of the human eye, developed by Beyeonics Vision Ltd. in collaboration with BVI, which was marketed as innovative and groundbreaking in its capabilities.

    E.     BVI had a desirable, cutting edge Phaco system for Plaintiff to market and sell.

24. Along with the forgoing guarantees, Defendants offered Plaintiff a starting salary of $100,000 and a commission structure that would compensate him $10,000 per unit sold. In combination, he was assured these would net him a minimum income of $250,000.

25. These assurances were highly material to Plaintiff's consideration of potentially leaving Alcon to work for BVI for the following reasons:

    A.     The necessity of having strong account managers was material because they would be critical to servicing clients and building and maintaining strong client relationships, upon which Plaintiff's success and livelihood would depend.

    B.     Use of a company credit card was material so that Plaintiff would not bear the burden of fronting significant business expenses that could impact his personal finances and impact his credit rating.

    C.     "Cutting edge" products were material—indeed necessary—to Plaintiff's ability to sell and earn, as any medical group or practitioner willing to invest substantial capital in technology improvements would want the most current technology with the longest "shelf life."

    D.     The availability of the Beyeonics 3D system was highly material because Plaintiff needed access to this product—as represented—to make sales, earn commissions, and to create, build, and maintain client relationship.

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 4 -

COMPLAINT

E.     The offering of a quality, groundbreaking system was highly material for the very same reasons.

26.     The promised income streams, including salary, commission plan, and assurances of combined total compensation, were highly material to Plaintiff's deliberation, as Plaintiff's ultimate consideration in leaving his nearly thirty (30) years of employment with Alcon was increased personal income.

27.     Because the Individual Defendants were managers and managing agents of BVI, Plaintiff had every reason to believe and did believe their representations to him.

28.     Therefore, in justifiable reliance upon the above-described assurances, Plaintiff resigned from Alcon and accepted employment as an Equipment Sales Manager with BVI on October 2, 2021.

**THE FALSITY OF DEFENDANTS' PROMISES ARE IMMEDIATELY APPARENT**

29.     Defendants surely knew their promises were false, as none of the circumstances represented were true, and Defendants had no prospect of fulfilling their assurances to Plaintiff. Their motives in making such fraudulent promises were: (a) to lure Plaintiff to leave Alcon for the purpose of obtaining his skills and expertise; (b) to undermine Alcon by stealing one of its top sales assets; and/or (c) to destroy Plaintiff as a potential adversary in the marketplace.

30.     In April of 2022, Plaintiff realized he had been duped, as he began to discovery that every promise was false. BVI had very few account managers, they were not "strong," as advertised, and there was significant turnover in their ranks. The lack of strong account support severely hampered his ability to close deals and maintain client accounts. The problems stemming from the lack of account manager support were myriad and included Plaintiff losing several long-term clients.

31.     Furthermore, Plaintiff was not issued a company credit card for many months, and when he finally received a card, there were several problems, including that his name was inaccurately recited on the card. Thus, Plaintiff was required to expend his own funds and utilize his own credit.

///

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 5 -

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

32. BVI's endoscopy system also was not as promised. It was 25 years old and was certainly not "cutting edge" technology. This outdated technology hamstrung Plaintiff's ability to make sales and to build or maintain client relationships. No one was interested in replacing outdated technology with other archaic systems. Unable to make sales, Plaintiff was unable to earn commissions, preventing him from maintaining the income he had achieved in his prior employment.

33. The Beyeonics system never got off of the ground. In fact, it was so far behind in the development process that it was removed from the market twice in 2022. This too deprived Plaintiff of a viable product to sell, preventing him from earning commissions and dramatically reducing his income from the levels he had achieved at Alcon

34. Additionally, the Phaco system was delayed until at least 2025, so Plaintiff was never able to sell it. This too prevented him from earning commissions and maintaining the income and lifestyle he had enjoyed while employed at Alcon.

35. In summary, every material assurance that Plaintiff sought and Defendants made to him was false, and Defendants necessarily knew them to be so. Defendants knowingly made those false promises to ensure that Plaintiff would end his long tenure with Alcon to join BVI, to his severe financial detriment.

## PLAINTIFF'S DIRECT MANAGER DISPLAYS AGEIST ANIMUS

36. In November of 2021, shortly after Plaintiff began his short tenure with BVI, his direct manager, Ryan Mikulich, instructed him, "If you decide to retire give me a heads up to transition a new person."

37. Plaintiff, who was sixty-four (64) years old at the time, had never mentioned retirement, let alone suggested that he was considering retiring then or any time in the future.

38. Yet Mr. Mikulich repeated the instruction in March of 2022.

///

///

///

///

- 6 -

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

**DEFENDANTS TERMINATE PLAINTIFF DESPITE HIS**

**ADMIRABLE SALES WHILE HAMSTRUNG BY BVI'S POOR OFFERINGS**

39. During his tenure with BVI, Plaintiff received consistent praise from his superiors, never being admonished, warned, or poorly reviewed. Indeed, he excelled despite the adverse circumstances he was falsely lured into.

40. By late October of 2022, notwithstanding Defendants' false misrepresentations and being constrained by the true circumstances at BVI (as described above), Plaintiff was only two sales short of his annual quota. He and Defendants had every reason to believe that he would meet that quota with the two busiest months of the year—November and December—ahead of him.

41. Despite Plaintiff's remarkable sales successes under fraudulently-misrepresented, adverse circumstances, BVI terminated his employment on October 26, 2022. Ryan Mikulich and Cara McDonald delivered the shocking news during a Microsoft Teams video call on Plaintiff's mobile phone. He was sixty-five (65) years old. His earnings during his year of employment with BVI were approximately $189,000.

42. Minutes before terminating Plaintiff, BVI terminated another Equipment Sales Manager, John McHenry, age sixty-three (63).

43. Meanwhile, the company retained the remaining three Equipment Sales Managers, ages thirty-three (33), thirty-six (36), and thirty-eight (38), two of whom had worse sales numbers than both Plaintiff and Mr. McHenry. The younger Equipment Sales Managers whom BVI retained had similar salaries and commission arrangements, yet BVI retained them despite two having lower sales.

44. Plaintiff was singled out for termination due to his age, leaving him unemployed and without income to support himself at age sixty-five (65).

45. Had Defendants not fraudulently induced Plaintiff to leave his gainful, long-term employment at Alcon, he would have continued his successful sales career at that company and would remain employed and earning an ever-increasing salary and commissions.

/ / /

/ / /

- 7 -

COMPLAINT

**FIRST CAUSE OF ACTION**

**(Promissory Fraud Against All Defendants)**

46.     Plaintiff hereby refers to all preceding paragraphs, inclusive, and incorporates said paragraphs as set forth herein.

47.     The elements of promissory fraud are: (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

48.     As detailed above, Defendants knowingly misrepresented several material facts (elements 1 and 2) in the process of and for the purpose of inducing Plaintiff to leave his employment of nearly thirty (30) years with Alcon to bring his valuable and then-competing skillset and his client contacts to BVI (elements 3).

49.     Plaintiff reasonably and justifiably relied on those promises, made by the Individual Defendants on behalf of BVI, because the Individual Defendants were managers and managing agents of BVI (element 4).

50.     Due to and as a proximate result of Defendants' misrepresentations and Plaintiff's actions taken in reliance upon those fraudulent promises, Plaintiff suffered pecuniary harm in the form of lost income and benefits of employment while employed at BVI and following BVI's termination of his employment (element 5), in sums to be proven at trial.

51.     Due to and as a proximate result of Defendants' actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial (element 5).

52.     Defendants' acts as alleged herein—undertaken by BVI's managing agents—were willful, fraudulent, wanton, malicious, and oppressive. Plaintiff is therefore entitled to exemplary and punitive damages against Defendants in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

///

///

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 8 -

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

## SECOND CAUSE OF ACTION

**(Age Discrimination—Cal. Gov. Code § 12940 *et seq.*
Against Defendants BVI Holdings and BVI, Inc., and the Doe Defendants)**

53. Plaintiff hereby refers to paragraphs 1 through 45, inclusive, and incorporates said paragraphs as set forth herein.

54. A *prima facie* case of age discrimination is established by alleging: "(1) at the time of the adverse action [the plaintiff employee] was 40 years of age or older, (2) an adverse employment action was taken against the employee, (3) at the time of the adverse action the employee was satisfactorily performing his or her job and (4) the employee was replaced in his position by a significantly younger person [or a younger person did not suffer the same adverse action]. (*Hersant v. California Dept. of Social Services* (1997) 57 Cal.App.4th 997, 1002-1003; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317, 367 ["a prima facie inference of discrimination can arise from evidence that during a work force reduction, a satisfactory age-protected worker was laid off, while younger employees were retained in similar jobs, or were reassigned to positions for which the plaintiff also qualified."].)

55. Defendants, through Ryan Mikulich and Cara McDonald, terminated Plaintiff on October 26, 2022, when he was sixty-five (65) years old (elements 1 and 2).

56. As detailed above, despite extremely adverse circumstances, Plaintiff was excelling in his job and was on track to meet or exceed his quota, had he not been terminated prior to the two busiest sales months of the year (element 3).

57. Yet BVI retained significantly younger sales employees with similar compensation and commission plans, despite those younger employees making fewer sales than Plaintiff (element 4).

58. This course of conduct, as described above, was motivated by ageist bias.

59. Due to and as a proximate result of BVI's discriminatory termination of Plaintiff, he suffered pecuniary harm in the form of lost income and benefits following BVI's termination of his employment (element 5), in sums to be proven at trial.

///

- 9 -

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

60. Due to and as a proximate result of BVI's actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial.

61. BVI's acts as alleged herein—undertaken by its managing agents—were willful, fraudulent, wanton, malicious, and oppressive. Plaintiff is therefore entitled to exemplary and punitive damages against BVI in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

## THIRD CAUSE OF ACTION

**(Failure to Prevent Discrimination—Cal. Gov. Code § 12940(k)**
**Against Defendants BVI Holdings, and BVI, Inc. and the Doe Defendants)**

62. Plaintiff hereby refers to paragraphs 1 through 45 and 54 through 58, inclusive, and incorporates said paragraphs as set forth herein.

63. California Government Code section 12940(k) makes it unlawful for an employer to fail to take all reasonable steps to prevent discrimination from happening. This cause of action has "three essential elements: 1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm." (*Lelaind v. City and County of San Francisco* (N.D.Cal. 2008) 576 F.Supp.2d 1079, 1103.) Proof of discrimination establishes a failure to prevent discrimination. (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 288.)

64. As described above, BVI unlawfully discriminated against and terminated Plaintiff due to his age (elements 1).

65. BVI, therefore, failed to take all reasonable steps to prevent said discrimination, against Plaintiff from occurring (element 2), in violation of Government Code section 12940(k).

66. Due to and as a proximate result of BVI's unlawful termination of Plaintiff, he suffered pecuniary harm in the form of lost income and benefits following BVI's termination of his employment (element 3), in sums to be proven at trial.

///

- 10 -

COMPLAINT

67.    Due to and as a proximate result of BVI's actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial (element 3).

68.    BVI's acts as alleged herein—undertaken by its managing agents—were willful, fraudulent, wanton, malicious, and oppressive.  Plaintiff is therefore entitled to exemplary and punitive damages against BVI in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

## FOURTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy Against Defendants BVI Holdings and BVI, Inc., and the Doe Defendants)

69.    Plaintiff hereby refers to paragraphs 1 through 45 and 54 through 58, inclusive, and incorporates said paragraphs as set forth herein.

70.    The elements of the cause of action for wrongful termination in violation of public policy are (1) employment by the defendant, (2) termination, (3) the claimed violation of public policy "was a motivating reason" for the termination, and (4) harm. (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641.)

71.    As detailed above, BVI employed Plaintiff (element 1), BVI terminated Plaintiff's employment (element 2), and BVI actions were motivated by his age, in violation of Government Code section 12940 *et seq.* (element 3)

72.    BVI, therefore, unlawfully terminated Plaintiff in violation of the fundamental public policy of the State of California enshrined in, *inter alia*, Government Code section 12940 *et seq.*

73.    Due to and as a proximate result of BVI's discriminatory termination of Plaintiff, he suffered pecuniary harm in the form of lost income and benefits following BVI's termination of his employment, in sums to be proven at trial (element 4).

74.    Due to and as a proximate result of BVI's actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial (element 4).

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 11 -

COMPLAINT

75.     BVI's acts as alleged herein—undertaken by its managing agents—were willful, fraudulent, wanton, malicious, and oppressive.  Plaintiff is therefore entitled to exemplary and punitive damages against BVI in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

**ON THE FIRST CAUSE OF ACTION (all Defendants):**

1.     For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2.     For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3.     For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4.     For costs of suit incurred;

5.     For punitive and exemplary damages, according to proof; and

6.     For any other and further relief as the Court deems just and proper.

**ON THE SECOND CAUSE OF ACTION (BVI Holdings, BVI, Inc., and Does):**

1.     For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2.     For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3.     For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4.     For all other damages available for violation of Government Code section 12940;

5.     For an award of attorney's fees pursuant to Government Code section 12965(b), and any other applicable provisions of California statutory or common law;

6.     For costs of suit incurred;

- 12 -

**COMPLAINT**

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

7.    For punitive and exemplary damages, according to proof; and

8.    For any other and further relief as the Court deems just and proper.

**ON THE THIRD CAUSE OF ACTION (BVI Holdings, BVI, Inc., and Does):**

1.    For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2.    For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3.    For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4.    For all other damages available for violation of Government Code section 12940;

5.    For an award of attorney's fees pursuant to Government Code section 12965(b), and any other applicable provisions of California statutory or common law;

6.    For costs of suit incurred;

7.    For punitive and exemplary damages, according to proof; and

8.    For any other and further relief as the Court deems just and proper.

**ON THE FOURTH CAUSE OF ACTION (BVI Holdings, BVI, Inc., and Does):**

1.    For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2.    For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3.    For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4.    For costs of suit incurred;

5.    For punitive and exemplary damages, according to proof; and

6.    For any other and further relief as the Court deems just and proper.

///

///

///

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 13 -

COMPLAINT

**JURY DEMAND**

Plaintiff demands a trial by jury of this action.

DATED:  March 25, 2025          MUCH SHELIST, P.C.

_____

ISAAC R. ZFATY
JONATHAN D. YANK
Attorneys for Plaintiff JOHN CHARKY

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 14 -

COMPLAINT

# EXHIBIT B

**CORPORATE CREATIONS** ®
Registered Agent • Director • Incorporation

**Corporate Creations Network Inc.**
801 US Highway 1 North Palm Beach, FL 33408

Beaver-Visitec International, Inc.                                      March 28, 2025
Maples - SOP
Maples Fiduciary Services - Service of Process
4001 Kennett Pike Ste 302
Wilmington DE 19807

# SERVICE OF PROCESS NOTICE

The following is a courtesy summary of the enclosed document(s).   **ALL information should be verified by you.**

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard. IMPORTANT: All changes or updates to the SOP contact individuals or their contact information must be submitted in writing to SOPcontact@corpcreations.com. Any changes will become effective upon written confirmation of Corporate Creations.

Item: 2025-351

| 1. | Entity Served:<br>Entity Served If Different: | Beaver-Visitec International, Inc.<br>Beaver-Visitec International Holdings, Inc., a Delaware corporation, dba BVI Medical |
|---|---|---|
| 2. | Title of Action: | John Charky, an individual, vs. Beaver-Visitec International Holdings, Inc., a Delaware corporation, dba BVI Medical, et al. |
| 3. | Document(s) Served: | Summons<br>Additional Parties Attachment<br>Complaint<br>Civil Case Cover Sheet |
| 4. | Court/Agency: | Los Angeles County Superior Court |
| 5. | State Served: | California |
| 6. | Case Number: | 25STCV08581 |
| 7. | Case Type: | Wrongful Termination |
| 8. | Method of Service: | Hand Delivered |
| 9. | Date Received: | Thursday 03/27/2025 |
| 10. | Date to Client: | Friday 03/28/2025 |
| 11. | # Days When Answer Due:<br>Answer Due Date: | 30<br>Saturday 04/26/2025 | CAUTION: Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | Sop Sender:<br>(Name, City, State, and Phone Number) | Isaac R. Zfaty<br>Newport Beach, CA<br>949-767-2200 |
| 13. | Shipped To Client By: | Email Only with PDF Link |
| 14. | Tracking Number: | |
| 15. | Handled By: | 051 |
| 16. | Notes: | Also Attached:<br>* Civil Case Cover Sheet Addendum and Statement of Location<br>* Alternative Dispute Resolution (ADR) Information Package, etc.<br>Please note there are other Due Dates listed in the document |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process.  To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective.  It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|
| | Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>3/26/2025 10:44 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By S. Bolden, Deputy Clerk |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC., a Delaware corporation, dba BVI Medical; Additional Parties Attachment form is attached

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOHN CHARKY, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Los Angeles County Superior Court<br><br>111 N. Hill Street, Los Angeles, CA 90012 - Stanley Mosk Courthouse | CASE NUMBER:<br>*(Número del Caso):*<br>**25STCV08581** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Isaac R. Zfaty/Jonathan D. Yank, MUCH SHELIST, P.C., 660 Newport Center Dr, Ste. 900, Newport Beach, CA 92660 949.767-2200

| DATE: 03/26/2025<br>*(Fecha)* | David W. Slayton, Executive Officer/Clerk of Court | Clerk, by<br>*(Secretario)* _____ S. Bolden _____ | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(speci*
3. ☒ on behalf of *(specify):* BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC., a Delaware corporation dba BVI Medical
under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| John Charky v. Beaver-Visitec International Holdings, Inc., et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    [x] Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

BEAVER-VISITEC INTERNATIONAL, INC., a Massachusetts corporation, dba BVI Medical; CARA MACDONALD STUART, an individual; RYAN MIKULICH, an individual; LINDSAY LANDENBURG, an individual; DARIN DIXOND, an individual; and DOES 1-10, inclusive

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**MUCH SHELIST, P.C.**
Isaac R. Zfaty, State Bar No. 214987
Jonathan D. Yank, State Bar No. 215495
660 Newport Center Drive, Suite 900
Newport Beach, CA 92660
Telephone: 949.767.2200
Facsimile: 949.385.5355
IZfaty@muchlaw.com
JYank@muchlaw.com

Attorneys for Plaintiff JOHN CHARKY

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/25/2025 11:45 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Tarasyuk, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| JOHN CHARKY, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC., a Delaware corporation, dba BVI Medical; BEAVER-VISITEC INTERNATIONAL, INC., a Massachusetts corporation, dba BVI Medical; CARA MACDONALD STUART, an individual; RYAN MIKULICH, an individual; LINDSAY LANDENBURG, an individual; DARIN DIXOND, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 25STCV08581<br><br>**COMPLAINT**<br><br>**(1)  PROMISSORY FRAUD**<br><br>**(2)  AGE DISCRIMINATION**<br><br>**(3)  FAILURE TO PREVENT DISCRIMINATION**<br><br>**(4)  WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>[Demand for Jury Trial included herein] |

MUCH SHELIST, P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

COMPLAINT

Plaintiff JOHN CHARKY ("Plaintiff"), an individual, complains and alleges as follows:

## THE PARTIES AND VENUE

1. Plaintiff is an individual who, at the time of the acts complained of herein, resided in Los Angeles County, California.

2. Defendant BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC. ("BVI Holdings"), dba BVI Medical, is a Delaware corporation registered to conduct and conducting business in the State of California, including in the County of Los Angeles.

3. Defendant BEAVER-VISITEC INTERNATIONAL, INC. ("BVI, Inc."), dba BVI Medical, is a Massachusetts corporation registered to conduct and conducting business in the State of California, including in the County of Los Angeles.

4. BVI Holdings and BVI, Inc., are hereinafter jointly referenced as "BVI."

5. Defendant CARA MACDONALD STUART ("Stuart") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter. Ms. Stuart's position at BVI was Director of Human Resources. As Director of Human Resources, Ms. Stuart was a managing agent of BVI.

6. Defendant RYAN MIKULICH ("Mikulich") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter. Mr. Mikulich's position at BVI was Surgical Sales Manager. As Surgical Sales Manager, Mr. Mikulich was a managing agent of BVI.

7. LINDSAY LANDENBURG ("Landenburg") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter. Ms. Landenburg's position at BVI was Director of Sales. As Director of Sales, Ms. Landenburg was a managing agent of BVI.

8. DARIN DIXON ("Dixon") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter. Mr. Dixon's position at BVI was National Sales Manager. As National Sales Manager, Mr. Dixon was a managing agent of BVI.

/ / /

- 1 -

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

9.    Hereinafter, Defendants Stuart, Mikulich, Landenburg, and Dixon are referred to jointly as "the Individual Defendants."

10.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 20, inclusive, are unknown to Plaintiff, which therefore sues said Defendants by such fictitious names. When Plaintiff ascertains the true names and capacities of said fictitiously named Defendants, he will ask leave of this Court to amend his Complaint by setting forth the same.

11.    Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, each of the fictitiously-named Defendants, was and now is an agent, servant, representative, and/or alter ego of at least one of the specifically-named Defendants and/or the other fictitiously-named Defendants and, in doing the things alleged herein, was acting within the scope of its authority as its agent, servant, employee, representative, and/or alter ego with the permission and consent of at least one of the other specifically named and/or fictitiously named Defendants.

12.    At all times herein mentioned, each of the Defendants named in the caption of this Complaint, were and are the agents and/or employees of each of the other defendants, and all of the things alleged to have been done by said Defendants were done in the capacity of and as agents of the other Defendants.

13.    Unless otherwise stated, the use of the term "Defendants" herein shall refer to all above-referenced Defendants, including DOES 1-20.

14.    Venue of this action is proper in the County of Los Angeles, California, as the wrongful acts and omissions of Defendants at issue in this action occurred within the County. Additionally, Defendants BVI Holdings and BVI, Inc., conduct business within the County.

### ADMINISTRATIVE EXHAUSTION

15.    Plaintiff has satisfied all administrative prerequisites to filing and pursuing the present lawsuit. Plaintiff—through counsel—filed a charge of discrimination with the California Civil Rights Department (the "Department") on March 6, 2025. The Department issued Plaintiff a "Right-to-Sue" letter on March 6, 2025.

- 2 -

**COMPLAINT**

**DEFENDANTS LURE PLAINTIFF FROM ALCON**

**WITH PROMISES OF INCOME AND SUPPORT**

16. In the early Fall of 2021, Plaintiff was successfully and gainfully employed as a Surgical Equipment Manager for Alcon Surgical ("Alcon"), selling surgical capital equipment and disposables to Ophthalmologists and Ophthalmological practice groups in surgery centers and hospitals in Los Angeles County. Plaintiff had worked in sales for Alcon for nearly thirty (30) years.

17. During his long tenure with Alcon, Plaintiff built a stellar reputation for himself and generated deep-rooted relationships with his customers, including some 250 Ophthalmologists who purchased four different generations of Phacoemulsification ("Phaco") systems utilized in cataract surgery.

18. Alcon repeatedly honored Plaintiff with various accolades, including the "Master's Club" distinction for being in the top four (4) in sales on seven (7) separate occasions. On one such occasion, he was the top seller in the entire company.

19. Plaintiff also had a leadership role at Alcon, including training account managers to assist in selling disposables for cataract procedures, along with the surgical equipment to remove cataracts in patients.

20. As of the early Fall of 2021, Plaintiff earned an annual salary of $104,000 and between $165,000 and $240,000 in annual sales commissions from Alcon, bringing his total annual compensation to between $270,000 and $344,000.

21. Beginning on September 16, 2021, 2021, Defendants—through the Individual Defendants—approached Plaintiff for the purpose of recruiting him to leave Alcon to work as an Equipment Sales Manager at BVI.

22. Plaintiff, however, was reluctant to leave Alcon, his longtime employer of nearly thirty (30) years, which had always compensated him fairly and rewarded him for his loyalty, hard work, and success.

23. Due to this reticence, Plaintiff required certain assurances that would enable him to transition successfully to BVI and to exceed the success and earnings he enjoyed while at Alcon.

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

Plaintiff, therefore, requested and the Individual Defendants provided the following guarantees on behalf of BVI:

      A.    At BVI, Plaintiff would always have strong account managers.

      B.    BVI would provide Plaintiff with a company credit card for expenses.

      C.    BVI's endoscopy system was "cutting edge."

      D.    The Beyeonics 3D systems ("Beyeonics system") would be ready and available for Plaintiff to market and sell. The Beyeonics system was a surgical system intended to allow a surgeon to better view details of the human eye, developed by Beyeonics Vision Ltd. in collaboration with BVI, which was marketed as innovative and groundbreaking in its capabilities.

      E.    BVI had a desirable, cutting edge Phaco system for Plaintiff to market and sell.

24. Along with the forgoing guarantees, Defendants offered Plaintiff a starting salary of $100,000 and a commission structure that would compensate him $10,000 per unit sold. In combination, he was assured these would net him a minimum income of $250,000.

25. These assurances were highly material to Plaintiff's consideration of potentially leaving Alcon to work for BVI for the following reasons:

      A.    The necessity of having strong account managers was material because they would be critical to servicing clients and building and maintaining strong client relationships, upon which Plaintiff's success and livelihood would depend.

      B.    Use of a company credit card was material so that Plaintiff would not bear the burden of fronting significant business expenses that could impact his personal finances and impact his credit rating.

      C.    "Cutting edge" products were material—indeed necessary—to Plaintiff's ability to sell and earn, as any medical group or practitioner willing to invest substantial capital in technology improvements would want the most current technology with the longest "shelf life."

      D.    The availability of the Beyeonics 3D system was highly material because Plaintiff needed access to this product—as represented—to make sales, earn commissions, and to create, build, and maintain client relationship.

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

COMPLAINT

E.      The offering of a quality, groundbreaking system was highly material for the very same reasons.

26.     The promised income streams, including salary, commission plan, and assurances of combined total compensation, were highly material to Plaintiff's deliberation, as Plaintiff's ultimate consideration in leaving his nearly thirty (30) years of employment with Alcon was increased personal income.

27.     Because the Individual Defendants were managers and managing agents of BVI, Plaintiff had every reason to believe and did believe their representations to him.

28.     Therefore, in justifiable reliance upon the above-described assurances, Plaintiff resigned from Alcon and accepted employment as an Equipment Sales Manager with BVI on October 2, 2021.

**THE FALSITY OF DEFENDANTS' PROMISES ARE IMMEDIATELY APPARENT**

29.     Defendants surely knew their promises were false, as none of the circumstances represented were true, and Defendants had no prospect of fulfilling their assurances to Plaintiff. Their motives in making such fraudulent promises were: (a) to lure Plaintiff to leave Alcon for the purpose of obtaining his skills and expertise; (b) to undermine Alcon by stealing one of its top sales assets; and/or (c) to destroy Plaintiff as a potential adversary in the marketplace.

30.     In April of 2022, Plaintiff realized he had been duped, as he began to discovery that every promise was false.  BVI had very few account managers, they were not "strong," as advertised, and there was significant turnover in their ranks.  The lack of strong account support severely hampered his ability to close deals and maintain client accounts.  The problems stemming from the lack of account manager support were myriad and included Plaintiff losing several long-term clients.

31.     Furthermore, Plaintiff was not issued a company credit card for many months, and when he finally received a card, there were several problems, including that his name was inaccurately recited on the card.  Thus, Plaintiff was required to expend his own funds and utilize his own credit.

/ / /

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

32.     BVI's endoscopy system also was not as promised.  It was 25 years old and was certainly not "cutting edge" technology.  This outdated technology hamstrung Plaintiff's ability to make sales and to build or maintain client relationships.  No one was interested in replacing outdated technology with other archaic systems.  Unable to make sales, Plaintiff was unable to earn commissions, preventing him from maintaining the income he had achieved in his prior employment.

33.     The Beyeonics system never got off of the ground.  In fact, it was so far behind in the development process that it was removed from the market twice in 2022.  This too deprived Plaintiff of a viable product to sell, preventing him from earning commissions and dramatically reducing his income from the levels he had achieved at Alcon

34.     Additionally, the Phaco system was delayed until at least 2025, so Plaintiff was never able to sell it.  This too prevented him from earning commissions and maintaining the income and lifestyle he had enjoyed while employed at Alcon.

35.     In summary, every material assurance that Plaintiff sought and Defendants made to him was false, and Defendants necessarily knew them to be so.  Defendants knowingly made those false promises to ensure that Plaintiff would end his long tenure with Alcon to join BVI, to his severe financial detriment.

**PLAINTIFF'S DIRECT MANAGER DISPLAYS AGEIST ANIMUS**

36.     In November of 2021, shortly after Plaintiff began his short tenure with BVI, his direct manager, Ryan Mikulich, instructed him, "If you decide to retire give me a heads up to transition a new person."

37.     Plaintiff, who was sixty-four (64) years old at the time, had never mentioned retirement, let alone suggested that he was considering retiring then or any time in the future.

38.     Yet Mr. Mikulich repeated the instruction in March of 2022.

/ / /

/ / /

/ / /

/ / /

- 6 -

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

## DEFENDANTS TERMINATE PLAINTIFF DESPITE HIS
## ADMIRABLE SALES WHILE HAMSTRUNG BY BVI'S POOR OFFERINGS

39. During his tenure with BVI, Plaintiff received consistent praise from his superiors, never being admonished, warned, or poorly reviewed. Indeed, he excelled despite the adverse circumstances he was falsely lured into.

40. By late October of 2022, notwithstanding Defendants' false misrepresentations and being constrained by the true circumstances at BVI (as described above), Plaintiff was only two sales short of his annual quota. He and Defendants had every reason to believe that he would meet that quota with the two busiest months of the year—November and December—ahead of him.

41. Despite Plaintiff's remarkable sales successes under fraudulently-misrepresented, adverse circumstances, BVI terminated his employment on October 26, 2022. Ryan Mikulich and Cara McDonald delivered the shocking news during a Microsoft Teams video call on Plaintiff's mobile phone. He was sixty-five (65) years old. His earnings during his year of employment with BVI were approximately $189,000.

42. Minutes before terminating Plaintiff, BVI terminated another Equipment Sales Manager, John McHenry, age sixty-three (63).

43. Meanwhile, the company retained the remaining three Equipment Sales Managers, ages thirty-three (33), thirty-six (36), and thirty-eight (38), two of whom had worse sales numbers than both Plaintiff and Mr. McHenry. The younger Equipment Sales Managers whom BVI retained had similar salaries and commission arrangements, yet BVI retained them despite two having lower sales.

44. Plaintiff was singled out for termination due to his age, leaving him unemployed and without income to support himself at age sixty-five (65).

45. Had Defendants not fraudulently induced Plaintiff to leave his gainful, long-term employment at Alcon, he would have continued his successful sales career at that company and would remain employed and earning an ever-increasing salary and commissions.

///

///

- 7 -

COMPLAINT

## FIRST CAUSE OF ACTION

### (Promissory Fraud Against All Defendants)

46.     Plaintiff hereby refers to all preceding paragraphs, inclusive, and incorporates said paragraphs as set forth herein.

47.     The elements of promissory fraud are: (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages.  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

48.     As detailed above, Defendants knowingly misrepresented several material facts (elements 1 and 2) in the process of and for the purpose of inducing Plaintiff to leave his employment of nearly thirty (30) years with Alcon to bring his valuable and then-competing skillset and his client contacts to BVI (elements 3).

49.     Plaintiff reasonably and justifiably relied on those promises, made by the Individual Defendants on behalf of BVI, because the Individual Defendants were managers and managing agents of BVI (element 4).

50.     Due to and as a proximate result of Defendants' misrepresentations and Plaintiff's actions taken in reliance upon those fraudulent promises, Plaintiff suffered pecuniary harm in the form of lost income and benefits of employment while employed at BVI and following BVI's termination of his employment (element 5), in sums to be proven at trial.

51.     Due to and as a proximate result of Defendants' actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial (element 5).

52.     Defendants' acts as alleged herein—undertaken by BVI's managing agents—were willful, fraudulent, wanton, malicious, and oppressive.  Plaintiff is therefore entitled to exemplary and punitive damages against Defendants in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

///

///

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 8 -

**COMPLAINT**

## SECOND CAUSE OF ACTION

**(Age Discrimination—Cal. Gov. Code § 12940 *et seq.***
**Against Defendants BVI Holdings and BVI, Inc., and the Doe Defendants)**

53.     Plaintiff hereby refers to paragraphs 1 through 45, inclusive, and incorporates said paragraphs as set forth herein.

54.     A *prima facie* case of age discrimination is established by alleging: "(1) at the time of the adverse action [the plaintiff employee] was 40 years of age or older, (2) an adverse employment action was taken against the employee, (3) at the time of the adverse action the employee was satisfactorily performing his or her job and (4) the employee was replaced in his position by a significantly younger person [or a younger person did not suffer the same adverse action]. (*Hersant v. California Dept. of Social Services* (1997) 57 Cal.App.4th 997, 1002-1003; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317, 367 ["a prima facie inference of discrimination can arise from evidence that during a work force reduction, a satisfactory age-protected worker was laid off, while younger employees were retained in similar jobs, or were reassigned to positions for which the plaintiff also qualified."].)

55.     Defendants, through Ryan Mikulich and Cara McDonald, terminated Plaintiff on October 26, 2022, when he was sixty-five (65) years old (elements 1 and 2).

56.     As detailed above, despite extremely adverse circumstances, Plaintiff was excelling in his job and was on track to meet or exceed his quota, had he not been terminated prior to the two busiest sales months of the year (element 3).

57.     Yet BVI retained significantly younger sales employees with similar compensation and commission plans, despite those younger employees making fewer sales than Plaintiff (element 4).

58.     This course of conduct, as described above, was motivated by ageist bias.

59.     Due to and as a proximate result of BVI's discriminatory termination of Plaintiff, he suffered pecuniary harm in the form of lost income and benefits following BVI's termination of his employment (element 5), in sums to be proven at trial.

/ / /

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 9 -
COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

60. Due to and as a proximate result of BVI's actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial.

61. BVI's acts as alleged herein—undertaken by its managing agents—were willful, fraudulent, wanton, malicious, and oppressive. Plaintiff is therefore entitled to exemplary and punitive damages against BVI in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

## THIRD CAUSE OF ACTION

**(Failure to Prevent Discrimination—Cal. Gov. Code § 12940(k)
Against Defendants BVI Holdings, and BVI, Inc. and the Doe Defendants)**

62. Plaintiff hereby refers to paragraphs 1 through 45 and 54 through 58, inclusive, and incorporates said paragraphs as set forth herein.

63. California Government Code section 12940(k) makes it unlawful for an employer to fail to take all reasonable steps to prevent discrimination from happening. This cause of action has "three essential elements: 1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm." (*Leland v. City and County of San Francisco* (N.D.Cal. 2008) 576 F.Supp.2d 1079, 1103.) Proof of discrimination establishes a failure to prevent discrimination. (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 288.)

64. As described above, BVI unlawfully discriminated against and terminated Plaintiff due to his age (elements 1).

65. BVI, therefore, failed to take all reasonable steps to prevent said discrimination, against Plaintiff from occurring (element 2), in violation of Government Code section 12940(k).

66. Due to and as a proximate result of BVI's unlawful termination of Plaintiff, he suffered pecuniary harm in the form of lost income and benefits following BVI's termination of his employment (element 3), in sums to be proven at trial.

///

- 10 -

COMPLAINT

67.    Due to and as a proximate result of BVI's actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial (element 3).

68.    BVI's acts as alleged herein—undertaken by its managing agents—were willful, fraudulent, wanton, malicious, and oppressive.  Plaintiff is therefore entitled to exemplary and punitive damages against BVI in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

## FOURTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy Against Defendants BVI Holdings and BVI, Inc., and the Doe Defendants)

69.    Plaintiff hereby refers to paragraphs 1 through 45 and 54 through 58, inclusive, and incorporates said paragraphs as set forth herein.

70.    The elements of the cause of action for wrongful termination in violation of public policy are (1) employment by the defendant, (2) termination, (3) the claimed violation of public policy "was a motivating reason" for the termination, and (4) harm. (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641.)

71.    As detailed above, BVI employed Plaintiff (element 1), BVI terminated Plaintiff's employment (element 2), and BVI actions were motivated by his age, in violation of Government Code section 12940 *et seq.* (element 3)

72.    BVI, therefore, unlawfully terminated Plaintiff in violation of the fundamental public policy of the State of California enshrined in, *inter alia*, Government Code section 12940 *et seq.*

73.    Due to and as a proximate result of BVI's discriminatory termination of Plaintiff, he suffered pecuniary harm in the form of lost income and benefits following BVI's termination of his employment, in sums to be proven at trial (element 4).

74.    Due to and as a proximate result of BVI's actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial (element 4).

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 11 -

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

75. BVI's acts as alleged herein—undertaken by its managing agents—were willful, fraudulent, wanton, malicious, and oppressive. Plaintiff is therefore entitled to exemplary and punitive damages against BVI in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

**ON THE FIRST CAUSE OF ACTION (all Defendants):**

1. For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2. For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3. For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4. For costs of suit incurred;

5. For punitive and exemplary damages, according to proof; and

6. For any other and further relief as the Court deems just and proper.

**ON THE SECOND CAUSE OF ACTION (BVI Holdings, BVI, Inc., and Does):**

1. For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2. For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3. For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4. For all other damages available for violation of Government Code section 12940;

5. For an award of attorney's fees pursuant to Government Code section 12965(b), and any other applicable provisions of California statutory or common law;

6. For costs of suit incurred;

- 12 -

COMPLAINT

7. For punitive and exemplary damages, according to proof; and

8. For any other and further relief as the Court deems just and proper.

**ON THE THIRD CAUSE OF ACTION (BVI Holdings, BVI, Inc., and Does):**

1. For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2. For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3. For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4. For all other damages available for violation of Government Code section 12940;

5. For an award of attorney's fees pursuant to Government Code section 12965(b), and any other applicable provisions of California statutory or common law;

6. For costs of suit incurred;

7. For punitive and exemplary damages, according to proof; and

8. For any other and further relief as the Court deems just and proper.

**ON THE FOURTH CAUSE OF ACTION (BVI Holdings, BVI, Inc., and Does):**

1. For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2. For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3. For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4. For costs of suit incurred;

5. For punitive and exemplary damages, according to proof; and

6. For any other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 13 -

COMPLAINT

**JURY DEMAND**

Plaintiff demands a trial by jury of this action.

DATED:  March 25, 2025

MUCH SHELIST, P.C.

ISAAC R. ZFATY
JONATHAN D. YANK
Attorneys for Plaintiff JOHN CHARKY

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 14 -

**COMPLAINT**

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* <br> Isaac R. Zfaty (SBN 214998) / Jonathan D. Yank (SBN 215495) <br> MUCH SHELIST, P.C., 660 Newport Center Drive, Ste. 900, Newport Beach, CA 92660 <br><br> TELEPHONE NO.: (949) 767-2200    FAX NO. : (949) 385-5355 <br> EMAIL ADDRESS: IZfaty@muchlaw.com / JYank@muchlaw.com <br> ATTORNEY FOR *(Name):* Plaintiff JOHN CHARKY | ***FOR COURT USE ONLY*** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES** <br> STREET ADDRESS: 111 N. Hill Street <br> MAILING ADDRESS: <br> CITY AND ZIP CODE: Los Angeles, 90012 <br> BRANCH NAME: Stanley Mosk Courthouse | **Electronically FILED by Superior Court of California, County of Los Angeles 3/25/2025 11:45 AM David W. Slayton, Executive Officer/Clerk of Court, By Y. Tarasyuk, Deputy Clerk** |

| CASE NAME: <br> John Charky v. Beaver-Visitec International Holdings, Inc., et al. | |
|---|---|

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000)   [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **25STCV08581** <br> JUDGE: <br> DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[x] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 4
5. This case [ ] is [x] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 25, 2025

Jonathan D. Yank
_____
(TYPE OR PRINT NAME)      ▶ _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.    Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courts.ca.gov |
|---|---|---|

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                  CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

CM-010 [Rev. January 1, 2024]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

| SHORT TITLE | CASE NUMBER |
|---|---|
| John Charky v. Bever-Visitec International Holdings, Inc., et al. | |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.  Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.  Location where petitioner resides. |
| 2.  Permissive filing in Central District. | 8.  Location wherein defendant/respondent functions wholly. |
| 3.  Location where cause of action arose. | 9.  Location where one or more of the parties reside. |
| 4.  Location where bodily injury, death or damage occurred. | 10.  Location of Labor Commissioner Office. |
| 5.  Location where performance required, or defendant resides. | 11.  Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.  Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| John Charky v. Bever-Visitec International Holdings, Inc., et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☑ 3601 Wrongful Termination | 1, ②, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| John Charky v. Bever-Visitec International Holdings, Inc., et al. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

LASC CIV 109 Rev. 01/23    **CIVIL CASE COVER SHEET ADDENDUM**    LASC Local Rule 2.3

For Mandatory Use    **AND STATEMENT OF LOCATION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| John Charky v. Bever-Visitec International Holdings, Inc., et al. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| Provisionally Complex Litigation (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| Miscellaneous Civil Complaints | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| John Charky v. Bever-Visitec International Holdings, Inc., et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS: 5509 1/4 Radford Avebye |
|---|---|

| CITY: Valley Village | STATE: CA | ZIP CODE: 92607 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __03/21/2025__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| LASC CIV 109 Rev. 01/23 | CIVIL CASE COVER SHEET ADDENDUM | LASC Local Rule 2.3 |
|---|---|---|
| For Mandatory Use | AND STATEMENT OF LOCATION | |



### Superior Court of California, County of Los Angeles
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

## WHAT IS ADR?
Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

## TYPES OF ADR

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

## ADVANTAGES OF ADR

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

## DISADVANTAGES OF ADR
- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

## WEBSITE RESOURCES FOR ADR
- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

## Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)
Litigants should closely review the requirements for each program and the types of cases served.

- **Online Dispute Resolution (ODR).** Online Dispute Resolution (ODR) is a free online service provided by the Court to help small claims and unlawful detainer litigants explore settlement options before the hearing date without having to come to court. ODR guides parties through a step-by-step program. After both sides register for ODR, they may request assistance from trained mediators to help them reach a customized agreement. The program creates settlement agreements in the proper form and sends them to the Court for processing. Parties in small claims and unlawful detainer cases must carefully review the notices and other information they receive about ODR requirements that may apply to their case. *For more information, visit https://my.lacourt.org/odr.*

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

LASC CIV 271 Rev. 11/24
For Mandatory Use

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>03/25/2025<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ Y. Tarasyuk _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>25STCV08581 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Barbara A. Meiers | 12 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    David W. Slayton, Executive Officer / Clerk of Court

on 03/25/2025 _____          By Y. Tarasyuk _____, Deputy Clerk
　　　(Date)

LACIV 190 (Rev 6/18)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

MAR 2 7 2025

LACIV 190 (Rev 6/18)        **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

# EXHIBIT C

**CORPORATE CREATIONS** ®
Registered Agent • Director • Incorporation

**Corporate Creations Network Inc.**
801 US Highway 1 North Palm Beach, FL 33408

Beaver-Visitec International, Inc.                                        March 28, 2025
Maples - SOP
Maples Fiduciary Services - Service of Process
4001 Kennett Pike Ste 302
Wilmington DE 19807

# SERVICE OF PROCESS NOTICE

The following is a courtesy summary of the enclosed document(s).   **ALL information should be verified by you.**

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard. IMPORTANT: All changes or updates to the SOP contact individuals or their contact information must be submitted in writing to SOPcontact@corpcreations.com. Any changes will become effective upon written confirmation of Corporate Creations.

Item: 2025-350

| | | |
|---|---|---|
| 1. | **Entity Served:**<br>**Entity Served If Different:** | Beaver-Visitec International, Inc.<br>Beaver-Visitec International, Inc., a Delaware corporation, dba BVI Medical |
| 2. | **Title of Action:** | John Charky, an individual, vs. Beaver-Visitec International Holdings, Inc., a Delaware corporation, dba BVI Medical, et al. |
| 3. | **Document(s) Served:** | Summons<br>Additional Parties Attachment<br>Complaint<br>Civil Case Cover Sheet |
| 4. | **Court/Agency:** | Los Angeles County Superior Court |
| 5. | **State Served:** | California |
| 6. | **Case Number:** | 25STCV08581 |
| 7. | **Case Type:** | Wrongful Termination |
| 8. | **Method of Service:** | Hand Delivered |
| 9. | **Date Received:** | Thursday 03/27/2025 |
| 10. | **Date to Client:** | Friday 03/28/2025 |
| 11. | **# Days When Answer Due:**<br>**Answer Due Date:** | 30<br>Saturday 04/26/2025<br><span style="color:red">CAUTION:</span> Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **Sop Sender:**<br>(Name, City, State, and Phone Number) | Isaac R. Zfaty<br>Newport Beach, CA<br>949-767-2200 |
| 13. | **Shipped To Client By:** | Email Only with PDF Link |
| 14. | **Tracking Number:** | |
| 15. | **Handled By:** | 051 |
| 16. | **Notes:** | Also Attached:<br>* Civil Case Cover Sheet Addendum and Statement of Location<br>* Alternative Dispute Resolution (ADR) Information Package, etc.<br>Please note there are other Due Dates listed in the document |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information.  At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process.  To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective.  It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**Electronically FILED by
Superior Court of California,
County of Los Angeles
3/26/2025 10:44 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Bolden, Deputy Clerk**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC., a Delaware corporation, dba BVI Medical;
Additional Parties Attachment form is attached

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOHN CHARKY, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles County Superior Court

111 N. Hill Street, Los Angeles, CA  90012 - Stanley Mosk Courthouse

| CASE NUMBER:<br>*(Número del Caso):* |
|---|
| **25STCV08581** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Isaac R. Zfaty/Jonathan D. Yank, MUCH SHELIST, P.C, 660 Newport Center Dr, Ste. 900, Newport Beach, CA 92660 949.767-2200

DATE: 03/26/2025      David W. Slayton, Executive Officer/Clerk of Court    Clerk, by    S. Bolden    , Deputy
*(Fecha)*                                                                    *(Secretario)* _____  *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of                                        *(speci*
3. ☒ on behalf of *(specify):* BEAVER-VISITEC INTERNATIONAL, INC., a Massachusetts corporation, dba BVI Medical

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

SUM-200(A)

| SHORT TITLE:<br>John Charky v. Beaver-Visitec International Holdings, Inc., et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

BEAVER-VISITEC INTERNATIONAL, INC., a Massachusetts corporation, dba BVI Medical; CARA MACDONALD STUART, an individual; RYAN MIKULICH, an individual; LINDSAY LANDENBURG, an individual; DARIN DIXOND, an individual; and DOES 1-10, inclusive

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**MUCH SHELIST, P.C.**
Isaac R. Zfaty, State Bar No. 214987
Jonathan D. Yank, State Bar No. 215495
660 Newport Center Drive, Suite 900
Newport Beach, CA 92660
Telephone: 949.767.2200
Facsimile: 949.385.5355
IZfaty@muchlaw.com
JYank@muchlaw.com

Attorneys for Plaintiff JOHN CHARKY

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/25/2025 11:45 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Tarasyuk, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JOHN CHARKY, an individual;<br><br>     Plaintiff,<br><br>vs.<br><br>BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC., a Delaware corporation, dba BVI Medical; BEAVER-VISITEC INTERNATIONAL, INC., a Massachusetts corporation, dba BVI Medical; CARA MACDONALD STUART, an individual; RYAN MIKULICH, an individual; LINDSAY LANDENBURG, an individual; DARIN DIXOND, an individual; and DOES 1-10, inclusive,<br><br>     Defendants. | CASE NO. 25STCV08581<br><br>**COMPLAINT**<br><br>**(1) PROMISSORY FRAUD**<br><br>**(2) AGE DISCRIMINATION**<br><br>**(3) FAILURE TO PREVENT DISCRIMINATION**<br><br>**(4) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>[Demand for Jury Trial included herein] |

MUCH SHELIST, P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

COMPLAINT

Plaintiff JOHN CHARKY ("Plaintiff"), an individual, complains and alleges as follows:

## THE PARTIES AND VENUE

1.     Plaintiff is an individual who, at the time of the acts complained of herein, resided in Los Angeles County, California.

2.     Defendant BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC. ("BVI Holdings"), dba BVI Medical, is a Delaware corporation registered to conduct and conducting business in the State of California, including in the County of Los Angeles.

3.     Defendant BEAVER-VISITEC INTERNATIONAL, INC. ("BVI, Inc."), dba BVI Medical, is a Massachusetts corporation registered to conduct and conducting business in the State of California, including in the County of Los Angeles.

4.     BVI Holdings and BVI, Inc., are hereinafter jointly referenced as "BVI."

5.     Defendant CARA MACDONALD STUART ("Stuart") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter.  Ms. Stuart's position at BVI was Director of Human Resources.  As Director of Human Resources, Ms. Stuart was a managing agent of BVI.

6.     Defendant RYAN MIKULICH ("Mikulich") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter.  Mr. Mikulich's position at BVI was Surgical Sales Manager.  As Surgical Sales Manager, Mr. Mikulich was a managing agent of BVI.

7.     LINDSAY LANDENBURG ("Landenburg") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter.  Ms. Landenburg's position at BVI was Director of Sales.  As Director of Sales, Ms. Landenburg was a managing agent of BVI.

8.     DARIN DIXON ("Dixon") is an individual employee of BVI, who participated in and caused the wrongful acts described hereinafter.  Mr. Dixon's position at BVI was National Sales Manager.  As National Sales Manager, Mr. Dixon was a managing agent of BVI.

/ / /

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 1 -

COMPLAINT

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

9. Hereinafter, Defendants Stuart, Mikulich, Landenburg, and Dixon are referred to jointly as "the Individual Defendants."

10. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 20, inclusive, are unknown to Plaintiff, which therefore sues said Defendants by such fictitious names. When Plaintiff ascertains the true names and capacities of said fictitiously named Defendants, he will ask leave of this Court to amend his Complaint by setting forth the same.

11. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, each of the fictitiously-named Defendants, was and now is an agent, servant, representative, and/or alter ego of at least one of the specifically-named Defendants and/or the other fictitiously-named Defendants and, in doing the things alleged herein, was acting within the scope of its authority as its agent, servant, employee, representative, and/or alter ego with the permission and consent of at least one of the other specifically named and/or fictitiously named Defendants.

12. At all times herein mentioned, each of the Defendants named in the caption of this Complaint, were and are the agents and/or employees of each of the other defendants, and all of the things alleged to have been done by said Defendants were done in the capacity of and as agents of the other Defendants.

13. Unless otherwise stated, the use of the term "Defendants" herein shall refer to all above-referenced Defendants, including DOES 1-20.

14. Venue of this action is proper in the County of Los Angeles, California, as the wrongful acts and omissions of Defendants at issue in this action occurred within the County. Additionally, Defendants BVI Holdings and BVI, Inc., conduct business within the County.

**ADMINISTRATIVE EXHAUSTION**

15. Plaintiff has satisfied all administrative prerequisites to filing and pursuing the present lawsuit. Plaintiff—through counsel—filed a charge of discrimination with the California Civil Rights Department (the "Department") on March 6, 2025. The Department issued Plaintiff a "Right-to-Sue" letter on March 6, 2025.

**COMPLAINT**

**DEFENDANTS LURE PLAINTIFF FROM ALCON**

**WITH PROMISES OF INCOME AND SUPPORT**

16.     In the early Fall of 2021, Plaintiff was successfully and gainfully employed as a Surgical Equipment Manager for Alcon Surgical ("Alcon"), selling surgical capital equipment and disposables to Ophthalmologists and Ophthalmological practice groups in surgery centers and hospitals in Los Angeles County.  Plaintiff had worked in sales for Alcon for nearly thirty (30) years.

17.     During his long tenure with Alcon, Plaintiff built a stellar reputation for himself and generated deep-rooted relationships with his customers, including some 250 Ophthalmologists who purchased four different generations of Phacoemulsification ("Phaco") systems utilized in cataract surgery.

18.     Alcon repeatedly honored Plaintiff with various accolades, including the "Master's Club" distinction for being in the top four (4) in sales on seven (7) separate occasions.  On one such occasion, he was the top seller in the entire company.

19.     Plaintiff also had a leadership role at Alcon, including training account managers to assist in selling disposables for cataract procedures, along with the surgical equipment to remove cataracts in patients.

20.     As of the early Fall of 2021, Plaintiff earned an annual salary of $104,000 and between $165,000 and $240,000 in annual sales commissions from Alcon, bringing his total annual compensation to between $270,000 and $344,000.

21.     Beginning on September 16, 2021, 2021, Defendants—through the Individual Defendants—approached Plaintiff for the purpose of recruiting him to leave Alcon to work as an Equipment Sales Manager at BVI.

22.     Plaintiff, however, was reluctant to leave Alcon, his longtime employer of nearly thirty (30) years, which had always compensated him fairly and rewarded him for his loyalty, hard work, and success.

23.     Due to this reticence, Plaintiff required certain assurances that would enable him to transition successfully to BVI and to exceed the success and earnings he enjoyed while at Alcon.

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 3 -
COMPLAINT

Plaintiff, therefore, requested and the Individual Defendants provided the following guarantees on behalf of BVI:

        A.      At BVI, Plaintiff would always have strong account managers.

        B.      BVI would provide Plaintiff with a company credit card for expenses.

        C.      BVI's endoscopy system was "cutting edge."

        D.      The Beyeonics 3D systems ("Beyeonics system") would be ready and available for Plaintiff to market and sell. The Beyeonics system was a surgical system intended to allow a surgeon to better view details of the human eye, developed by Beyeonics Vision Ltd. in collaboration with BVI, which was marketed as innovative and groundbreaking in its capabilities.

        E.      BVI had a desirable, cutting edge Phaco system for Plaintiff to market and sell.

24. Along with the forgoing guarantees, Defendants offered Plaintiff a starting salary of $100,000 and a commission structure that would compensate him $10,000 per unit sold. In combination, he was assured these would net him a minimum income of $250,000.

25. These assurances were highly material to Plaintiff's consideration of potentially leaving Alcon to work for BVI for the following reasons:

        A.      The necessity of having strong account managers was material because they would be critical to servicing clients and building and maintaining strong client relationships, upon which Plaintiff's success and livelihood would depend.

        B.      Use of a company credit card was material so that Plaintiff would not bear the burden of fronting significant business expenses that could impact his personal finances and impact his credit rating.

        C.      "Cutting edge" products were material—indeed necessary—to Plaintiff's ability to sell and earn, as any medical group or practitioner willing to invest substantial capital in technology improvements would want the most current technology with the longest "shelf life."

        D.      The availability of the Beyeonics 3D system was highly material because Plaintiff needed access to this product—as represented—to make sales, earn commissions, and to create, build, and maintain client relationship.

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 4 -

COMPLAINT

E.    The offering of a quality, groundbreaking system was highly material for the very same reasons.

26.    The promised income streams, including salary, commission plan, and assurances of combined total compensation, were highly material to Plaintiff's deliberation, as Plaintiff's ultimate consideration in leaving his nearly thirty (30) years of employment with Alcon was increased personal income.

27.    Because the Individual Defendants were managers and managing agents of BVI, Plaintiff had every reason to believe and did believe their representations to him.

28.    Therefore, in justifiable reliance upon the above-described assurances, Plaintiff resigned from Alcon and accepted employment as an Equipment Sales Manager with BVI on October 2, 2021.

**THE FALSITY OF DEFENDANTS' PROMISES ARE IMMEDIATELY APPARENT**

29.    Defendants surely knew their promises were false, as none of the circumstances represented were true, and Defendants had no prospect of fulfilling their assurances to Plaintiff. Their motives in making such fraudulent promises were: (a) to lure Plaintiff to leave Alcon for the purpose of obtaining his skills and expertise; (b) to undermine Alcon by stealing one of its top sales assets; and/or (c) to destroy Plaintiff as a potential adversary in the marketplace.

30.    In April of 2022, Plaintiff realized he had been duped, as he began to discovery that every promise was false. BVI had very few account managers, they were not "strong," as advertised, and there was significant turnover in their ranks. The lack of strong account support severely hampered his ability to close deals and maintain client accounts. The problems stemming from the lack of account manager support were myriad and included Plaintiff losing several long-term clients.

31.    Furthermore, Plaintiff was not issued a company credit card for many months, and when he finally received a card, there were several problems, including that his name was inaccurately recited on the card. Thus, Plaintiff was required to expend his own funds and utilize his own credit.

///

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 5 -

COMPLAINT

32.    BVI's endoscopy system also was not as promised.  It was 25 years old and was certainly not "cutting edge" technology.  This outdated technology hamstrung Plaintiff's ability to make sales and to build or maintain client relationships.  No one was interested in replacing outdated technology with other archaic systems.  Unable to make sales, Plaintiff was unable to earn commissions, preventing him from maintaining the income he had achieved in his prior employment.

33.    The Beyeonics system never got off of the ground.  In fact, it was so far behind in the development process that it was removed from the market twice in 2022.  This too deprived Plaintiff of a viable product to sell, preventing him from earning commissions and dramatically reducing his income from the levels he had achieved at Alcon

34.    Additionally, the Phaco system was delayed until at least 2025, so Plaintiff was never able to sell it.  This too prevented him from earning commissions and maintaining the income and lifestyle he had enjoyed while employed at Alcon.

35.    In summary, every material assurance that Plaintiff sought and Defendants made to him was false, and Defendants necessarily knew them to be so.  Defendants knowingly made those false promises to ensure that Plaintiff would end his long tenure with Alcon to join BVI, to his severe financial detriment.

### PLAINTIFF'S DIRECT MANAGER DISPLAYS AGEIST ANIMUS

36.    In November of 2021, shortly after Plaintiff began his short tenure with BVI, his direct manager, Ryan Mikulich, instructed him, "If you decide to retire give me a heads up to transition a new person."

37.    Plaintiff, who was sixty-four (64) years old at the time, had never mentioned retirement, let alone suggested that he was considering retiring then or any time in the future.

38.    Yet Mr. Mikulich repeated the instruction in March of 2022.

/ / /

/ / /

/ / /

/ / /

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 6 -
COMPLAINT

## DEFENDANTS TERMINATE PLAINTIFF DESPITE HIS
## ADMIRABLE SALES WHILE HAMSTRUNG BY BVI'S POOR OFFERINGS

39. During his tenure with BVI, Plaintiff received consistent praise from his superiors, never being admonished, warned, or poorly reviewed. Indeed, he excelled despite the adverse circumstances he was falsely lured into.

40. By late October of 2022, notwithstanding Defendants' false misrepresentations and being constrained by the true circumstances at BVI (as described above), Plaintiff was only two sales short of his annual quota. He and Defendants had every reason to believe that he would meet that quota with the two busiest months of the year—November and December—ahead of him.

41. Despite Plaintiff's remarkable sales successes under fraudulently-misrepresented, adverse circumstances, BVI terminated his employment on October 26, 2022. Ryan Mikulich and Cara McDonald delivered the shocking news during a Microsoft Teams video call on Plaintiff's mobile phone. He was sixty-five (65) years old. His earnings during his year of employment with BVI were approximately $189,000.

42. Minutes before terminating Plaintiff, BVI terminated another Equipment Sales Manager, John McHenry, age sixty-three (63).

43. Meanwhile, the company retained the remaining three Equipment Sales Managers, ages thirty-three (33), thirty-six (36), and thirty-eight (38), two of whom had worse sales numbers than both Plaintiff and Mr. McHenry. The younger Equipment Sales Managers whom BVI retained had similar salaries and commission arrangements, yet BVI retained them despite two having lower sales.

44. Plaintiff was singled out for termination due to his age, leaving him unemployed and without income to support himself at age sixty-five (65).

45. Had Defendants not fraudulently induced Plaintiff to leave his gainful, long-term employment at Alcon, he would have continued his successful sales career at that company and would remain employed and earning an ever-increasing salary and commissions.

///
///

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 7 -

COMPLAINT

**FIRST CAUSE OF ACTION**

**(Promissory Fraud Against All Defendants)**

46.     Plaintiff hereby refers to all preceding paragraphs, inclusive, and incorporates said paragraphs as set forth herein.

47.     The elements of promissory fraud are: (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

48.     As detailed above, Defendants knowingly misrepresented several material facts (elements 1 and 2) in the process of and for the purpose of inducing Plaintiff to leave his employment of nearly thirty (30) years with Alcon to bring his valuable and then-competing skillset and his client contacts to BVI (elements 3).

49.     Plaintiff reasonably and justifiably relied on those promises, made by the Individual Defendants on behalf of BVI, because the Individual Defendants were managers and managing agents of BVI (element 4).

50.     Due to and as a proximate result of Defendants' misrepresentations and Plaintiff's actions taken in reliance upon those fraudulent promises, Plaintiff suffered pecuniary harm in the form of lost income and benefits of employment while employed at BVI and following BVI's termination of his employment (element 5), in sums to be proven at trial.

51.     Due to and as a proximate result of Defendants' actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial (element 5).

52.     Defendants' acts as alleged herein—undertaken by BVI's managing agents—were willful, fraudulent, wanton, malicious, and oppressive. Plaintiff is therefore entitled to exemplary and punitive damages against Defendants in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

/ / /

/ / /

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 8 -

COMPLAINT

## SECOND CAUSE OF ACTION

**(Age Discrimination—Cal. Gov. Code § 12940 *et seq.*
Against Defendants BVI Holdings and BVI, Inc., and the Doe Defendants)**

53.    Plaintiff hereby refers to paragraphs 1 through 45, inclusive, and incorporates said paragraphs as set forth herein.

54.    A *prima facie* case of age discrimination is established by alleging: "(1) at the time of the adverse action [the plaintiff employee] was 40 years of age or older, (2) an adverse employment action was taken against the employee, (3) at the time of the adverse action the employee was satisfactorily performing his or her job and (4) the employee was replaced in his position by a significantly younger person [or a younger person did not suffer the same adverse action]. (*Hersant v. California Dept. of Social Services* (1997) 57 Cal.App.4th 997, 1002-1003; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317, 367 ["a prima facie inference of discrimination can arise from evidence that during a work force reduction, a satisfactory age-protected worker was laid off, while younger employees were retained in similar jobs, or were reassigned to positions for which the plaintiff also qualified."].)

55.    Defendants, through Ryan Mikulich and Cara McDonald, terminated Plaintiff on October 26, 2022, when he was sixty-five (65) years old (elements 1 and 2).

56.    As detailed above, despite extremely adverse circumstances, Plaintiff was excelling in his job and was on track to meet or exceed his quota, had he not been terminated prior to the two busiest sales months of the year (element 3).

57.    Yet BVI retained significantly younger sales employees with similar compensation and commission plans, despite those younger employees making fewer sales than Plaintiff (element 4).

58.    This course of conduct, as described above, was motivated by ageist bias.

59.    Due to and as a proximate result of BVI's discriminatory termination of Plaintiff, he suffered pecuniary harm in the form of lost income and benefits following BVI's termination of his employment (element 5), in sums to be proven at trial.

///

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 9 -
COMPLAINT

60. Due to and as a proximate result of BVI's actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial.

61. BVI's acts as alleged herein—undertaken by its managing agents—were willful, fraudulent, wanton, malicious, and oppressive. Plaintiff is therefore entitled to exemplary and punitive damages against BVI in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

## THIRD CAUSE OF ACTION

**(Failure to Prevent Discrimination—Cal. Gov. Code § 12940(k)
Against Defendants BVI Holdings, and BVI, Inc. and the Doe Defendants)**

62. Plaintiff hereby refers to paragraphs 1 through 45 and 54 through 58, inclusive, and incorporates said paragraphs as set forth herein.

63. California Government Code section 12940(k) makes it unlawful for an employer to fail to take all reasonable steps to prevent discrimination from happening. This cause of action has "three essential elements: 1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm." (*Leiaind v. City and County of San Francisco* (N.D.Cal. 2008) 576 F.Supp.2d 1079, 1103.) Proof of discrimination establishes a failure to prevent discrimination. (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 288.)

64. As described above, BVI unlawfully discriminated against and terminated Plaintiff due to his age (elements 1).

65. BVI, therefore, failed to take all reasonable steps to prevent said discrimination, against Plaintiff from occurring (element 2), in violation of Government Code section 12940(k).

66. Due to and as a proximate result of BVI's unlawful termination of Plaintiff, he suffered pecuniary harm in the form of lost income and benefits following BVI's termination of his employment (element 3), in sums to be proven at trial.

///

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 10 -

COMPLAINT

67.    Due to and as a proximate result of BVI's actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial (element 3).

68.    BVI's acts as alleged herein—undertaken by its managing agents—were willful, fraudulent, wanton, malicious, and oppressive.  Plaintiff is therefore entitled to exemplary and punitive damages against BVI in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

## FOURTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy Against Defendants BVI Holdings and BVI, Inc., and the Doe Defendants)

69.    Plaintiff hereby refers to paragraphs 1 through 45 and 54 through 58, inclusive, and incorporates said paragraphs as set forth herein.

70.    The elements of the cause of action for wrongful termination in violation of public policy are (1) employment by the defendant, (2) termination, (3) the claimed violation of public policy "was a motivating reason" for the termination, and (4) harm. (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641.)

71.    As detailed above, BVI employed Plaintiff (element 1), BVI terminated Plaintiff's employment (element 2), and BVI actions were motivated by his age, in violation of Government Code section 12940 *et seq.* (element 3)

72.    BVI, therefore, unlawfully terminated Plaintiff in violation of the fundamental public policy of the State of California enshrined in, *inter alia*, Government Code section 12940 *et seq.*

73.    Due to and as a proximate result of BVI's discriminatory termination of Plaintiff, he suffered pecuniary harm in the form of lost income and benefits following BVI's termination of his employment, in sums to be proven at trial (element 4).

74.    Due to and as a proximate result of BVI's actions and their devastating impacts on Plaintiff, he suffered extreme mental anguish, emotional distress, and humiliation, which may only be redressed through remunerations in sums to be proven at trial (element 4).

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 11 -

COMPLAINT

75. BVI's acts as alleged herein—undertaken by its managing agents—were willful, fraudulent, wanton, malicious, and oppressive. Plaintiff is therefore entitled to exemplary and punitive damages against BVI in amounts to be determined at trial as punishment and in order to deter future wrongful conduct.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

**ON THE FIRST CAUSE OF ACTION (all Defendants):**

1. For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2. For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3. For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4. For costs of suit incurred;

5. For punitive and exemplary damages, according to proof; and

6. For any other and further relief as the Court deems just and proper.

**ON THE SECOND CAUSE OF ACTION (BVI Holdings, BVI, Inc., and Does):**

1. For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2. For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3. For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4. For all other damages available for violation of Government Code section 12940;

5. For an award of attorney's fees pursuant to Government Code section 12965(b), and any other applicable provisions of California statutory or common law;

6. For costs of suit incurred;

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 12 -

COMPLAINT

7.    For punitive and exemplary damages, according to proof; and

8.    For any other and further relief as the Court deems just and proper.

**ON THE THIRD CAUSE OF ACTION (BVI Holdings, BVI, Inc., and Does):**

1.    For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2.    For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3.    For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4.    For all other damages available for violation of Government Code section 12940;

5.    For an award of attorney's fees pursuant to Government Code section 12965(b), and any other applicable provisions of California statutory or common law;

6.    For costs of suit incurred;

7.    For punitive and exemplary damages, according to proof; and

8.    For any other and further relief as the Court deems just and proper.

**ON THE FOURTH CAUSE OF ACTION (BVI Holdings, BVI, Inc., and Does):**

1.    For special and compensatory damages according to proof, including past and future lost earnings, other employment benefits, and costs of seeking other employment;

2.    For general damages according to proof, including damages for emotional distress, humiliation, and mental anguish;

3.    For interest at the legal rate from the date of injury or pursuant to Code of Civil Procedure section 3287;

4.    For costs of suit incurred;

5.    For punitive and exemplary damages, according to proof; and

6.    For any other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

MUCH SHELIST P.C.
660 NEWPORT CENTER DRIVE, SUITE 900
NEWPORT BEACH, CA 92660

- 13 -

COMPLAINT

**MUCH SHELIST P.C.**
**660 NEWPORT CENTER DRIVE, SUITE 900**
**NEWPORT BEACH, CA 92660**

**JURY DEMAND**

Plaintiff demands a trial by jury of this action.

DATED: March 25, 2025

MUCH SHELIST, P.C.

_____

ISAAC R. ZFATY
JONATHAN D. YANK
Attorneys for Plaintiff JOHN CHARKY

- 14 -

COMPLAINT

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Isaac R. Zfaty (SBN 214998) / Jonathan D. Yank (SBN 215495)
MUCH SHELIST, P.C., 660 Newport Center Drive, Ste. 900, Newport Beach, CA 92660

TELEPHONE NO.: (949) 767-2200    FAX NO.: (949) 385-5355
EMAIL ADDRESS: IZfaty@muchlaw.com / JYank@muchlaw.com
ATTORNEY FOR *(Name)*: Plaintiff JOHN CHARKY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

**Electronically FILED by
Superior Court of California,
County of Los Angeles
3/25/2025 11:45 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Tarasyuk, Deputy Clerk**

CASE NAME:
John Charky v. Beaver-Visitec International Holdings, Inc., et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000) — [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder — Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **25STCV08581** |
| | | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[x] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify)*: 4
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 25, 2025

Jonathan D. Yank
_____    ▶    _____
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; |
|---|---|---|
| Judicial Council of California | | Cal. Standards of Judicial Administration, std. 3.10 |
| CM-010 [Rev. January 1, 2024] | | www.courts.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. January 1, 2024]  **CIVIL CASE COVER SHEET**  Page 2 of 2

| SHORT TITLE | CASE NUMBER |
|---|---|
| John Charky v. Bever-Visitec International Holdings, Inc., et al. | |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | | |
|---|---|---|
| 1. | Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. | Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. | Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. | Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. | Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. | Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| | | |
|---|---|---|
| LASC CIV 109 Rev. 01/23<br>For Mandatory Use | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | LASC Local Rule 2.3 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| John Charky v. Bever-Visitec International Holdings, Inc., et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| Other Personal Injury/ Property Damage/ Wrongful Death | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| Non-Personal Injury/Property Damage/Wrongful Death Tort | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| Employment | Wrongful Termination (36) | ☒ 3601 Wrongful Termination | 1, ②, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| Contract | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

LASC CIV 109 Rev. 01/23          CIVIL CASE COVER SHEET ADDENDUM          LASC Local Rule 2.3

For Mandatory Use                 AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| John Charky v. Bever-Visitec International Holdings, Inc., et al. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Contract (Continued)** | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br>                    Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| John Charky v. Bever-Visitec International Holdings, Inc., et al. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| John Charky v. Bever-Visitec International Holdings, Inc., et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | 5509 1/4 Radford Avebye |

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|
| Valley Village | CA | 92607 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: 03/21/2025

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| | | |
|---|---|---|
| LASC CIV 109 Rev. 01/23 | CIVIL CASE COVER SHEET ADDENDUM | LASC Local Rule 2.3 |
| For Mandatory Use | AND STATEMENT OF LOCATION | |



*Superior Court of California, County of Los Angeles*
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE**

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

**TYPES OF ADR**

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

**ADVANTAGES OF ADR**

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

**DISADVANTAGES OF ADR**

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

**WEBSITE RESOURCES FOR ADR**

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)**

Litigants should closely review the requirements for each program and the types of cases served.

- **Online Dispute Resolution (ODR).** Online Dispute Resolution (ODR) is a free online service provided by the Court to help small claims and unlawful detainer litigants explore settlement options before the hearing date without having to come to court. ODR guides parties through a step-by-step program. After both sides register for ODR, they may request assistance from trained mediators to help them reach a customized agreement. The program creates settlement agreements in the proper form and sends them to the Court for processing. Parties in small claims and unlawful detainer cases must carefully review the notices and other information they receive about ODR requirements that may apply to their case. *For more information, visit https://my.lacourt.org/odr.*

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012<br><br>NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>03/25/2025<br><br>David W. Slayton, Executive Officer / Clerk of Court<br><br>By: _____ Y. Tarasyuk _____ Deputy |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>25STCV08581 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Barbara A. Meiers | 12 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    David W. Slayton, Executive Officer / Clerk of Court

on 03/25/2025 _____    By Y. Tarasyuk _____, Deputy Clerk
    (Date)

LACIV 190 (Rev 6/18)    **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

LACIV 190 (Rev 6/18)       **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

MAR 2 7 2025

# EXHIBIT D

SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389)
jmeer@seyfarth.com
Romtin Parvaresh (SBN 301554)
rparvaresh@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Defendants
BEAVER-VISITEC INTERNATIONAL HOLDINGS,
INC. and BEAVER-VISITEC INTERNATIONAL, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JOHN CHARKY,<br><br>           Plaintiff,<br><br>     v.<br><br>BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC., a Delaware corporation, dba BVI Medical; BEAVER-VISITEC INTERNATIONAL, INC,, a.Massachusetts corporation, dba BVI Medical; CARA MACDONALD STUART, an individual; RYAN MIKULICH, an individual; LINDSAY LANDENBURG, an individual; DARIN DIXOND, an individual; and DOES 1-10, inclusive,<br><br>           Defendants. | Case No. 25STCV08581<br><br>Assigned to Hon. Holly J. Fujie, Dept. 56<br><br>**DEFENDANTS BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC. AND BEAVER-VISITEC INTERNATIONAL, INC.'S ANSWER TO PLAINTIFF JOHN CHARKY'S UNVERIFIED COMPLAINT**<br><br>Complaint Filed: March 25, 2025 |

Defendants Beaver-Visitec International Holdings, Inc. and Beaver-Visitec International, Inc. (collectively, "Defendants"), hereby answer the unverified Complaint ("Complaint") filed by Plaintiff John Charky ("Plaintiff") as follows:

## GENERAL DENIAL

Pursuant to California Code of Civil Procedure section 430.10(d) and (e), Defendants deny, generally and specifically, each and every allegation, statement, matter, and each purported cause of action contained in the Complaint, and without limiting the generality of the foregoing, deny that Plaintiff has been damaged in the manner or sums alleged, or in any way at all, by reason of any acts or omissions of Defendants. Defendants further deny, generally and specifically, that Plaintiff has been damaged or injured in any amount, or at all, by reason of any alleged act or omission of Defendants.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Defendants assert these affirmative or additional defenses without thereby assuming the burden of proof on any defense on which they would not otherwise have the burden of proof by operation of law:

## FIRST SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE
### (Failure to State a Cause of Action—All Causes of Action)

1.    Plaintiff's Complaint, and each purported cause of action therein, fail to state facts sufficient to constitute a cause of action or state a claim upon which relief may be granted against Defendants.

## SECOND SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE
### (Statute of Limitations—All Causes of Action)

2.    Plaintiff's claims are barred in whole or in part by the applicable statutes of limitations, including, but not limited to, California Civil Code §§ 335.1 and 338 and California Government Code §§ 12940, 12960, and 12965.

## THIRD SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE
### (At-Will Employment—All Causes of Action)

3.    Plaintiff's claims are barred because his employment was at-will under California Labor Code § 2922 and is shown by his relatively short length of service, failure to receive consistent pay

2

317375517v.2

raises, failure to receive consistent exemplary performance reviews, and failure to receive promotions. To the extent that Plaintiff received any oral or implied assurances of continued employment, they are barred by Defendant's written at-will employment policies and the employment agreement signed by Plaintiff.

### FOURTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

#### (Estoppel—All Causes of Action)

4. Plaintiff is equitably estopped from asserting his claims for relief to the extent Plaintiff has, by his own conduct, intentionally induced, caused, and/or contributed to the alleged conduct of Defendants of which he now complains.

### FIFTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

#### (Laches—All Causes of Action)

5. Plaintiff's claims are barred in whole or in part by the equitable doctrine of laches.

### SIXTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

#### (*Res Judicata* And Collateral Estoppel—All Causes of Action)

6. Plaintiff's Complaint, and each purported cause of action alleged therein, are barred by the doctrines of *res judicata* and/or collateral estoppel, to the extent Plaintiff asserted the same claims in any prior legal or administrative proceeding, and did not prevail on such claims.

### SEVENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

#### (Unclean Hands—All Causes of Action)

7. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### EIGHTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

#### (No Promise Regarding Material Fact Without Intent To Perform—First Cause of Action)

8. Plaintiff's claim for promissory fraud fails because there was no promise made regarding a material fact, as opposed to merely an opinion, without any intention of performing.

### NINTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

#### (Intent To Perform At The Time Promise Was Made—First Cause of Action)

9. Plaintiff's claim for promissory fraud fails because, to the extent there was a promise made regarding a material fact, there was an intent to perform at the time the promise was made.

3

317375517v.2

### TENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

**(No Misrepresentation Of Past Or Existing Facts—First Cause of Action)**

10.     Plaintiff's claim for promissory fraud fails because, to the extent there was a promise made regarding a material fact, any such promise was based on future facts, and fraud requires a misrepresentation of past or existing facts.

### ELEVENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

**(No Intent To Deceive Or Induce—First Cause of Action)**

11.     Plaintiff's claim for promissory fraud fails because, to the extent there was a promise made regarding a material fact, there was no intent to deceive or induce Plaintiff to enter into a transaction.

### TWELFTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

**(No Reasonable Reliance—First Cause of Action)**

12.     Plaintiff's claim for promissory fraud fails because, to the extent there was a promise made regarding a material fact, Plaintiff did not reasonably rely on the promise.  Plaintiff alleges that he was an experienced executive in Defendants' industry and, therefore, should have known the product offerings and sales operations of Defendants, such that it was not reasonable for him to rely on any alleged misrepresentations.

### THIRTEENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

**(Performance Of All Terms Of Promise—First Cause of Action)**

13.     Plaintiff's claim for promissory fraud fails because, to the extent there was a promise made regarding a material fact, Defendants performed on every term of the promise made to Plaintiff.

### FOURTEENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

**(No Damage From Alleged Misrepresentation—First Cause of Action)**

14.     Plaintiff's claim for promissory fraud fails because, to the extent there was a promise made regarding a material fact, Plaintiff did not suffer any damage from any alleged misrepresentation. Instead, any harm to Plaintiff was based on his own inability to meet Defendants' reasonable expectations for his performance.

BVI DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

317375517v.2

**FIFTEENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(California Labor Code §§ 2854 and 2856—Lack of Ordinary Care and Diligence—
All Causes of Action)**

15.    Plaintiff's claims are barred by virtue of California Labor Code §§ 2854 and 2856 in that Plaintiff failed to use ordinary care and diligence in the performance of his duties and failed to comply substantially with the reasonable directions of his employer.

**SIXTEENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(California Labor Code § 2857—Failure to Perform in Conformity to Usage of the Place—
All Causes of Action)**

16.    Plaintiff's claims, in whole or in part, are barred to the extent that Plaintiff failed to perform his services in conformity to the usage of the place of performance, unless otherwise directed by Defendants, pursuant to California Labor Code § 2857.

**SEVENTEENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(California Labor Code § 2858—Failure to Use Degree of Skill—All Causes of Action)**

17.    Plaintiff's claims, in whole or in part, are barred to the extent that Plaintiff failed to exercise a reasonable degree of skill in performing his job duties, pursuant to California Labor Code § 2858.

**EIGHTEENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(California Labor Code § 2859—Failure to Use Skill Possessed—All Causes of Action)**

18.    Plaintiff's claims, in whole or in part, are barred to the extent that Plaintiff did not use such skill as he possesses, so far as the same was and is required, for the service specified for Defendants, pursuant to California Labor Code § 2859.

**NINETEENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(California Labor Code § 2924—Plaintiff Willfully Breached His Duties—All Causes of Action)**

19.    Plaintiff's claims are barred by virtue of California Labor Code § 2924 in that Plaintiff willfully breached his duties in the course of his employment and/or was continually incapacitated to perform his job duties.

BVI DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

317375517v.2

## TWENTIETH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Substantial Compliance—All Causes of Action)

20.     Plaintiff's Complaint, and each purported cause of action alleged therein, are barred in whole or in part because Defendants complied with their statutory obligations, and to the extent it is determined that there was technical non-compliance, Defendants substantially complied with their obligations and are not liable in whole or in part for the claims of Plaintiff.

## TWENTY-FIRST SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Destruction of Records—All Causes of Action)

21.     Plaintiff's Complaint, and each purported cause of action alleged therein, fail to the extent that Plaintiff spoliated, destroyed, failed to produce, and/or failed to maintain the records necessary to pursue his claims, damages, or penalties sought.

## TWENTY-SECOND SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Waiver—All Causes of Action)

22.     Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

## TWENTY-THIRD SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Release—All Causes of Action)

23.     Plaintiff's claims are barred in whole or in part to the extent he has executed a release encompassing claims alleged in his Complaint.

## TWENTY-FOURTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Injury—All Causes of Action)

24.     Plaintiff sustained no injuries, damages or loss by reason of any act of Defendants.

## TWENTY-FIFTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Consent—All Causes of Action)

25.     Assuming *arguendo* that any unlawful conduct occurred, which Defendants deny, Plaintiff knowingly and voluntarily consented to the conduct of which he complains.

## TWENTY-SIXTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Privilege/Justification—All Causes of Action)

26.     Assuming *arguendo* that any of the actions alleged in the Complaint were taken by

6

Defendants, such actions were at all times privileged or justified.

**TWENTY-SEVENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(Prompt Remedial Action—All Causes of Action)**

27.     To the extent that Plaintiff complained of any unlawful conduct, Defendants took prompt and appropriate remedial action to investigate and address his complaint(s) and took appropriate corrective action.

**TWENTY-EIGHTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(Failure of Condition Precedent Based on Failure to Exhaust Administrative Remedies—All Causes Of Action)**

28.     Plaintiff's claims are barred in whole or in part to the extent that Plaintiff failed to exhaust his administrative remedies or prerequisites prior to filing this action as required by California Government Code §§ 12960 and 12965.

**TWENTY-NINTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(Mixed Motive—All Causes of Action)**

29.     Plaintiff's claims are barred in whole or in part to the extent that Plaintiff demonstrates that his protected status or activities were a motivating factor for any challenged employment action, on the grounds that Defendants would have taken the same action for legitimate, independent reasons in the absence of such impermissible motivating factor.

**THIRTIETH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(Workers' Compensation Exclusivity—All Causes of Action)**

30.     Any claims by Plaintiff based in whole or in part upon any alleged physical or emotional injury or distress are barred because Plaintiff's sole and exclusive remedy, if any, for such injuries, is governed by the California Workers' Compensation Act pursuant to California Labor Code §§ 3600 *et seq.*

**THIRTY-FIRST SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(Failure To Mitigate Damages—All Causes of Action)**

31.     Plaintiff is not entitled to back pay, front pay, and/or other economic damages, to the extent that he failed to seek and obtain other employment and otherwise failed to mitigate his alleged

7

317375517v.2

loss of wages or other damages.

## THIRTY-SECOND SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Collateral Source Of Emotional Distress—All Causes of Action)

32.    Plaintiff's claims for emotional distress fail on the grounds that any alleged emotional distress was caused by a collateral source, wholly apart from the alleged conduct of Defendants.

## THIRTY-THIRD SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Avoidable Consequences Doctrine—All Causes of Action)

33.    The Complaint, and each purported cause of action alleged therein, are barred by the avoidable consequences doctrine.

## THIRTY-FOURTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Failure To Invoke Internal Complaint Procedures—All Causes of Action)

34.    The Complaint, and each purported cause of action alleged therein, are barred to the extent Plaintiff did not invoke all of the internal complaint procedures arising from alleged discrimination or other unlawful conduct, or Plaintiff unreasonably delayed in invoking such procedures through Defendants' Human Resources Department or through other personnel authorized to directly deal with such issues.

## THIRTY-FIFTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Failure To Exercise Reasonable Preventive Or Corrective Opportunities—All Causes of Action)

35.    To the extent any of the Defendants' employees or agents engaged in unlawful discriminatory behavior toward Plaintiff, Defendants are not liable for any such discrimination and/or Plaintiff's damages must be reduced, because Defendants exercised reasonable care to prevent and correct promptly any discriminatory behavior, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided or to otherwise avoid harm.

## THIRTY-SIXTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Failure to Inform Defendants of Alleged Violations—All Causes of Action)

36.    Plaintiff's claims, in whole or in part, are barred to the extent that Plaintiff failed to inform Defendants of any alleged unlawful conduct or purported complaints, prior to filing a lawsuit. Plaintiff, therefore, did not provide Defendants with an opportunity to correct any alleged violations and

8

317375517v.2

provide the appropriate remedy, if any, to Plaintiff prior to the time Plaintiff filed this lawsuit.

## THIRTY-SEVENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Comparative Fault—All Causes of Action)

37.    To the extent Plaintiff suffered any damages or injuries as alleged in the Complaint, such injuries or damages were caused, in whole or in part, by the acts or omissions of Plaintiff himself, and any recovery is therefore barred or reduced in accordance with Plaintiff's negligent, reckless, or intentional conduct.

## THIRTY-EIGHTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Intentional Conduct—All Causes of Action)

38.    Plaintiff's claims are barred to the extent that he cannot show that Defendants engaged in intentional conduct that is required for claims of discrimination against him on the account of any protected characteristic.

## THIRTY-NINTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Extreme and Outrageous Conduct—All Causes of Action)

39.    Plaintiff's Complaint, and each purported cause of action alleged therein, fail to allege facts sufficient to show any extreme and outrageous conduct on the part of Defendants, and therefore, fail to support a claim for emotional distress damages.

## FORTIETH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Severe Emotional Distress—All Causes of Action)

40.    Plaintiff's claims, in whole or in part, are barred to the extent that Plaintiff has not suffered any severe emotional distress, as required to support a claim for emotional distress damages.

## FORTY-FIRST SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Lawful Policies—All Causes of Action)

41.    Plaintiff's claims are barred in whole or in part because Defendants have strict anti-discrimination policies during the time in which Plaintiff was employed and which were strictly enforced.

9

317375517v.2

## FORTY-SECOND SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Adequate Investigation—All Causes of Action)

42.    Plaintiff's claims are barred in whole or in part because Defendants conducted and completed an adequate investigation as to any alleged unlawful conduct or any alleged conduct in violation of Defendants' policies.  Defendants gave Plaintiff a full and fair opportunity to participate in the investigation and to provide any information that he wanted to be considered.  Defendants then considered all of the information provided by Plaintiff, all of the information provided from all other sources, and the totality of circumstances before finalizing its investigation.

## FORTY-THIRD SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Good Faith—All Causes of Action)

43.    Plaintiff's claims are barred in whole or in part to the extent that any and all conduct of which Plaintiff complains or which is attributable to Defendants was undertaken in good faith and without malice, was a lawful exercise of sound discretion of Defendants' legal rights, and was based on a rational, reasonable consideration of the facts.

## FORTY-FOURTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Attorneys' Fees Or Costs—All Causes Of Action)

44.    Plaintiff's claim for recovery of attorneys' fees and costs are precluded to the extent such fees and costs are not recoverable by statute or by contract.  Plaintiff's claim for attorneys' fees and costs are also precluded to the extent that such fees and costs are not adequately documented and are not reasonable.

## FORTY-FIFTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Joint Employer Or Alter-Ego Liability—All Causes Of Action)

45.    To the extent that Plaintiff's claims rest on a theory that any alleged misconduct was committed by a joint employer or alter-ego of Defendants, his claims are not viable because Plaintiff has failed to allege adequate facts to show a joint employer or alter-ego relationship.

10

BVI DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

317375517v.2

## FORTY-SIXTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Pretext for Unlawful Discrimination— All Causes Of Action)

46.    Plaintiff's claims are barred in whole or in part to the extent that he failed to show that Defendants' actions were a pretext for unlawful discrimination or to mask an unlawful motive.

## FORTY-SEVENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Legitimate Business Reasons—All Causes Of Action)

47.    Plaintiff's claims are barred in whole or in part because the alleged treatment complained of by Plaintiff, if it occurred, is permissible as it was based on legitimate, good-faith, and non-discriminatory reasons.

## FORTY-EIGHTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Management Discretion/Business Judgment—All Causes Of Action)

48.    Plaintiff's claims are barred in whole or in part to the extent that any and all conduct of which Plaintiff complains or which is attributable to Defendants was a just and proper exercise of management discretion undertaken for a fair and honest reason, and was a reasonable exercise of business judgment not forbidden by law.

## FORTY-NINTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Mistaken, Incorrect, Or Inaccurate Reasons For A Decision Do Not Constitute Discriminatory Reasons—All Causes Of Action)

49.    Plaintiff's claims are barred in whole or in part to the extent that any and all conduct of which Plaintiff complains or which is attributable to Defendants was not pretext for illegal discrimination. The mere fact that Defendants' personnel decisions with respect to Plaintiff may seem poor or erroneous, or based on erroneous facts or no facts at all, does not constitute discriminatory reasons. *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 344 (2008) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason .... 'While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is ... whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason ... does not have to be a

11

reason that the judge or jurors would act on or approve.'") (citations omitted).

## FIFTIETH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Scope of Authority—All Causes Of Action)

50.    The Complaint, and each and every purported cause of action therein, are barred to the extent that the actions of Defendants' agents, employees, and representatives, if they occurred, were not actions taken within the course and scope of their employment.

## FIFTY-FIRST SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Offset—All Causes Of Action)

51.    To the extent that Plaintiff is entitled to damages or penalties, Defendants are entitled to an offset for any overpayment of wages or other remuneration previously provided to him.

## FIFTY-SECOND SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Superseding and Intervening Cause—All Causes Of Action)

52.    Plaintiff's alleged injuries or damages were proximately and legally caused by the superseding and intervening conduct of third parties, persons, and entities other than Defendants and therefore, Defendants have no legal liability to Plaintiff herein.

## FIFTY-THIRD SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Speculative Damages—All Causes Of Action)

53.    Plaintiff's losses, if any, are speculative and/or uncertain, and therefore, are not compensable.

## FIFTY-FOURTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Duplicative Damages—All Causes Of Action)

54.    Plaintiff's claims, in whole or in part, are barred to the extent that Plaintiff alleges multiple duplicative statutory causes of action under the Fair Employment and Housing Act ("FEHA") and seeks the same damages or other relief for the same alleged harm.  Plaintiff's claims are also barred to the extent that his theories for wrongful termination in violation of public policy are the same as his theories for violations of the FEHA.

12

317375517v.2

**FIFTY-FIFTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(No Punitive Damages—All Causes Of Action)**

55.     Plaintiff's claim for punitive damages is barred to the extent that there has been a good faith implementation of anti-discrimination policies.  As a result, any alleged conduct in violation Defendants' policies cannot be considered to have been authorized, or subsequently ratified, by Defendants.

**FIFTY-SIXTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(Failure to State a Claim for Relief for Punitive Damages— All Causes Of Action)**

56.     Plaintiff is not entitled to recover any punitive or exemplary damages against Defendants, and any allegations with respect thereto should be stricken because Plaintiff has failed to plead and cannot prove facts sufficient to support allegations of oppression, fraud, and/or malice, perpetrated or ratified by an officer, director, or managing agent of Defendants, as required pursuant to California Civil Code § 3294(a).

**FIFTY-SEVENTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(No Ratification of Conduct for Punitive Damages— All Causes Of Action)**

57.     Defendants are not liable for punitive damages because they committed no alleged oppressive, willful, fraudulent, or malicious acts, authorized or ratified such alleged acts, or had advance knowledge of the unfitness of any employee or employees who allegedly committed such an act, or employed any such employee or employees with a conscious disregard of the rights or safety of others, pursuant to California Civil Code § 3294(b).

**FIFTY-EIGHTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE**

**(Constitutional Bar to Punitive Damages— All Causes Of Action)**

58.     To the extent that Plaintiff seeks punitive or exemplary damages, he violates the rights of Defendants to protection from "excessive fines" as provided in the Eighth Amendment to the United States Constitution and in Article I, Section 17 of the Constitution of the State of California.  Plaintiff also violates the rights of Defendants to substantive and procedural due process as provided in the Fifth

13

and Fourteenth Amendments to the United States Constitution and in the California Constitution, and, therefore, fails to state a cause of action upon which punitive or exemplary damages may be awarded.

## FIFTY-NINTH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (After-Acquired Evidence—All Causes Of Action)

59.     To the extent investigation or discovery discloses information which could serve as a basis for not providing reasonable accommodation or as a basis for the termination of Plaintiff's employment, Plaintiff is barred from recovery by the doctrine of after-acquired evidence; or alternatively the doctrine of after-acquired evidence limits and reduces Plaintiff's alleged damages.

## SIXTIETH SEPARATE AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Wrongful Termination Claim Is Duplicative And Derivative Of Other Claims— Fourth Cause Of Action)

60.     Plaintiff's claim for wrongful termination of violation of public policy fails, because his underlying FEHA claims fail and the violation of a statute or constitutional provision is a requirement for the tort of wrongful termination in violation of public policy.  *See, e.g.*, *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (1999) ("[B]ecause [the plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails."). *Accord Tumblin v. USA Waste of California*, 2016 WL 3922044, at *8  (C.D. Cal. July 20, 2016) (where plaintiff could not make out the underlying claim of discrimination, "he cannot state a derivative claim of wrongful termination in violation of public policy."); *Johnson v. Hertz Local Edition Corp.*,  2004 WL 2496164, at *6 (N.D. Cal. 2004) ("Because plaintiff's discrimination . . . claim[] . . . fail[s] as a matter of law, plaintiff's claim for wrongful termination on those bases also must fail.").

## ADDITIONAL DEFENSES

Defendants presently have insufficient knowledge or information upon which to form a belief as to whether there may be additional, as yet unstated, defenses and reserves the right to assert additional defenses in the event that discovery indicates that such defenses are appropriate.

Defendants do not assume the burden of proof for any of the affirmative or other defenses currently or subsequently alleged in response to Plaintiff's Complaint.  Rather, the applicable burden of proof is a matter of statutory or common law.

14

317375517v.2

**PRAYER**

WHEREFORE, Defendants pray for judgment as follows:

1.    That Plaintiff takes nothing by his Complaint;

2.    That judgment be entered in favor of Defendants and against Plaintiff on all causes of action;

3.    That Defendants be awarded reasonable attorneys' fees according to proof;

4.    That Defendants be awarded the costs of suit incurred herein; and

5.    That Defendants be awarded such other and further relief as the Court may deem appropriate.

DATED: April 23, 2025                           SEYFARTH SHAW LLP

By: _____
        Jon D. Meer
        Romtin Parvaresh
        Attorneys for Defendant
        BEAVER-VISITEC INTERNATIONAL
        HOLDINGS, INC. and BEAVER-VISITEC
        INTERNATIONAL, INC.

15

BVI DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

317375517v.2

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) SS
COUNTY OF LOS ANGELES )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2029 Century Park East, Suite 3500, Los Angeles, California 90067-3021. On April 23, 2025, I served the within document(s):

**DEFENDANTS BEAVER-VISITEC INTERNATIONAL HOLDINGS, INC. AND BEAVER-VISITEC INTERNATIONAL, INC.'S ANSWER TO PLAINTIFF JOHN CHARKY'S UNVERIFIED COMPLAINT**

[X] by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below.

[ ] by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

[ ] by placing the document(s) listed above in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Los Angeles, California, addressed as set forth below.

[ ] by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

[ ] electronically by using the Court's ECF/CM System.

| | |
|---|---|
| Isaac R. Zfaty<br>Jonathan D. Yank<br>MUCH SHELIST, P.C.<br>660 Newport Center Drive, Suite 900<br>Newport Beach, CA 92660 | Attorneys for Plaintiff JOHN CHARKY<br><br>Tel. (949) 767-2200; Fax (949) 385-5355<br><br>Email(s): IZfaty@muchlaw.com;<br>                JYank@muchlaw.com; |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 23, 2025, at Los Angeles, California.

_____
Laura Thixton

1

PROOF OF SERVICE

317438771v.1

# EXHIBIT E

## Contact

www.linkedin.com/in/lindsay-
ladenburg-866b291 (LinkedIn)

## Top Skills

Product Launch

Ophthalmology

Medical Devices

# Lindsay Ladenburg

Nationally recognized Sales Director | Ophthalmology | Equipment and Consumables | Early Commercialization | Strategic life cycle leader | Surgical Retina

Houston, Texas, United States

## Summary

Nationally recognized sales leader and multiple President Club Winner with 20+ years experience shaping and leading people and strategies for both early commercialization and mature products in all phases of the life cycle.

Trusted partner who inspires and empowers colleagues to drive results with a sense of urgency and purpose.

---

## Experience

Leica Microsystems
Director of Sales And Business Development
February 2024 - Present (1 year 3 months)

BVI Medical
4 years 5 months

Director, US Equipment and Retina
September 2021 - December 2023 (2 years 4 months)
Houston, Texas Area

Established a new division with a sales leader and five equipment specialists to reinvigorate our Glaucoma business, commercialize a first in class surgical digital microscope and lay strategic long-range plans for two equipment launches and commercial infrastructure build outs.

Director of Sales, West
August 2019 - September 2021 (2 years 2 months)

Recruited to stabilize and expand the Western division. Hired two managers who led teams of 7-9 representatives to support the BVI surgical portfolio used in cataract surgery.

Johnson & Johnson Vision Care, Inc.
District Sales Manager, Cataract Surgical Sales

June 2015 - July 2019 (4 years 2 months)
Houston, Texas Area

Led a team of 10 surgical specialists to promote a line of intraocular lenses (IOL's), consumables and capital equipment including femtosecond laser and phacoemulsification with annual business revenue of $25M.

## AcelRx Pharmaceuticals, Inc.
Regional Business Director
January 2015 - April 2015 (4 months)
Texas, Arizona, Utah, Colorado

AcelRx Pharmaceuticals, Inc. is a specialty pharmaceutical company focused on the development and commercialization of innovative therapies for the treatment of acute and breakthrough pain. Hired as one of seven Regional Business Director to help prepare the organization for launch, lead the sales force expansion efforts and join the commercial planning team

## Durata Therapeutics
Regional Business Director
April 2013 - January 2015 (1 year 10 months)
Texas and Oklahoma

Hired to lead the pre-commercial market development and post product approval of a first in class long active IV antibiotic.

## Merck
Regional Sales Director-Merck Ophthalmic (Inspire)
February 2004 - March 2013 (9 years 2 months)
Houston, Texas

Direct sales management of nine Territory Managers selling specialty pharmaceuticals to hospitals and physicians.  Call points include teaching institutions, government and community hospitals, surgical centers, and physicians specializing in ophthalmology (cornea, retina, plastics, neuro), optometry, and pediatrics.  Hired, managed, trained and developed new launch team.

## Inspire Pharmaceutical, Inc.
Senior Territory Manager/Regional Sales Trainer
February 2004 - April 2007 (3 years 3 months)

Specialty pharmaceutical sales to hospitals and physicians.  Call points included teaching institutions, government and community hospitals, surgical centers, and physicians specializing in ophthalmology (cornea, retina, plastics, neuro), optometry, and pediatrics.

## Education

University of Arizona

BS, Nutrition Sciences · (1996 - 2000)

# EXHIBIT F

## Contact

www.linkedin.com/in/dixondarin
(LinkedIn)

## Top Skills

Management
Strategic Planning
Project Management

## Languages

Japanese (Limited Working)
English (Native or Bilingual)

# Darin Dixon

VP Medical Device | Disciplined Execution & Accountability | Builder of Winning Teams
Mapleton, Utah, United States

## Summary

I am an accomplished commercial medical device executive with a history of developing high performing teams, leading strategy to execution, scaling organizations for growth, and achieving results. I'm a champion of my people and known for my loyal following of reps, managers, and directors with incredibly low turnover levels and unheard of retention rates with direct reports. I possess varied levels of clinical and OR commercial experience across several disciplines: Ophthalmology, Neurology, ENT, Plastics, Cranio-Facial, and Spine. I'm a seasoned high-level executive with reporting levels to the CEO with regular interactions with the Board of Directors, Medical & Clinical Advisory Boards, and regular interaction with industry leading KOLs.

I'm able to articulate and passionately provide commercial sales leadership across all aspects of the ophthalmic product landscape, create market based pricing strategies, and have more than one time launched from scratch and fully commercialized disruptive products to full profitability.  Some of the areas of my focus has been: Cataracts, IOLs, Glaucoma, Diagnostics, Cornea, Lasers, Visualization, Instrumentation, Consumables, and all facets of Implantable Devices.

A few career highlights:
- Successfully launched the KAMRA Corneal Inlay in US, from pre-FDA panel conversations all the way through FDA approval and full US launch to full profitable commercialization
- Responsible for over 11 other successful commercial product launches globally including diagnostic lasers, visualization systems, several mono-focal and premium IOLs, three phaco machines, corneal rings, neuro fixation devices, and ENT/Neuro Navigation systems.

- Started and built commercial sales teams from scratch to $51M in revenue over 18 month period while maintaining OPEX, and milestone objectives
- Created new departments, orchestrated turnarounds, and facilitated organic and inorganic growth by finding the opportunity in key markets, integrating M&As, opened and closed markets, and took distributor markets direct in several key areas turning profits.
- Multi-Year President's Club winner across several disciplines and industries, and "Of the Year Winner" as an individual contributor, manager, and Director.

Specialties: Commercial Sales Leadership | Cross Functional Leadership | Product Launch Planning & Execution| Transformational Leadership | P&L Stewardship | Disruptive Product Commercialization| Accurate Forecasting | KOL/Advisory Strategy | Ophthalmology | Surgical Devices | Medical Devices | Digital Therapeutics | Capital Equipment

---

## Experience

RxSight, Inc.
Director of Sales
May 2024 - Present (1 year)
Rocky Mountain Region

BVI Medical
Vice President Sales, North America
January 2017 - December 2023 (7 years)
Waltham, MA

- Full P&L Responsibilities.Report directly to the CEO, and interact with the Board of Directors
- Hired by PE firm (TPG) to build and commercialize surgical sales team, clinical application specialists, equipment reps, marketing, training, and entire US Mgt team
- Very clinical sell to ophthalmologists in OR by up-selling surgical knives, packs, IOLs, viscoelastic, glaucoma products, and eventually phaco and laser products in OR environment.
- Set up all sales rep and US, Canada based sales quotas, budgets, compensation & incentive plans. Full responsibility for all training, retention,

President Club incentive programs, and sales advisory panels. Worked tirelessly with supply chain, marketing, customer service, and distribution to ensure seamless positive customer experiences.

- Launched the Beyeonics One HDVisualization system to replace microscopes in routine cataract and retina cases. First of its kind, distruptive technology.

- BVI acquired PhySIOL IOL in Europe and started US clinicals to launch unique tri-focal to US surgeons. Took on responsibility with downstream marketing to hire IOL reps, Clinical App Specialists, and to put in place systems and processes to ensure IOLs can be sold in US and customers can enjoy and benefit from positive experience with the buying experience around IOLs.

- Created several "customer-facing" programs and experiences to ensure BVI captured repeat business, and gave customers the best reason to return again. Experienced tremendous market growth by averaging over 30% YoY growth and over 75% GM yearly.

AcuFocus
Vice President, Global Sales
July 2014 - January 2017 (2 years 7 months)
Irvine, CA

- Sr. Vice President, Global Sales (Chief Commercial Officer). Hired with full global responsibility to launch the KAMRA corneal inlay in the US.  The inlay is a first of its kind, innovative small-aperature intraocular lens (IOL). KAMRA had CE mark upon hiring, but no FDA approved. Went through full FDA Panel, US approval, commercialization, and full product launch in US, Canada, and LATAM.

- Put in place key KOL Advisors, Medical monitors, etc. Worked hand-in-hand with downstream marketing, training, and prof ed to ensure launch criteria and surgical techniques in the field were followed precisely to ensure best possible patient safety, outcomes, and efficacy.

- Hired, trained, and launched product until key milestones were met. Hit over $50M in revenue with combination of AccuTarget HD analyzer and KAMRA corneal implant sales. Strict surgical guidelines were followed and OR based protocols followed to guarantee maximum results

- Certified and trained over 400 MDs and implanted over 33,000 inlays upon launch hitting key milestones and sales targets.

- Created from ground floor all comp plans, quotas, training groundwork and surgeon protocols, sales reps incentives, milestones, and sales controls/

metrics via CRM systems to track customer base, sales order history, trends, and growth metrics

## MicroSurgical Technology
Vice President, Sales
May 2013 - July 2014 (1 year 3 months)
Seattle, Washington, United States

- Responsible for all US Sales functions, P&L responsibility, budgeting, forecasting, and sales execution.
- MST is a leader in cornea, retina, and cataract disposable and reusable instrumentation. US leader in Malyugin ring sales, capsular tension rings, I/A instrumentation, phaco tips, femto-phaco tips, 25g and 27g specialized instrumentation
- Took all distributor sales direct, and doubled size of sales force in just 18 months.

## Abbott
US Sales Director, Surgical Ophthalmology
January 2002 - May 2013 (11 years 5 months)
Western US

- Abbott Medical (formerly AMO, and now J&J Vision) is one of the big 3 in ophthalmic surgical devices, implants, capital, and IOLs to anterior and posterior segment surgeons.
- Sr. VP of Sales for 5 years managing three seperate business units: Surgical, Refractive, Corneal. Responsible for a $175MM+ budget
- Started as rep with AMO, selling IOLs, Phaco, adjuncts, and all products needed for cataracts, LASIK, and glaucoma procedures. Enjoyed tremendous amount of success and over a 5 year period as a rep and RSM, received several "Of the Year" President's Club awards, and multiple Master's Clubs and other top sales awards for my contributions.
- Promoted quickly as a Sr Director of Sales, and ran US Sales for AMO.  Full P&L responsibility with direct reports spanning all areas of: equipment (phaco and lasers), IOL reps, Territory Managers, RSMs, Teaching Institution reps, and Premium Practice Specialists.
-Key member of the executive leadership team, Marketing Advisory Council, and Franchise Team Member.

## Stryker
Sales Representative
January 2000 - January 2002 (2 years 1 month)
Utah, Idaho, Montana, Colorado, Wyoming

- Sold ENT, Plastics, Cranio-Facial, Neuro, and Spine implants, fixation devices and trauma products. Also sold the Stryker Navigation System for Neuro and Spine surgery.
- Covered 5 state area, and managed a sales book of over $6M in revenue averaging over 52% growth YoY and capital equipment growth of over 122% YoY

## Education

University of Utah
Bachelor of Science (BS), Business/Corporate Communications

# EXHIBIT G

JVR No. 1402210041, 2013 WL 7852947 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY

BC484335

DATE OF FILING: October 25, 2012
DATE OF TRIAL/SETTLEMENT: November 12, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $1,904,635**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiff's second amended complaint: 2012 WL 10007313

Defendant's trial brief: 2013 WL 6506751

Verdict form: 2013 WL 6506795

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Scott O. Cummings, Cummings & Franck P.C., Gardena, CA
Plaintiff: Lee Franck, Cummings & Franck P.C., Gardena, CA
Defendant: Calvin R. House, Gutierrez Preciado & House L.L.P., Pasadena, CA
Defendant: Caroline Shahinian, Gutierrez, Preciado & House L.L.P., Pasadena, CA

JUDGE: Kevin C. Brazile

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

General Occupation: General Laborer

**DEFENDANT:**
Sex: O

Organization Type: Los Angeles County Metropolitan Transportation Authority

**DAMAGES:**
Compensatory Pain & Suffering: $1,250,000

Compensatory Future Medical: $185,000

Compensatory Past Wages: $84,348

Compensatory Future Wages: $385,287

Total Compensatory Award: $1,904,635

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: true

Failure Hire: true

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true

**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State

**General Statute: Family and Medical Leave**
General Statute Discrimination: false

Specific Statute: General

**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Raphael Vasquez, a former bus driver, sued the Los Angeles County Metropolitan Transportation Authority for disability discrimination, failure to accommodate, failure to engage in the interactive process, in violation of the Americans with Disabilities Act (ADA), and interference with the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA), and retaliation in violation of the Fair Employment and Housing Act (FEHA) Cal. Gov't. Code Secs. 12940 et seq. The plaintiff alleged during his employment, he suffered from a variety of disabilities, including but not limited to gout, cataracts, blurry vision, diabetes, for which he treated with doctors, and in January 2010, he requested a medical leave of absence for hip replacement surgery due to Avascular Necrosis of the femur, which the defendant admitted he was eligible for, and he provided the necessary documentation indicating he would be out for approximately five months. He asserted following the surgery, his doctor provided a note that he was unable to work until June 1, 2010 due to Trochanteric Bursitis, and aftercare from his hip replacement, thereafter, he was cleared to return to work. Vazquez claimed in November 2010, he had cataract surgery, but the defendant began to use his disabilities for adverse actions, including discipline and suspensions, and in January 2011, he was terminated, and the proffered reason for his termination was his attendance. He asserted the defendant failed to engage in a timely, good faith, interactive process to determine the most effective reasonable accommodations for him, discouraged the use of FMLA leave, which violated the CFRA, and that his disability, his request for and/or taking medical leave were substantial motivating factors in the decision to terminate him. The defendant denied the allegations and contended the plaintiff was charged with excessive absenteeism after accumulating eight absences within a 12-month period, and at his discharge hearing he told the hearing officer he was in perfect health, but that he had treated some medical conditions. The defendant argued that the officer had no reason to believe the plaintiff might be disabled, and terminated him for violating it's attendance policy.

Jury Verdict Research
COURT: Superior

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 116 of 206    Page ID #:144

JVR No. 1403200023, 2013 WL 8115991 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT

BC469940

DATE OF FILING: September 23, 2011
DATE OF TRIAL/SETTLEMENT: December 17, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $5,681,682**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiffs' complaint: 2011 WL 6463766

Verdict form: 2013 WL 6870002

Verdict form (punitive damages): 2013 WL 6869977

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: James R. Rosen, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Elizabeth L. Bradley, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Jonathan S. Dennis, Rosen Saba LLP, Beverly Hills, CA
Defendant: Eric J. Erickson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Christopher M. Habashy, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Marie Dominguez-Gasson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA

JUDGE: Yvette Palazuelos

RANGE AMOUNT: $5,000,000 - 999,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Martha Aboulafia: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Cheryl B. Colgin: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Patricia Monica: F

Age: Adult, 67

General Occupation: Food Service Worker

Sex: Regina Greene: F

Age: Adult, 46

General Occupation: Food Service Worker

**DEFENDANT:**
Sex: O

General Occupation: Restaurant, Nightclub or Tavern

Organization Type: GACN Inc. d/b/a Cable's Restaurant

**DAMAGES:**
Compensatory Pain & Suffering: Martha Aboulafia: $250,000

Compensatory Past Wages: Martha Aboulafia: $58,164

Compensatory Future Wages: Martha Aboulafia: $53,592

Total Compensatory Award: Martha Aboulafia: $361,756

Compensatory Pain & Suffering: Cheryl B. Colgin: $250,000

Compensatory Past Wages: Cheryl B. Colgin: $66,262

Compensatory Future Wages: Cheryl B. Colgin: $131,372

Total Compensatory Award: Cheryl B. Colgin: $447,634

Compensatory Pain & Suffering: Patricia Monica: $250,000

Compensatory Past Wages: Patricia Monica: $95,588

Compensatory Future Wages: Patricia Monica: $157,486

Total Compensatory Award: Patricia Monica: $503,074

Compensatory Pain & Suffering: Regina Greene: $250,267

Compensatory Past Wages: Regina Greene: $56,613

Compensatory Future Wages: Regina Greene: $62,338

Total Compensatory Award: Regina Greene: $369,218

Punitive Damages: $1,000,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: Service/Retail Company**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Age Discrimination**
Primary General Statute Discrimination: true


Specific Statute: General


**General Statute: Wrongful Termination**
General Statute Discrimination: false


Comparative Negligence Percentage: 0


**FACTS:**
58-year-old Martha Aboulafia, 58-year-old Cheryl B. Colgin, 46-year-old Regina Greene, and 67-year-old Patricia Monica, formerly employed as servers, sued GACN Inc. d/b/a Cable's Restaurant, for age discrimination, wrongful termination, in violation of California's public policy, and failure to provide rest periods and/or 30 minute meal periods, pursuant to Cal. Lab. Code Sec. 226.7. The plaintiffs claimed during their employment, they were never the subject of any negative reviews or

disciplinary actions until the restaurant came under new ownership, thereafter, they experienced negative treatment, a reduction in hours, and sudden complaints about job performance. They alleged after the transfer of ownership, suddenly they were systematically harassed, wrongfully terminated, and were replaced by younger female servers. Aboulafia, who worked for the defendant for more than 17 years, contended after the transfer of ownership, two days later she was terminated allegedly because business was slow, and she was told that an unidentified customer had complained about her. Colgin, who worked for the restaurant for more than 14 years, alleged she was also told two days after the transfer that she was no longer needed, but the manager called her again 10 minutes later, and fired her a second time, likely not remembering he had terminated her minutes earlier. Greene, who worked for the restaurant for three years, claimed that after the transfer, she was instructed to train newly hired younger female employees, but seven months later her manager falsely accused her of being under the influence of drugs and/or alcohol, terminated her, and subsequently falsely reported to the California Employment Development Department that she had voluntarily resigned in its attempt to avoid paying her unemployment benefits. Monica, who was employed for 13 years, asserted she was terminated two days after the transfer purportedly because her services were no longer needed, and business was slow. The defendant denied the allegations and contended it used nondiscriminatory factors to facilitate the layoffs, including identifying servers with flexible schedules and a willingness to work with all customers, and that it retained 11 servers employed by former management, and eight of those servers were within the protected class, ranging from 45 to 75 years old. The defendant also claimed the plaintiffs were allowed to take appropriate rest breaks. The jury awarded Aboulafia $1,361,756, Colgin $1,447,634, and Monica $1,503,074 for their age discrimination claims, and Greene's award included $952 for missed rest periods for a total award of $1,369,218.

Jury Verdict Research
COURT: Superior

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 121 of 206    Page ID #:149

43 Trials Digest 16th 11, 2013 WL 5820140 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

Superior Court, Los Angeles County, California.

# Silverman vs. Stuart F. Cooper Inc.

**TOPIC:**

Synopsis: Terminated employee claims age discrimination

Case Type: Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Harassment-General; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: BC467464

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: July 19, 2013

JUDGE: Deirdre H. Hill
**ATTORNEYS:**

Plaintiff: Allen J. Beck, Gleason & Favarote, Los Angeles; Paul M. Gleason, Gleason & Favarote, Los Angeles; Janet S. Yavrouian, Gleason & Favarote, Los Angeles.
Defendant: Charles J. Schufreider, Barton, Klugman & Oetting, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $325,223

Range: $200,000-499,999

$133,222 to plaintiff for past loss of earnings

$40,668 to plaintiff for future loss of earnings

$116,333 to plaintiff for past emotional distress

$35,000 to plaintiff for future emotional distress

The jury found defendants Stuart F. Cooper Inc. or Burdge Cooper Inc. acted with oppression, fraud or malice but declined to award punitive damages.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

Case 2:25-cv-03705-SB-SK   Document 3   Filed 04/25/25   Page 122 of 206   Page ID
#:150

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

**EXPERTS:**

Plaintiff: Not reported.

Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiff Joe Silverman was hired by defendant Stuart F. Cooper Inc. in 1994 as a salesman. Plaintiff said he was compensated with a base salary, commission, expense reimbursement and medical benefits, regardless of sales performance. Plaintiff said his sale performance fluctuated, but he was never subjected to discipline, and he achieved an acceptable sales record. In August 2009, plaintiff was reportedly demoted by defendant David Overgaar, defendant Stuart Cooper's president, without warning and his compensation package was changed. His compensation change converted him to 100 percent commission and limited his automobile reimbursement to $200 per month. Plaintiff said the company had never forced such a compensation package on any other employee. The new package also established a sales quota for plaintiff in order to return to his prior compensation plan. He said he was required to have sales of at least $90,000 over a six-month period with no single job accounting for more than 30 percent of sales. This quota was unprecedented and never applied to other sales employees, plaintiff claimed.

In November 2009, another sales representative, 49, was allegedly hired with a salary plus commissions compensation package.

In October 2010 plaintiff, 76, apparently filed a claim for age discrimination with the Department of Fair Employment and Housing based on the demotion and his change in compensation. Within six months of his complaint, plaintiff said, plaintiff was terminated by defendant Burdge Cooper Inc. for the pretextual reason of "poor attitude."

Plaintiff alleged age discrimination in violation of the Fair Employment and Housing Act and public policy, unlawful retaliation in violation of the FEHA, age harassment in violation of the FEHA, failure to prevent discrimination and harassment in violation of the FEHA, wrongful termination in violation of public policy and failure to pay final wages and waiting time penalties.

**CLAIMED INJURIES**

According to court records:

Emotional distress.

**CLAIMED DAMAGES**

According to court records:

Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed Aug. 12, 2011.

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 123 of 206    Page ID #:151

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

---

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Bisharat vs. Los Angeles Unified School District, 13 Trials Digest 16th 10 (2013)

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 124 of 206    Page ID #:152

13 Trials Digest 16th 10, 2013 WL 1415554 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## Bisharat vs. Los Angeles Unified School District

**TOPIC:**

Synopsis: Teacher claims school district failed to accommodate disability, forced early retirement

Case Type: Labor & Employment; Discrimination; Labor & Employment; Disability/Medical Condition; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Violation of Public Policy

DOCKET NUMBER: BC458496

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: February 15, 2013

JUDGE: Ronald M. Sohigian
**ATTORNEYS:**
Plaintiff: Ellen E. Cohen, Law Offices of Joseph M. Lovretovich, Woodland Hills; Paul M. Gleason, Gleason & Favarote, Los Angeles; Victoria N. Jalili, Law Offices of Joseph M. Lovretovich, Woodland Hills; Joseph M. Lovretovich, Law Offices of Joseph M. Lovretovich, Woodland Hills; Janet S. Yavrouian, Gleason & Favarote, Los Angeles.
Defendant: Charlie L. Hill, Office of General Counsel, Los Angeles; Linda Hurevitz, Ballard, Rosenberg, Golper & Savitt, Glendale; Linda Miller Savitt, Ballard, Rosenberg, Golper & Savitt, Glendale.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $473,750

Range: $200,000-499,999
$138,585 to plaintiff for past lost earnings; $328,165 to plaintiff for future lost earnings; $7,000 to plaintiff for past emotional distress.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

Case 2:25-cv-03705-SB-SK   Document 3   Filed 04/25/25   Page 125 of 206   Page ID #:153

Bisharat vs. Los Angeles Unified School District, 13 Trials Digest 16th 10 (2013)

## CASE INFORMATION

### FACTS/CONTENTIONS

According to court records: Plaintiff Ghassan Bisharat was hired as a teacher for defendant Los Angeles Unified School District in 1983. Throughout plaintiff's employment, he reportedly worked at schools considered to be in violent neighborhoods, and students physically attacked plaintiff on several occasions.

On Feb. 5, 2008, plaintiff was assaulted by a student while reviewing final grades with a group of senior students. A male student reportedly jumped up, began screaming and cursing, and threatened plaintiff to "watch his back." The student then threw various school supplies at plaintiff's face. At the same time, another student reportedly lunged at plaintiff intending to strike him in the face, but she was pulled away before she was able to strike plaintiff. As she was being pulled away she told plaintiff she would burn him alive in his car. Plaintiff filed a written report detailing the incident, and around 3:00 p.m. police arrived and advised plaintiff to leave the school using the side door to avoid running into the students who had assaulted him.

On Feb. 21, 2008, the student who had threatened plaintiff confronted him again. Plaintiff said he began to suffer an extreme panic attack and believed the student wanted to kill him. Plaintiff said he also thought he was having a heart attack. Plaintiff was ultimately put on disability leave.

While out on disability leave plaintiff's doctor advised plaintiff that he could not return to work in any classroom and defendant would need to find him a position outside of the classroom. Plaintiff claimed he had previously done work for defendant outside the classroom including research and publishing research. Plaintiff claimed defendant refused to place plaintiff in a position outside the classroom and told him he had to appeal to a committee if he wanted an alternative position. Plaintiff said the committee denied plaintiff's request and told him his only option was to take early retirement if he wanted to maintain any of his benefits. Plaintiff said that because he was left with no income and the possibility of no benefits, he was forced to file for retirement April 1, 2009. Plaintiff said that at that time, he was four years away from obtaining full retirement benefits and because he was forced to take early retirement he was receiving only a portion of the benefits he would have been entitled to had he been able to continue working.

Plaintiff alleged disability discrimination, failure to prevent discrimination, failure to accommodate a disability, failure to engage in the interactive process and constructive termination in violation of the Fair Employment and Housing Act, Cal. Gov't Code §§ 12940 et seq., and violations of public policy.

Defendant denied liability and contended plaintiff could not perform the essential functions of his job with or without accommodation. Defendants further contended plaintiff's doctor never provided a letter stating that plaintiff could return to work in any classroom setting.

### CLAIMED INJURIES

According to court records:
Emotional distress.

### CLAIMED DAMAGES

According to court records:
Not reported.

### SETTLEMENT DISCUSSIONS

According to court records:

Not reported.

### COMMENTS

According to court records:

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 126 of 206   Page ID #:154

Bisharat vs. Los Angeles Unified School District, 13 Trials Digest 16th 10 (2013)

The complaint was filed March 30, 2011.


Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

---

**End of Document**                                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 127 of 206   Page ID
#:155

Jolly vs. City of Long Beach, 27 Trials Digest 16th 14 (2013)

27 Trials Digest 16th 14, 2013 WL 3340512 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## Jolly vs. City of Long Beach

**TOPIC:**
Synopsis: Former city employee claims discrimination, hostile work environment

Case Type: Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Disability/Medical Condition; Labor & Employment; Harassment-General; Labor & Employment; Retaliation; Labor & Employment; Termination/ Constructive Discharge

DOCKET NUMBER: BC453032

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: May 16, 2013

JUDGE: Terry A. Green
**ATTORNEYS:**
Plaintiff: J. Bernard Alexander III, Alexander, Krakow & Glick, Santa Monica; Tracy L. Fehr, Alexander, Krakow & Glick, Santa Monica.
Defendant: Lisa Bond, Richards, Watson & Gershon, Los Angeles; Robert E. Shannon, Office of City Attorney, Long Beach; Barry M. Meyers, Office of City Attorney, Long Beach.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $325,000

Range: $200,000-499,999
$250,000 to plaintiff for past lost earnings

$75,000 to plaintiff for past noneconomic damages

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiff Gerald Jolly worked for defendant city of Long Beach for almost nine years and last held the position of Information Systems Analyst. Plaintiff said that up until August 2008, he had received a series of favorable reviews and had never been disciplined or reprimanded.

On Aug. 5, 2008, plaintiff received a negative performance evaluation from the Technology Services Officer, defendant Jeanne Takano, and new manager Jack Cuilla. Plaintiff said that although Cuilla had only supervised plaintiff for one year, Cuilla issued an evaluation that purported to address a four-year period dating back to 2004 and that included no input from plaintiff's previous supervisor from that time period. Plaintiff claimed he was the only employee to have received a performance evaluation encompassing four years.

Plaintiff said that prior to September 2008, he had 35 years' experience as a mainframe information systems analyst. In September 2008, at age 57, plaintiff was reassigned to work on a new operating system with which he had no previous experience. Plaintiff requested assignment to one of two available mainframe positions, but was reportedly denied by Takano. Plaintiff claimed that after he left the department, Takano assigned two employees from his team to work in the mainframe system area.

Plaintiff said that at the direction of Takano, plaintiff's supervisor, Michelle Kimura, informed plaintiff he was expected to "master" the new Hansen system, without training or guidance. Plaintiff said that while a rapid learning curve for the Hansen system would be two to three months, he was given four days of training sessions that were completely unrelated to the Hansen system to which he had been assigned. Plaintiff said that when he asked his supervisors questions about the system, he was belittled in his efforts to learn the system and his inquiries were deflected or went unanswered.

Plaintiff said that although he was a member of a group that was expected to work as a team, plaintiff was excluded from attending or participating in staff or team meetings. Plaintiff claimed he was micro-managed and required to account for his whereabouts at every moment. Plaintiff said he was the only employee required to leave a note at his desk notifying employees of his whereabouts for every time he left his desk, including trips to the restroom. Plaintiff claimed he was subjected to disparaging and unprofessional remarks by his supervisors. Plaintiff said he complained about the hostile work environment to both Kimura and Takano, but his complaints went unaddressed. Plaintiff claimed that in response to his complaints, defendants retaliated against him by attacking his work and requiring and soliciting the assistance of plaintiff's supervisor and his coworkers to harass him. Plaintiff said that Takano labeled him a "special project" and specifically instructed Kimura that regardless of plaintiff's efforts, he had to fail.

In addition, plaintiff claimed defendants harassed him based on his disabilities. Plaintiff said he often spoke in a loud voice due to his hearing loss. Takano and Kimura reportedly chastised plaintiff for speaking in a "loud voice" and purposefully mischaracterized his elevated speech as a temper tantrum and reprimanded him. Further, plaintiff said he suffered from high stress and defendants purposefully scheduled meetings with plaintiff several weeks in advance in order to create additional stress for plaintiff. Plaintiff said that within months of working with Takano and Kimura he experienced high blood pressure, severe leg cramps, stress, anxiety, irritability and sleeplessness.

On June 19, 2009, plaintiff took a medical leave of absence due to the allegedly hostile work environment. Plaintiff resigned in late July 2009.

Plaintiff alleged discrimination based on disability and age, harassment, retaliation, failure to engage in the interactive process, failure to prevent discrimination and harassment, and constructive discharge.

Defendant denied liability.

**CLAIMED INJURIES**

NA

**CLAIMED DAMAGES**

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 129 of 206   Page ID
#:157

**Jolly vs. City of Long Beach, 27 Trials Digest 16th 14 (2013)**

According to court records:
Not reported.


## SETTLEMENT DISCUSSIONS

According to court records:

Not reported.


## COMMENTS

According to court records:

The complaint was filed Jan. 12, 2011.


Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

2011 WL 1562075 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Alameda County, California.

## Ronald Vanderheiden v. City of Alameda

No. RG06 283619

DATE OF VERDICT/SETTLEMENT: March 23, 2011

TOPIC: EMPLOYMENT - CALIFORNIA'S FAIR EMPLOYMENT & HOUSING ACT - DISCRIMINATION - PERCEIVED DISABILITY - EMPLOYMENT - DISABILITY DISCRIMINATION

Terminated Firefighter Denied Being Mentally Unfit for Job

**SUMMARY:**
RESULT: Verdict-Plaintiff

Award Total: $680,182

The jury found in favor of Vanderheiden and awarded him $680,182 in economic damages. It awarded no emotional distress damages.

**EXPERT WITNESSES:**
Plaintiff: Margo R. Ogus, Ph.D.; Economics; Mountain View, CA Steven A. Harman; Human Resources Policies; Dublin, CA
Defendant: Mark D. Cohen, M.S.; Economics; Lafayette, CA Rhoma D. Young; Human Resources Policies; Oakland, CA
**ATTORNEYS:**
Plaintiff: Christopher E. Platten; Wylie, McBride, Jesinger, Platten & Renner; San Jose, CA (Ronald Vanderheiden); Amy L. Sekany; Wylie, McBride, Platten & Renner; San Jose, CA (Ronald Vanderheiden, Ronald Vanderheiden)
Defendant: Ian P. Fellerman; Wiley Price & Radulovich, LLP; Alameda, CA (City of Alameda); Joan Pugh Newman; Wiley, Price & Radulovich, L.L.P.; Alameda, CA (City of Alameda)

JUDGE: Wynne S. Carvill

RANGE AMOUNT: $500,000-999,999

STATE: California
COUNTY: Alameda

**INJURIES: Vanderheiden sought recovery of economic damages for lost wages and pension, as well as significant non-economic emotional distress damages. After his termination, Vanderheiden started his own business providing instruction and certification in First Aid and CPR.**

**Facts:**
In April 2006, plaintiff Ronald Vanderheiden, 50, was terminated from his position as a firefighter for the city of Alameda. He had held the position for 14 years.

Vanderheiden sued the city for disability discrimination under California's Fair Employment and Housing Act, alleging he was terminated based on a perceived psychological disability. He claimed he was wrongfully terminated by the city on the ground that he was psychologically unable to perform as a member of a team with the Alameda Fire Department.

Vanderheiden contended that he had a sterling career as a firefighter with the city, and he contended the city was unable to cite a single instance wherein he was unable to execute his duties as a firefighter or emergency medical technician. Instead, Vanderheiden contended that the city relied on unverified complaints made by co-workers regarding his alleged "erratic behavior" in justifying a fitness for duty evaluation. He alleged that the co-workers' complaints were retaliation for his previously reporting alleged misconduct of a fellow firefighter to the police.

Vanderheiden claimed that the city knew it placed him into a potentially hostile work environment because he had filed the police report. He contended that the city ignored his complaints of retaliation, including alleged ostracism by fellow firefighters, purported destruction of his safety equipment and alleged threats to his physical safety.

The city stated that one of the primary bases for terminating Vanderheiden was a fitness for duty evaluation performed by a psychologist. The report deemed Vanderheiden psychologically incapable of performing as a member of a team with the Fire Department. However, plaintiffs' counsel argued that the city relied on the psychologist's evaluation despite reports from four other mental health professionals that indicated Vanderheiden was able to work.

Vanderheiden contended that the city refused to accept his pre-termination offer for an independent medical examination, and instead relied on the single opinion of the other psychologist.

The trial court held that under the standard of "objective reasonableness" only that information which the decision-maker had knowledge of prior to the termination was relevant. Therefore, the court excluded all expert testimony pertaining to the objective scientific and medical validity of the tests administered in the fitness for duty evaluation, as well as the underlying basis for each of the five professional opinions offered by Vanderheiden because none of that information was known by the fire chief at the time he terminated Vanderheiden.

The city contended that its decision to terminate Vanderheiden was reasonable because: 1) numerous employees personally observed Vanderheiden engage in erratic behavior (including getting dressed in his car, acting depressed, having mood swings, staring at other firefighters, calling in sick 160 hours during a four and a half month time period, sleeping at work in the morning, pacing the hallways, tape-recording conversations, crying and showing up unannounced at chiefs' homes); 2) Vanderheiden indicated that he was interested in obtaining an industrial disability retirement if he would receive his full salary; 3) two outside psychologists separately concluded that Vanderheiden was psychologically unable to work; 4) one of Vanderheiden's treating therapists repeatedly informed the City's Employee Assistance Program that Vanderheiden was unable to work; 5) the most recent performance evaluation by Vanderheiden's direct supervisor concluded that Vanderheiden had excessive problems in emotional self-control and interpersonal behavior; and 6) Vanderheiden failed to obtain any additional counseling or treatment after the second outside psychologist concluded that he was psychologically unable to work.

The defense noted that following his termination, Vanderheiden never applied for another firefighter position.

ALM Properties, Inc.
Superior Court of Alameda County, Oakland

PUBLISHED IN: VerdictSearch California Reporter Vol. 10, Issue 17

**End of Document**                                            © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 132 of 206   Page ID
#:160

Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)

10 Trials Digest 15th 7, 2011 WL 7447633 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

United States District Court, C.D. California, Western Division.

## Ward vs. Cadbury Schweppes Bottling Group

**TOPIC:**

Synopsis: Truck drivers claim age discrimination resulted in constructive discharge

Case Type: Labor & Employment; Age; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: 09CV03279(DMG)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 7, 2011

JUDGE: Dolly M. Gee

**ATTORNEYS:**

Plaintiff: Michael F. Baltaxe, Law Offices of Michael F. Baltaxe, Westlake Village; Wendy K. Marcus, Law Offices of Timothy B. Sottile, Westlake Village; Timothy B. Sottile, Law Offices of Timothy B. Sottile, Westlake Village.

Defendant: Daryl M. Crone, Crone Hawxhurst, Los Angeles; Joshua Paul Gelbart, Crone Hawxhurst, Los Angeles; Gerald E. Hawxhurst, Crone Hawxhurst, Los Angeles; Diyari Vazquez, Crone Hawxhurst, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $17,899,400

Range: $5,000,000-999,999,999

Plaintiff Ward: $133,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $350,000 for past and future physical impairment, including psyche, hypertension, stomach, sleeplessness, anxiety, and chest pain; $1,800,000 punitive damages. Plaintiff Jones: $44,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $1,214,000 punitive damages. Plaintiff Suhay: $71,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including hernia and shoulder surgeries; $1,542,000 punitive damages. Plaintiff Valadez: $130,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $500,000 past and future physical impairment, including right knee surgery; $2,043,000 punitive damages. Plaintiff Talton: $144,000 past income; $500,000 past and future medical expenses; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including back and stress; $1,753,000 punitive damages. Plaintiff January: $140,000 past income; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including shoulder stress and strain; $1,335,400 punitive damages.

Trial Type: Jury

Case 2:25-cv-03705-SB-SK Document 3 Filed 04/25/25 Page 133 of 206 Page ID #:161

Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)

Trial Length: 13 days.

Deliberations: 1 day.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Jeff Nelken B.S., M.A., R.D., food safety, Woodland Hills, (310) 273-5492.; Karen Lynn Smith, M.A., economist, Adams Smith Economics, San Marino, (626) 796-4040.

Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiffs Robert M. Ward, Robert E. Jones, Jose M. Valadez, Leonard Talton, Gary Suhay, and Alfonso W. January were employed by defendants Cadbury Schweppes Bottling Group, Cadbury Schweppes Holdings Inc., 7-Up/RC Bottling Company of Southern California, Dr. Pepper Snapple Group, and American Bottling Company.

Plaintiffs alleged defendants, through upper management, implemented and enforced an unwritten policy of discrimination against older employees, including plaintiffs. Plaintiffs claimed defendants assigned the older truck drivers more difficult and physically taxing routes so they would quit or become injured, transferred the older forklift operators to more difficult and strenuous duties so that they would quit or become injured, piled work on plaintiffs so that they would quit or become injured, and wrote some plaintiffs up for frivolous and pre-textual reasons.

Plaintiffs alleged discrimination based on age, failure to prevent discrimination or retaliation, constructive discharge in violation of public policy, failure to engage in good-faith interactive process, and failure to accommodate.

**CLAIMED INJURIES**

According to court records:

Hypertension; stomach; sleeplessness; anxiety; chest pain; hernia; shoulder; knee; anxiety; emotional distress; back.

**CLAIMED DAMAGES**

According to court records:

Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed in Los Angeles Superior Court, case number BC410112. It was removed to federal court on May 8, 2009.

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 134 of 206    Page ID
#:162

**Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)**

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 4845803 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Los Angeles County, California.

## Beverly Dodd v. Haight Brown & Bonesteel LLP

No. BC413813

DATE OF VERDICT/SETTLEMENT: October 15, 2010

TOPIC: EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - AGE DISCRIMINATION - EMPLOYMENT - DISABILITY DISCRIMINATION - EMPLOYMENT - FMLA

Suit: Secretary Terminated While Undergoing Cancer Treatment

**SUMMARY:**
RESULT: Verdict-Plaintiff

Award Total: $410,520

The jury found the defendant liable, and awarded Dodd $410,520 in damages for future lost earnings, including her life insurance policy. Dodd was not awarded damages for pain and suffering.

**EXPERT WITNESSES:**
Plaintiff: Flavio Marenco; Clinical Psychology; Los Angeles, CA Solomon Hamburg, M.D.; Oncology; Beverly Hills, CA
**ATTORNEYS:**
Plaintiff: Michael J. Procopio; Campion, Rodolff, Van Riper & Procopio; Santa Ana, CA (Beverly Dodd); Michael Louis Kelly; Kirtland & Packard; El Segundo, CA (Beverly Dodd)
Defendant: Linda Miller Savitt; Ballard, Rosenberg, Golper & Savitt, LLP; Glendale, CA (Haight Brown & Bonesteel LLP); Eric C. Schwettmann; Ballard, Rosenberg, Golper & Savitt; Glendale, CA (Haight Brown & Bonesteel LLP)

JUDGE: Joanne O'Donnell

RANGE AMOUNT: $200,000-499,999

STATE: California
COUNTY: Los Angeles

**INJURIES: Dodd asked the jury for $525,000 in damages for past and future lost earnings, as well as $900,000 in damages for past pain and suffering and $900,000 for future pain and suffering.**

**Facts:**
On Nov. 14, 2008, plaintiff Beverly Dodd, 66, was terminated from her job as a legal secretary at the firm of Haight Brown & Bonesteel LLP, located in Los Angeles. Dodd, who had been employed at the firm for roughly 20 years, was on medical leave at the time as she received treatment for liver cancer.

Dodd sued Haight Brown & Bonesteel, alleging she was wrongfully terminated due to her age, medical condition, disability and her high rate of compensation, in violation of Federal and State Law.

Dodd contended that at the time of her termination she had 10 days remaining on 12 weeks of unpaid leave under the Family Medical Leave Act, for treatment of her liver cancer. She claimed that she called the firm's human resources manager to request an additional three to six months of unpaid leave for further cancer treatment. She said she then received a Federal Express letter terminating her employment on Nov. 14, 2008, with her initial leave expiring on Nov. 24.

The law firm contended that Dodd was lawfully terminated as a result of her inability to come back to work after her FMLA leave period expired. It claimed it received a note from Dodd's doctor, which indicated that she would not be able to return after her leave since she had another six months of treatment left.

The law firm further contended that Dodd could not return in any capacity for at least a year given her physician's certifications. It also argued that Dodd did not request any reasonable accommodation and that it engaged in the interactive process to the fullest extent possible, given Dodd's refusal to allow all relevant information to be shared.

The defendant further contended that neither Dodd's age nor salary had any bearing on her termination.

She claimed she lost her annual salary of $70,000 and benefits, including a 3 percent of salary-per-year pension plan contribution, a life insurance policy, and medical insurance. She claimed that she planned to work full-time until age 70 and part-time until age 75. Dodd testified that she also suffered emotional distress as a result of her termination, and has been unable to find work thereafter.

Haight contended that Dodd's inability to work at the time her leave expired, and for at least a year after, precluded any award of damages to her. The defendant further contended that Dodd failed to mitigate her damages when she was allegedly able to return to work nearly 18 months later by seeking subsequent employment.

Insurer:

Underwriters at Lloyd's of London


ALM Properties, Inc.
Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 46

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 137 of 206    Page ID #:165

Jeanette A. Ybarra v. Dacor Holdings Inc., Distinctive..., 2010 WL 2404221...

2010 WL 2404221 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Los Angeles County, California.

## Jeanette A. Ybarra v. Dacor Holdings Inc., Distinctive Appliance Inc. and Rene Castro

No. KC-054144

DATE OF VERDICT/SETTLEMENT: February 26, 2010

TOPIC: EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - AGE DISCRIMINATION - EMPLOYMENT - DISABILITY DISCRIMINATION - INTENTIONAL TORTS - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Fired Pltf With Kidney Disease Alleged Age, Disability Bigotry

**SUMMARY:**

RESULT: Verdict-Plaintiff

Award Total: $615,236

The jury found disability discrimination. Ybarra dismissed her age discrimination claim, after the jury was locked 6-6 on the question.

Ybarra was awarded $615,236.

**EXPERT WITNESSES:**

Plaintiff: Anthony E. Reading, Ph.D.; Psychology/Counseling; Beverly Hills, CA Jenny McNulty; Economics; Los Angeles, CA

Defendant: Edward J. Workman, Ph.D.; Vocational Rehabilitation; San Clemente, CA Stuart Friedman, M.D.; Nephrology; Los Angeles, CA

**ATTORNEYS:**

Plaintiff: Charles T. Mathews; Charles T. Mathews & Associates; San Marino, CA (Jeanette A. Ybarra); Deane L. Shanander; Charles T. Mathews & Associates; San Marino, CA (Jeanette A. Ybarra)

Defendant: Michelle T. Harrington; Stone & Hiles; Los Angeles, CA (Dacor Holdings Inc., Rene Castro); Paula G. Tripp; Anderson, McPharlin & Conners; Los Angeles, CA (Dacor Holdings Inc., Rene Castro)

JUDGE: Robert A. Dukes

RANGE AMOUNT: $500,000-999,999

STATE: California

COUNTY: Los Angeles

**INJURIES: Ybarra claimed past and future lost earnings and benefits, insisting that she had difficulty finding a new job due to her age, medical condition and the current economical climate. Ybarra alleged that she had intended to work at Dacor until retirement.**

**Facts:**

In May 1991, plaintiff Jeanette Ybarra was hired by Dacor Holdings Inc. as a sales coordinator. She was then promoted to the position of inventory control coordinator, working at the company's distribution center in the City of Industry.

Case 2:25-cv-03705-SB-SK   Document 3   Filed 04/25/25   Page 138 of 206   Page ID #:166

Jeanette A. Ybarra v. Dacor Holdings Inc., Distinctive..., 2010 WL 2404221...

In 1996, Ybarra began dialysis treatment for a congenital kidney disease, which she administered to herself at work, two times a day. Approximately two years later, Ybarra developed a severe peritonitis and went off work for eight months. On her return, she began renal hemodialysis, which required her to come into work early three days a week.

In January 2008, Ybarra missed four weeks of work due to an infection. She claimed that before her infection, in late 2007, her supervisor, Rene Castro, began taking her job duties away from her. Ybarra also claimed that the company accumulated her missed time as negative 960 hours in sick days, which forced her to use vacation days.

On April 1, 2008, Ybarra was terminated as Castro informed that her position was being eliminated.

Ybarra sued Dacor and Castro, as well as Distinctive Appliance Inc., the holdings company that owned Dacor, alleging wrongful termination, disability discrimination, age discrimination and intentional infliction of emotional distress.

Distinctive was discontinued from the case prior to trial.

Ybarra claimed that her illness and age eventually led to her discharge. She asserted that Castro made efforts to exclude her from activity with younger coworkers and that his decision to take away her responsibilities was in response to her medical condition.

Ybarra further purported that the company was undergoing a change in health insurance coverage, and the new provider had increased rates for employees with pre-existing conditions. Ybarra alleged that all the combined factors led to her being the first Dacor employee to be laid off.

In regard to the age discrimination claim, she charged that the company fired several employees who were over the age of 40 while promoting younger individuals.

The defense responded that Ybarra was not fired due to her age or disability, and that she was just an unlucky employee in regard to company layoffs. The defendants further claimed that the plaintiff's performance was becoming weak, and her work wasn't timely enough, also contributing to her termination.

Ybarra countered that her performance didn't suffer as a result of her medical condition, and that her annual performance appraisals were always good. She contended that she received a score of 3 or 4 in her reviews, with 3 being deemed as "efficient" and 4 being "commendable."

Ybarra also sought past and future medical costs due to her affected coverage after termination. She additionally sought pain and suffering damages.

The defense contested Ybarra's damages, arguing that if she were awarded anything, it should be reduced due to her shortened life expectancy. Counsel contended that Ybarra should have been able to obtain a new job within a year of termination.

ALM Properties, Inc.
Superior Court of Los Angeles County, Pomona

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 24

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

16 Trials Digest 12th 17, 2009 WL 999514 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

United States District Court, C.D. California, Western Division.

## Malone vs. Potter

**TOPIC:**

Synopsis: Mail carrier claims he was targeted because of disability

Case Type: Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Discrimination; Labor & Employment; Disability/Medical Condition; Labor & Employment; Retaliation

DOCKET NUMBER: 07CV05530(MMM)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: March 10, 2009

JUDGE: Margaret M. Morrow
**ATTORNEYS:**
Plaintiff: Andrew M. Wyatt, Law Offices of Andrew M. Wyatt, Woodland Hills.
Defendant: Gwendolyn M. Gamble, Office of U. S. Attorney, Los Angeles; Thomas P. O'Brien, Office of U. S. Attorney, Los Angeles; Leon W. Weidman, Office of U. S. Attorney, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $300,000

Range: $200,000-499,999
$300,000 for disability discrimination and retaliation.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Barbara Ammons, Ph.D., psychologist, Diamond Bar.; Lawrence Ball, human resources consultant, Human Resources Management Network, Fullerton.; Anand Khemlani, economist.
Defendant: Thomas J. Grogan, M.D., orthopedic surgeon, Santa Monica, (310) 828-5441.; Brian P. Jacks, M.D., psychiatrist, Beverly Hills, (310) 274-0684.; Jerald H. Udinsky, Ph.D., economist, The Udinsky Group, Berkeley, (510) 649-9000.

**TEXT:**

**CASE INFORMATION**

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 140 of 206   Page ID
#:168

Malone vs. Potter, 16 Trials Digest 12th 17 (2009)

## FACTS/CONTENTIONS

According to court records: Plaintiff Earnest J. Malone was hired as a City Carrier on August 12, 1978 and was transferred to the position of Lobby Director as a result of the Step B decision in September 2006 until he was transferred on July 12, 2007 to Custodian/Deliver connected mail to letter carrier on assignment and express mail. During the relevant period of time, plaintiff was working for defendant U.S. Postal Service.

Plaintiff alleged employment discrimination based on disability and in retaliation for protected EEO activity in violation of Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act.

Plaintiff said that, during the course of his career, he was subjected to disparate treatment on the basis of disability and reprisal for protected activity. Plaintiff filed an EEO Complaint of Discrimination on August 18, 2007.

On March 17, 2005, plaintiff settled an EEO complaint with defendant in which he alleged discrimination and retaliation for filing other EEO complaints. Mike McGee, postmaster of the Compton Post Office, was identified as the responsible management official.

As a result of his ongoing conflict with management at the Compton Post Office, plaintiff developed psychological symptoms, he claimed. On June 14, 2005, plaintiff's treating physician, Dr. Barbara Ammon, diagnosed plaintiff as being temporarily totally disabled for his usual employment until July 15, 2005. On August 25, 2005, Ammon wrote a letter to the Medical Unit and released plaintiff to return to work on August 29, 2005. She advised defendant that plaintiff's medical condition had improved and that he was not a danger to himself or others. On August 26, 2005, the Associate Area Medical Director for the Medical Unit released plaintiff to return to work on August 29, 2005, without limitations.

On September 9, 2005, plaintiff wrote a letter to the Medical Unit and to McGee at the Compton Post Office, requesting that he be returned to work. On September 15, 2005, defendant notified plaintiff to return to work, but by this time, he was under Ammon's treatment for recurring work-related stress such that he could not return to work. On September 16, 2005, McGee told plaintiff that he could not return to work until he got cleared by EAP. McGee sent a copy to the Medical Unit. On September 25, 2005, Ammon sent an updated medical report and released plaintiff to return to work without restrictions. On September 30, 2005, the Associate Area Medical Director once again released plaintiff to duty without limitations. On September 30, 2005, Atwood of the EAP unit released plaintiff to duty.

On October 3, 2005, plaintiff received a phone call from the Medical Unit with instructions to report to duty on October 4, 2005. Plaintiff called the Compton Post Office and spoke to Supervisor William Perry, who informed him that McGee changed his work location and work schedule. McGee ordered plaintiff to report to Hub City as an Assistant Lobby Director. Plaintiff asked Perry why he was being transferred from the main office at Compton Post Office. Perry told him that his job had been abolished at the Compton Post Office and that he was needed as an Assistant Lobby Director at Hub City.

On October 4, 2005, plaintiff reported to duty at Hub City as an Assistant Lobby Director. His work schedule was changed from 7:00 a.m. to 3:30 p.m. to 8:30 a.m. to 5:00 p.m. Monday through Friday. Plaintiff's commute was longer because the distance from his house to Hub City was farther than his commute from his house to the Compton Main Post Office. Plaintiff claimed this practice was very common at USPS and was known as "freeway therapy" because it is a form of reprisal when management does not like an employee and wants to punish them without formal disciplinary action.

At the time of the complaint, plaintiff was employed as a City Letter Carrier performing modified duties in a limited duty assignment at the Compton Main Post Office. The limited job duty offer of Lobby Director was based on plaintiff's physical restrictions of no lifting, pushing, or pulling greater than five pounds, no repetitive or forceful gripping, no overhead activities, and no driving more than 30 minutes at one time, beginning on October 4, 2005.

The second issue involved Postmaster McGee's failure to return plaintiff to the Compton Main Post Office and to pay him his out-of-schedule and overtime pay beginning in October 2005. In a Step B grievance resolution dated May 24, 2006, representatives of USPS and National Association of Letter Carriers agreed that plaintiff should be returned to the Compton Main Post Office and be made whole for losses, including mileage and any applicable out-of-schedule pay. Plaintiff was not returned to the Compton Main Office until August 2006, over two months later. Plaintiff was not paid any of the back pay he was owed. Plaintiff said that, because of his prior EEO activity in which he won against McGee, McGee used the opportunity not to comply with the Step B decision as a means to further discriminate and retaliate against plaintiff. McGee appealed the decision as a means to further delay plaintiff's eventual return to the Main Office. McGee also claimed that there was no work available for plaintiff within plaintiff's restrictions. However, the position of Lobby Director was a position created

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 141 of 206   Page ID
#:169

**Malone vs. Potter, 16 Trials Digest 12th 17 (2009)**

for plaintiff to accommodate his work restriction. Eventually, Labor Relations told Postmaster McGee that he had to return plaintiff to the Main Office on August 7, 2006.

Even though McGee said there were no jobs for plaintiff to come back to, plaintiff was returned to his position of Lobby Director until he was further retaliated against by a sudden reassignment at the Main Post Office. On July 12, 2007, acting-officer-in-charge, Tyrone William, reassigned plaintiff to perform custodial duties, deliver Express Mail Delivery, and connect carrier connect mail with letter carrier on assignments. Light-duty employees, such as plaintiff, were routinely sent home early, sometimes losing as much as a half-day's pay. Because plaintiff could not perform all of the duties, some of which included driving, he was sent home. Plaintiff claimed there was no justification for removing him from his light-duty assignment of Lobby Director.

From September 14, 2007 through September 19, 2007, plaintiff was denied his limited light-duty work within his medical restrictions when Williams assigned plaintiff to work on the street as a mail carrier, which exceeded his work restrictions. On September 14, 2007, plaintiff was sent home by Williams without pay and not permitted to work his assigned duties. On September 17, 2007, plaintiff told Williams that he could no longer perform street delivery and was sent home without pay instead of being given his light duty assignment. From September 14, 2007 until September 19, 2007, plaintiff was sent home because he was unable to carry business mail on the street. Plaintiff was also not allowed to complete the other 90 percent of his duties when he was sent home because of plaintiff's inability to carry mail on the street for one hour.

On September 27, 2007, Ammons placed plaintiff on total temporary disability due to work-related stress. Plaintiff did not return to the workplace after September 19, 2007 and was forced to take disability retirement.

Defendant contended the Hub City Post Office was located less than 1 mile from the Compton Main Post Office. Defendant claimed that in July 2007, the Postal Service Los Angeles District instructed postmasters that defendant needed letter carriers to perform letter carrier duties as their main job function and that window clerks would primarily perform the Lobby Director duties because window clerks were being moved to different offices as automation eliminated the need for their positions and letter carrier positions/routes were being lost.

## CLAIMED INJURIES

NA

## CLAIMED DAMAGES

According to court records:
Not reported.

## SETTLEMENT DISCUSSIONS

According to court records:

Not reported.

## COMMENTS

According to court records:

The complaint was filed on August 23, 2007.

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 142 of 206    Page ID
#:170

Beard vs. Los Angeles County Law Library, 6 Trials Digest 12th 15 (2009)

6 Trials Digest 12th 15, 2009 WL 250543 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

Superior Court, Los Angeles County, California.

## Beard vs. Los Angeles County Law Library

**TOPIC:**

Synopsis: Law library employees claim supervisor discriminated against older employees

Case Type: Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Age; Labor & Employment; Discrimination; Labor & Employment; Harassment-General; Labor & Employment; Race/National Origin; Labor & Employment; Violation of Public Policy; Labor & Employment; Retaliation

DOCKET NUMBER: BC381575

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: January 7, 2009

JUDGE: Ruth A. Kwan

**ATTORNEYS:**

Plaintiff: Carol L. Gillam, The Gillam Law Firm, Los Angeles; John A. Haubrich Jr., The Gillam Law Firm, Los Angeles; Shawna Rasul, The Gillam Law Firm, Los Angeles.

Defendant: Katherine A. Hren, Ballard, Rosenberg, Golper & Savitt, Universal City; Linda Miller Savitt, Ballard, Rosenberg, Golper & Savitt, Universal City.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $146,000

Range: $100,000-199,999

Defendant LACLL filed a motion for summary judgment as to plaintiff Reynolds. The court granted the motion as to plaintiff's third, fourth, seventh, and eighth causes of action and denied the motion as to the first and fifth causes of action. The jury found in favor of plaintiff Reynolds on the remaining causes of action and awarded her $86,000 in past economic loss and $60,000 in future economic loss. The outcome of plaintiff Beard's claims was unknown.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: In August 2005, defendant Los Angeles County Law Library ("LACLL") hired defendant Marcia Koslov as executive director. Plaintiffs Betty Beard and Diane Reynolds and other library staff allegedly noticed defendant Koslov's inability to control her temper. Defendant Koslov used curse words frequently, screamed at staff, and threatened their jobs. Defendant LACLL paid for defendant Koslov to attend anger management sessions.

Plaintiff Reynolds, age 60, had spent her entire career after law school with defendant LACLL employed as director of reference and research. Plaintiff Reynolds said her 38-year employment came to an end not long after defendant Koslov was hired. Plaintiff alleged defendant Koslov was determined to get rid of older employees, despite the lack of any legitimate cause. Plaintiff Reynolds also alleged she was subjected to a hostile work environment perpetuated by defendant Koslov. Plaintiff Reynolds claimed defendant Koslov began removing duties from her and also threatened plaintiff Reynolds when she wouldn't write false negative evaluations to justify others' terminations. Plaintiff Reynolds said defendant Koslov pressured her to retire and on February 26, 2007, defendant Koslov gave plaintiff an ultimatum, either announce her retirement or be terminated. Plaintiff Reynolds was constructively terminated on March 13, 2007.

Plaintiff Beard, a 55-year-old African-American human resources manager for defendant LACLL, alleged her employment also ended soon after defendant Koslov was hired.

Plaintiffs alleged age discrimination, race/national origin discrimination, harassment, retaliation, failure to prevent harassment, wrongful termination in violation of public policy, wrongful constructive termination, and breach of implied contract.

**CLAIMED INJURIES**

According to court records:
Emotional distress.

**CLAIMED DAMAGES**

According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed on December 3, 2007.

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 144 of 206   Page ID
#:172

Beard vs. Los Angeles County Law Library, 6 Trials Digest 12th 15 (2009)

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 809854, 2008 WL 6040410 (Unknown State Ct. (Cal.)) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

Unknown California State Ct.

## KOLAS v. ALTICOR INC., ERRONEOUSLY SUED

## AS ACCESS BUSINESS GROUP LLC; NUTRILITE

BC362432

DATE OF INCIDENT: December, 2004
DATE OF FILING: November, 2006
DATE OF TRIAL: January, 2008

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Non Verdict Award:**
**Total Verdict: $600,000**
**Judge Reduced Award To:**
**Claimed Past Medical:**
**Claimed Future Medical:**
**Claimed Past Wage Expense:**
**Claimed Future Wage Expense:**
Plaintiff's Economist:

Defendant's Economist:

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Maryann P. Gallagher, Woodland Hills, CA
Defendant: Maria K. Aarvig, Riverside, CA

JUDGE: Michael C. Solner

RANGE AMOUNT: $500,000 - 999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Male

Age: An adult of undetermined age.

**PRIMARY STATUTE OR GROUND: Age Discrimination-ADEA**

**SECONDARY STATUTE OR GROUND:**
**GENERAL ENTITY TYPE: Manufacturing Industry**
**SPECIFIC ENTITY TYPE: Chemical Products**
**ADVERSE EMPLOYMENT ACTION: Termination**
**AMOUNT OF AWARD AFTER STATUTORY LIMIT:**
**ATTORNEY'S FEES:**
**DAMAGES:**
Past Medical:

Future Medical:

Past Wage: $175,000

Future Wage: $225,000

Pain and Suffering: $200,000

Other:

Total: $600,000

Punitive:

Hedonic:

Other:

Interest:

Loss of Services:


**FACTS:**
A male former employee sued the defendant company claiming age and disability discrimination in violation of federal laws. The plaintiff alleged that he was wrongfully terminated by the defendant because of his age and because of his work related herniated disc injury. The defendant denied the allegations and claimed that the plaintiff's failure to do his work properly was subjecting the company to regulatory problems.


Jury Verdict Research
COURT:

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT H

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 148 of 206   Page ID #:176

43 Trials Digest 16th 11, 2013 WL 5820140 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

# Silverman vs. Stuart F. Cooper Inc.

**TOPIC:**
Synopsis: Terminated employee claims age discrimination

Case Type: Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Harassment-General; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: BC467464

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: July 19, 2013

JUDGE: Deirdre H. Hill
**ATTORNEYS:**
Plaintiff: Allen J. Beck, Gleason & Favarote, Los Angeles; Paul M. Gleason, Gleason & Favarote, Los Angeles; Janet S. Yavrouian, Gleason & Favarote, Los Angeles.
Defendant: Charles J. Schufreider, Barton, Klugman & Oetting, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $325,223

Range: $200,000-499,999
$133,222 to plaintiff for past loss of earnings

$40,668 to plaintiff for future loss of earnings

$116,333 to plaintiff for past emotional distress

$35,000 to plaintiff for future emotional distress

The jury found defendants Stuart F. Cooper Inc. or Burdge Cooper Inc. acted with oppression, fraud or malice but declined to award punitive damages.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 149 of 206   Page ID
#:177

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

**EXPERTS:**

Plaintiff: Not reported.

Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiff Joe Silverman was hired by defendant Stuart F. Cooper Inc. in 1994 as a salesman. Plaintiff said he was compensated with a base salary, commission, expense reimbursement and medical benefits, regardless of sales performance. Plaintiff said his sale performance fluctuated, but he was never subjected to discipline, and he achieved an acceptable sales record. In August 2009, plaintiff was reportedly demoted by defendant David Overgaar, defendant Stuart Cooper's president, without warning and his compensation package was changed. His compensation change converted him to 100 percent commission and limited his automobile reimbursement to $200 per month. Plaintiff said the company had never forced such a compensation package on any other employee. The new package also established a sales quota for plaintiff in order to return to his prior compensation plan. He said he was required to have sales of at least $90,000 over a six-month period with no single job accounting for more than 30 percent of sales. This quota was unprecedented and never applied to other sales employees, plaintiff claimed.

In November 2009, another sales representative, 49, was allegedly hired with a salary plus commissions compensation package.

In October 2010 plaintiff, 76, apparently filed a claim for age discrimination with the Department of Fair Employment and Housing based on the demotion and his change in compensation. Within six months of his complaint, plaintiff said, plaintiff was terminated by defendant Burdge Cooper Inc. for the pretextual reason of "poor attitude."

Plaintiff alleged age discrimination in violation of the Fair Employment and Housing Act and public policy, unlawful retaliation in violation of the FEHA, age harassment in violation of the FEHA, failure to prevent discrimination and harassment in violation of the FEHA, wrongful termination in violation of public policy and failure to pay final wages and waiting time penalties.

**CLAIMED INJURIES**

According to court records:

Emotional distress.

**CLAIMED DAMAGES**

According to court records:

Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed Aug. 12, 2011.

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

Case 2:25-cv-03705-SB-SK Document 3 Filed 04/25/25 Page 150 of 206 Page ID #:178

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1402210041, 2013 WL 7852947 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

Superior Court, Los Angeles County, California.

## VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY

BC484335

DATE OF FILING: October 25, 2012
DATE OF TRIAL/SETTLEMENT: November 12, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $1,904,635**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiff's second amended complaint: 2012 WL 10007313

Defendant's trial brief: 2013 WL 6506751

Verdict form: 2013 WL 6506795

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Scott O. Cummings, Cummings & Franck P.C., Gardena, CA
Plaintiff: Lee Franck, Cummings & Franck P.C., Gardena, CA
Defendant: Calvin R. House, Gutierrez Preciado & House L.L.P., Pasadena, CA
Defendant: Caroline Shahinian, Gutierrez, Preciado & House L.L.P., Pasadena, CA

JUDGE: Kevin C. Brazile

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

General Occupation: General Laborer

**DEFENDANT:**
Sex: O

Organization Type: Los Angeles County Metropolitan Transportation Authority

**DAMAGES:**
Compensatory Pain & Suffering: $1,250,000

Compensatory Future Medical: $185,000

Compensatory Past Wages: $84,348

Compensatory Future Wages: $385,287

Total Compensatory Award: $1,904,635

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: true

Failure Hire: true

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true

**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State

**General Statute: Family and Medical Leave**
General Statute Discrimination: false

Specific Statute: General

**General Statute: Retaliation**

General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**

Raphael Vasquez, a former bus driver, sued the Los Angeles County Metropolitan Transportation Authority for disability discrimination, failure to accommodate, failure to engage in the interactive process, in violation of the Americans with Disabilities Act (ADA), and interference with the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA), and retaliation in violation of the Fair Employment and Housing Act (FEHA) Cal. Gov't. Code Secs. 12940 et seq. The plaintiff alleged during his employment, he suffered from a variety of disabilities, including but not limited to gout, cataracts, blurry vision, diabetes, for which he treated with doctors, and in January 2010, he requested a medical leave of absence for hip replacement surgery due to Avascular Necrosis of the femur, which the defendant admitted he was eligible for, and he provided the necessary documentation indicating he would be out for approximately five months. He asserted following the surgery, his doctor provided a note that he was unable to work until June 1, 2010 due to Trochanteric Bursitis, and aftercare from his hip replacement, thereafter, he was cleared to return to work. Vazquez claimed in November 2010, he had cataract surgery, but the defendant began to use his disabilities for adverse actions, including discipline and suspensions, and in January 2011, he was terminated, and the proffered reason for his termination was his attendance. He asserted the defendant failed to engage in a timely, good faith, interactive process to determine the most effective reasonable accommodations for him, discouraged the use of FMLA leave, which violated the CFRA, and that his disability, his request for and/or taking medical leave were substantial motivating factors in the decision to terminate him. The defendant denied the allegations and contended the plaintiff was charged with excessive absenteeism after accumulating eight absences within a 12-month period, and at his discharge hearing he told the hearing officer he was in perfect health, but that he had treated some medical conditions. The defendant argued that the officer had no reason to believe the plaintiff might be disabled, and terminated him for violating it's attendance policy.

Jury Verdict Research
COURT: Superior

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1403200023, 2013 WL 8115991 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

Superior Court, Los Angeles County, California.

## ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT

BC469940

DATE OF FILING: September 23, 2011
DATE OF TRIAL/SETTLEMENT: December 17, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $5,681,682**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiffs' complaint: 2011 WL 6463766

Verdict form: 2013 WL 6870002

Verdict form (punitive damages): 2013 WL 6869977

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: James R. Rosen, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Elizabeth L. Bradley, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Jonathan S. Dennis, Rosen Saba LLP, Beverly Hills, CA
Defendant: Eric J. Erickson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Christopher M. Habashy, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Marie Dominguez-Gasson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA

JUDGE: Yvette Palazuelos

RANGE AMOUNT: $5,000,000 - 999,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Martha Aboulafia: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Cheryl B. Colgin: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Patricia Monica: F

Age: Adult, 67

General Occupation: Food Service Worker

Sex: Regina Greene: F

Age: Adult, 46

General Occupation: Food Service Worker

**DEFENDANT:**
Sex: O

General Occupation: Restaurant, Nightclub or Tavern

Organization Type: GACN Inc. d/b/a Cable's Restaurant

**DAMAGES:**
Compensatory Pain & Suffering: Martha Aboulafia: $250,000

Compensatory Past Wages: Martha Aboulafia: $58,164

Compensatory Future Wages: Martha Aboulafia: $53,592

Total Compensatory Award: Martha Aboulafia: $361,756

Compensatory Pain & Suffering: Cheryl B. Colgin: $250,000

Compensatory Past Wages: Cheryl B. Colgin: $66,262

Compensatory Future Wages: Cheryl B. Colgin: $131,372

Total Compensatory Award: Cheryl B. Colgin: $447,634

Compensatory Pain & Suffering: Patricia Monica: $250,000

Compensatory Past Wages: Patricia Monica: $95,588

Compensatory Future Wages: Patricia Monica: $157,486

Total Compensatory Award: Patricia Monica: $503,074

Compensatory Pain & Suffering: Regina Greene: $250,267

Compensatory Past Wages: Regina Greene: $56,613

Compensatory Future Wages: Regina Greene: $62,338

Total Compensatory Award: Regina Greene: $369,218

Punitive Damages: $1,000,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: Service/Retail Company**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Age Discrimination**
Primary General Statute Discrimination: true


Specific Statute: General


**General Statute: Wrongful Termination**
General Statute Discrimination: false


Comparative Negligence Percentage: 0


**FACTS:**
58-year-old Martha Aboulafia, 58-year-old Cheryl B. Colgin, 46-year-old Regina Greene, and 67-year-old Patricia Monica, formerly employed as servers, sued GACN Inc. d/b/a Cable's Restaurant, for age discrimination, wrongful termination, in violation of California's public policy, and failure to provide rest periods and/or 30 minute meal periods, pursuant to Cal. Lab. Code Sec. 226.7. The plaintiffs claimed during their employment, they were never the subject of any negative reviews or

disciplinary actions until the restaurant came under new ownership, thereafter, they experienced negative treatment, a reduction in hours, and sudden complaints about job performance. They alleged after the transfer of ownership, suddenly they were systematically harassed, wrongfully terminated, and were replaced by younger female servers. Aboulafia, who worked for the defendant for more than 17 years, contended after the transfer of ownership, two days later she was terminated allegedly because business was slow, and she was told that an unidentified customer had complained about her. Colgin, who worked for the restaurant for more than 14 years, alleged she was also told two days after the transfer that she was no longer needed, but the manager called her again 10 minutes later, and fired her a second time, likely not remembering he had terminated her minutes earlier. Greene, who worked for the restaurant for three years, claimed that after the transfer, she was instructed to train newly hired younger female employees, but seven months later her manager falsely accused her of being under the influence of drugs and/or alcohol, terminated her, and subsequently falsely reported to the California Employment Development Department that she had voluntarily resigned in its attempt to avoid paying her unemployment benefits. Monica, who was employed for 13 years, asserted she was terminated two days after the transfer purportedly because her services were no longer needed, and business was slow. The defendant denied the allegations and contended it used nondiscriminatory factors to facilitate the layoffs, including identifying servers with flexible schedules and a willingness to work with all customers, and that it retained 11 servers employed by former management, and eight of those servers were within the protected class, ranging from 45 to 75 years old. The defendant also claimed the plaintiffs were allowed to take appropriate rest breaks. The jury awarded Aboulafia $1,361,756, Colgin $1,447,634, and Monica $1,503,074 for their age discrimination claims, and Greene's award included $952 for missed rest periods for a total award of $1,369,218.

Jury Verdict Research
COURT: Superior

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 160 of 206   Page ID #:188

10 Trials Digest 15th 7, 2011 WL 7447633 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

## Ward vs. Cadbury Schweppes Bottling Group

**TOPIC:**
Synopsis: Truck drivers claim age discrimination resulted in constructive discharge

Case Type: Labor & Employment; Age; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: 09CV03279(DMG)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 7, 2011

JUDGE: Dolly M. Gee
**ATTORNEYS:**
Plaintiff: Michael F. Baltaxe, Law Offices of Michael F. Baltaxe, Westlake Village; Wendy K. Marcus, Law Offices of Timothy B. Sottile, Westlake Village; Timothy B. Sottile, Law Offices of Timothy B. Sottile, Westlake Village.
Defendant: Daryl M. Crone, Crone Hawxhurst, Los Angeles; Joshua Paul Gelbart, Crone Hawxhurst, Los Angeles; Gerald E. Hawxhurst, Crone Hawxhurst, Los Angeles; Diyari Vazquez, Crone Hawxhurst, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $17,899,400

Range: $5,000,000-999,999,999
Plaintiff Ward: $133,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $350,000 for past and future physical impairment, including psyche, hypertension, stomach, sleeplessness, anxiety, and chest pain; $1,800,000 punitive damages. Plaintiff Jones: $44,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $1,214,000 punitive damages. Plaintiff Suhay: $71,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including hernia and shoulder surgeries; $1,542,000 punitive damages. Plaintiff Valadez: $130,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $500,000 past and future physical impairment, including right knee surgery; $2,043,000 punitive damages. Plaintiff Talton: $144,000 past income; $500,000 past and future medical expenses; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including back and stress; $1,753,000 punitive damages. Plaintiff January: $140,000 past income; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including shoulder stress and strain; $1,335,400 punitive damages.

Trial Type: Jury

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 161 of 206   Page ID #:189

Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)

Trial Length: 13 days.

Deliberations: 1 day.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Jeff Nelken B.S., M.A., R.D., food safety, Woodland Hills, (310) 273-5492.; Karen Lynn Smith, M.A., economist, Adams Smith Economics, San Marino, (626) 796-4040.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiffs Robert M. Ward, Robert E. Jones, Jose M. Valadez, Leonard Talton, Gary Suhay, and Alfonso W. January were employed by defendants Cadbury Schweppes Bottling Group, Cadbury Schweppes Holdings Inc., 7-Up/RC Bottling Company of Southern California, Dr. Pepper Snapple Group, and American Bottling Company.

Plaintiffs alleged defendants, through upper management, implemented and enforced an unwritten policy of discrimination against older employees, including plaintiffs. Plaintiffs claimed defendants assigned the older truck drivers more difficult and physically taxing routes so they would quit or become injured, transferred the older forklift operators to more difficult and strenuous duties so that they would quit or become injured, piled work on plaintiffs so that they would quit or become injured, and wrote some plaintiffs up for frivolous and pre-textual reasons.

Plaintiffs alleged discrimination based on age, failure to prevent discrimination or retaliation, constructive discharge in violation of public policy, failure to engage in good-faith interactive process, and failure to accommodate.

**CLAIMED INJURIES**

According to court records:

Hypertension; stomach; sleeplessness; anxiety; chest pain; hernia; shoulder; knee; anxiety; emotional distress; back.

**CLAIMED DAMAGES**

According to court records:

Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed in Los Angeles Superior Court, case number BC410112. It was removed to federal court on May 8, 2009.

Case 2:25-cv-03705-SB-SK   Document 3   Filed 04/25/25   Page 162 of 206   Page ID #:190

**Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)**

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1105250063, 2011 WL 3293268 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## WELCH v. IVY HILL CORP.

BC414667

DATE OF TRIAL: March 08, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $1,270,000**
**Judge Reduced Award To:**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Carney R. Shegerian, Santa Monica, CA
Defendant: Kelly O. Scott, Beverly Hills, CA
Karina B. Sterman, Beverly Hills, CA
Jennifer S. Grock, Beverly HIlls, CA

JUDGE: Not Available

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: Adult, 62

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Ivy Hill Corp.

Policy Limit:

Other Expenses: $0

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $1,270,000

Other Compensatory Award: $0

Total Compensatory Award: $1,270,000

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0


**FACTS:**
A 62-year-old former account executive sued the defendant company claiming age discrimination in violation of state law. The plaintiff alleged that the defendant wrongfully terminated her due to her age, that her most profitable accounts were taken

rom her, and that she was harassed by her supervisor. The defendant denied the allegations and claimed that the plaintiff was terminated due to a shutdown after the company was sold, and that it was the decision of the acquiring company as to whom it would hire. The defendant further contended that the plaintiff's most profitable account was taken from her t the request of the client.


Jury Verdict Research
COURT: Superior

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1104250047, 2011 WL 2912831 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

Superior Court, Orange County, California.

# LIEMANDT v. MEGA RV CORP.

30-2010-00388086

DATE OF TRIAL: February 04, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $435,000**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: John A. Belcher, Pasadena, CA
Jeremy Golan, Los Angeles, CA
Defendant: William J. Tebbe, Los Angeles, CA
Adam K. Obeid, Irvine, CA

JUDGE: Not Available

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Orange

**SUMMARY**
**PLAINTIFF:**
Sex: Male

Age: Adult, 68

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Mega RV Corp.

Policy Limit:

Other Expenses: $0

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $385,000

Other Compensatory Award: $0

Total Compensatory Award: $385,000

Punitive Damages: $50,000

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0


**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: true

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0


**FACTS:**
A 68-year-old salesman sued the defendant claiming age discrimination in violation of state law. The plaintiff contended that the defendant wrongfully terminated him due to his age after it demoted him from his management position to a sales position on his return to work after suffering a massive heart attack. The defendant denied the allegations and claimed that the plaintiff

was fired for poor performance and insubordination. It further claimed that more than 70 percent of its employees were more than 50-years-old.

Jury Verdict Research
COURT: Superior

---

**End of Document**                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

O'Connor vs. UHS-Corona Inc., 34 Trials Digest 14th 11 (2011)

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 171 of 206    Page ID #:199

34 Trials Digest 14th 11, 2011 WL 3606915 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
Superior Court, Riverside County, California.

# O'Connor vs. UHS-Corona Inc.

**TOPIC:**

Synopsis: Nurse alleges retaliatory termination in violation of CFRA

Case Type: Labor & Employment; Retaliation; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Family & Medical Leave; Defamation; Other; Labor & Employment; Violation of Public Policy

DOCKET NUMBER: RIC516507

STATE: California
COUNTY: Riverside

Verdict/Judgment Date: January 20, 2011

JUDGE: Lillian Y. Lim

**ATTORNEYS:**

Plaintiff: Jeffrey A. Rager, Rager Law Firm, Torrance; Melanie Rasic Savarese, Savarese Law Firm, Sierra Madre.

Defendant: Tracie Childs, Manning & Marder, Kass, Ellrod, Ramirez, San Diego; Al De La Cruz, Manning & Marder, Kass, Ellrod, Ramirez, San Diego.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $1,630,334

Range: $1,000,000-1,999,999

$130,334 past economic loss; $1,000,000 past non-economic loss; $500,000 future non-economic loss against defendants UHS-Corona Inc. dba Corona Regional Medical Center and UHS of Delaware Inc. During a concurrent bench trial, the court ruled that Universal Health Services Inc. was not a single or joint employer of plaintiff, and judgment was issued in favor of Universal Health Services Inc. as against plaintiff.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

O'Connor vs. UHS-Corona Inc., 34 Trials Digest 14th 11 (2011)

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 172 of 206   Page ID #:200

## CASE INFORMATION

### FACTS/CONTENTIONS

According to court records: On March 25, 2003, plaintiff Doreen O'Connor began her employment with defendants Corona Regional Medical Center, Universal Health Services Inc. ("UHS"), Brenda Schicker, Ruth Battles, and May Walsh as an RN on the nursery staff from 7:00 a.m. to 7:00 p.m.

On July 9, 2003, plaintiff's Performance Review read, "Doreen meets or exceeds all standards of performance. She is very willing to learn and very pleasant with patients and co-workers. It is a pleasure to have Doreen on staff, she has experienced some very busy shifts and is doing an excellent job."

On March 23, 2005, plaintiff was rated overall as "Exceeds Requirements." The review stated, "Doreen has been very helpful in some of the changes that have taken place in our department. She developed two of the tests that were used for competencies in our mother-baby department. Doreen is a very knowledgeable and skilled nurse here at Corona and we are lucky to have her here as part of our staff."

In April 2006, plaintiff was promoted to Charge Nurse. In October 2007, defendant Brenda Schicker was hired as Education Manager.

In February and March 2008, plaintiff was on a protected medical leave for diabetes and asthma. Upon return from her medical leave, she was presented with a performance review in May 2008. She received a lower rating and was told not to be "emotional" when presenting concerns to her director. Plaintiff was informed that she was "not giving as much as before because of her medical condition."

On October 8, 2008, plaintiff was informed she was fired by defendants Schicker, Battles, and Walsh. In the presence of others, plaintiff was accused of "harassing, stocking [sic], and spying, on the nursing staff." She was accused of "inappropriate behavior and inappropriate language." She was told that the staff felt "threatened" by her.

Plaintiff filed suit for Retaliation in Violation of the California Family Rights Act, Wrongful Termination in Violation of Public Policy, Retaliatory Termination in Violation of Public Policy, and Defamation Per Se.

### CLAIMED INJURIES

According to court records:

Emotional distress; major depressive disorder.

### CLAIMED DAMAGES

According to court records:

$125,723 loss of earnings.

### SETTLEMENT DISCUSSIONS

According to court records:

Not reported.

### COMMENTS

According to court records:

The complaint was filed on December 30, 2008.

Trials Digest, A Thomson Reuters/West business
Riverside County Superior Court/Central

Case 2:25-cv-03705-SB-SK   Document 3   Filed 04/25/25   Page 173 of 206   Page ID
#:201

O'Connor vs. UHS-Corona Inc., 34 Trials Digest 14th 11 (2011)

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

27 Trials Digest 14th 10, 2010 WL 6806990 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

Peacock vs. Quest Diagnostics

**TOPIC:**

Synopsis: Employee alleges discriminatory termination in violation of CFRA

Case Type: Labor & Employment; Discrimination; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Violation of Public Policy; Labor & Employment; Family & Medical Leave; Labor & Employment; Disability/ Medical Condition; Labor & Employment; Retaliation

DOCKET NUMBER: 09CV09206(JHN)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 15, 2010

JUDGE: Jacqueline H. Nguyen
**ATTORNEYS:**
Plaintiff: Christopher B. Adamson, Lavi & Ebrahimian, Los Angeles; Joseph Lavi, Lavi & Ebrahimian, Los Angeles.
Defendant: Deanna L. Ballesteros, Epstein, Becker & Green, Los Angeles; David Jacobs, Epstein, Becker & Green, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $229,638

Range: $200,000-499,999
$71,138 past economic; $8,500 future economic; $150,000 past non-economic.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

Case 2:25-cv-03705-SB-SK   Document 3   Filed 04/25/25   Page 175 of 206   Page ID #:203

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

According to court records: Plaintiff Janeen A. Peacock was an employee of defendant Quest Diagnostics, working as a Specimen Tech II from February 2003 until approximately January 16, 2008, when she was wrongfully terminated. In the later part of 2007, plaintiff's Manager and/or Supervisor, Raymond Candeleria, started causing plaintiff severe emotional distress and depression, which manifested itself in panic attacks which were witnessed by Candeleria. Plaintiff informed Candeleria that she had been under a lot of stress at work and that was the reason for her panic attacks, which, over the months, started to increase in frequency and/or duration.

In early January 2008, plaintiff had an outburst at work in front of Candeleria. Plaintiff started crying uncontrollably in front of Candeleria and told him that her outburst was due to severe distress at work.

On January 16, 2008, plaintiff checked herself into Northridge Hospital's Emergency Room due to severe depression. On January 17, 2008, plaintiff informed defendant's Human Resources that she had been admitted into hospital for severe depression and that she had been taken off work. Plaintiff was released on January 21, 2008 and was placed on disability by her treating physician until February 5, 2008. Upon release from the hospital, plaintiff informed defendant of her disability and mailed a copy of her doctor's note placing her off work and on disability.

On January 22, 2008, plaintiff contacted defendant's Benefit Department and informed them that she had to receive psychological treatment and group therapy from January 22, 2008 to February 1, 2008. She was informed that that was okay and that defendant would follow up with plaintiff in a few days.

On February 1, 2008, plaintiff was informed by her treating physician that her insurance had been canceled. Plaintiff contacted Human Resources to find out why and was told that they did not know why.

On February 1, 2008, plaintiff received a letter dated January 31, 2008, stating that defendant had terminated plaintiff's employment for job abandonment.

Plaintiff filed suit for Discriminatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2; Violation of the California Family Rights Act, California Government Code § 12945.2(a), Interfering with the Rights and Refusing an Employee's Request for a CFRA Medical Leave; Retaliatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2, for Requesting and Going on a Medical Leave; Tortious Termination and Discrimination in Violation of Public Policy; Disability Discrimination in Violation of FEHA; Discrimination Based on Perceived Disability in Violation of FEHA; Disability Discrimination in Violation of FEHA, Failure to Provide Reasonable Accommodation; Disability Discrimination in Violation of FEHA, Failure to Engage in Interactive Process; Retaliatory Termination in Violation of FEHA for Requesting a Reasonable Accommodation; Tortious Termination and Discrimination in Violation of Public Policy Based on FEHA; and Tortious Termination, Discrimination, and Failure to Hire in Violation of Public Policy for the Right to File a Workers' Compensation Claim due to Work Related Injury.

**CLAIMED INJURIES**

NA

**CLAIMED DAMAGES**

According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

Case 2:25-cv-03705-SB-SK   Document 3   Filed 04/25/25   Page 176 of 206   Page ID #:204

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

The complaint was filed on October 29, 2009.

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT I

Case 2:25-cv-03705-SB-SK   Document 3   Filed 04/25/25   Page 178 of 206   Page ID
#:206

2010 WL 5383296 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Los Angeles County, California.

# Mark A. Crawford v. DIRECTV Inc.

No. BC417507

DATE OF VERDICT/SETTLEMENT: September 29, 2010

TOPIC: EMPLOYMENT - DISABILITY DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE - EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - RETALIATION - EMPLOYMENT - CALIFORNIA'S FAIR EMPLOYMENT & HOUSING ACT

Worker With Ptsd Said He Was Forced to Watch Combat Footage

**SUMMARY:**
RESULT: Arbitration

Award Total: $353,172

The parties entered arbitration, and the arbiter found DIRECTV had failed to offer Crawford reasonable accommodations or engage in the interactive process required by FEHA after Crawford was placed on leave. He found no wrongful termination, retaliation or discrimination.

Crawford was awarded $149,234 for past lost income, $25,200 for non-economic damages, $159,762.50 for attorney fees, $11,123.30 for arbitration costs, and $7,851.80 for prejudgment interest.

**EXPERT WITNESSES:**
Plaintiff: David T. Factor; Economics; Pasadena, CA
**ATTORNEYS:**
Plaintiff: Vincent Calderone; Bononi Law Group; Los Angeles, CA (Mark A. Crawford)
Defendant: Dianne Baquet Smith; Sheppard, Mullin, Richter & Hampton; Los Angeles, CA (DIRECTV Inc.)

JUDGE: Sherman W. Smith

RANGE AMOUNT: $200,000-499,999

STATE: California
COUNTY: Los Angeles

**INJURIES: Crawford claimed he was terminated from his job due to DIRECTV's failure to grant him reasonable accommodation of his disability. He sought an unspecified amount for lost income and non-economic damages.**

**Facts:**
In 1999, plaintiff Mark Crawford, a veteran of the first Gulf War, was hired as a broadcast operator at DIRECTV's Los Angeles broadcast center. In October 2006, his schedule was changed from Sunday through Wednesday to Wednesday through Sunday. He requested a return to his original schedule, claiming he was participating in therapy for post-traumatic stress disorder on

his original days off. He also submitted a note from his social worker which stated that viewing violent images aggravated his condition. He was not returned to his original schedule.

In April 2007, Crawford was placed on administrative leave after two supervisors reported what they claimed was a threatening e-mail. After an evaluation, he was found medically unfit for his position due to his PTSD and placed on medical leave. He was terminated in April 2008 when the leave was exhausted.

Crawford sued DIRECTV, alleging violations of the Fair Employment and Housing Act, wrongful termination and retaliation. He claimed DIRECTV failed to offer him reasonable accommodations for his disability or engage in an interactive process after he was placed on leave. He alleged he requested a reasonable accommodation to a position where he would not be required to watch unedited combat footage, and that he knew of and was qualified for a number of such positions at the company. He claimed no discussions of accommodations were made after he was placed on medical leave.

DIRECTV argued that Crawford did not claim any disabilities prior to his schedule change and that it offered him reasonable accommodations such as days off, job transfers, or a leave of absence, but that he refused them. DIRECTV claimed no accommodations were possible after Crawford was placed on leave as he was never medically cleared to return to work. It further argued there were no available positions where Crawford would not be required to view violent images. The defense contended Crawford was terminated because he was not medically cleared to return to work at the time he ran out of medical leave time.

ALM Properties, Inc.
Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 48

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2014301
Not Officially Published
(Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)
Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts
citation of unpublished opinions in California courts.

Court of Appeal, Second District, Division 5, California.

Kenneth DAVIS, Plaintiff and Respondent,

v.

ROBERT BOSCH TOOL CORP.
et al., Defendants and Appellants.

No. B185408.
|
(Los Angeles County Super. Ct. No. BC310229).
|
July 13, 2007.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Victor E. Chavez, Judge. Affirmed in part
and reversed in part.

**Attorneys and Law Firms**

Connelly Sheehan Harris LLP, Rachel B. Cowen, Ellen
DeVoe Stuart and Michael Sheehan, pro hac vice; Swerdlow
Florence Sanchez Swerdlow & Wimmer, & David A.
Wimmer, and Janet Swerdlow for Defendants and Appellants.

Nikki Tolt; Jeffrey A. Brightwell; Benedon & Serlin,
Gerald M. Serlin and Douglas G. Benedon for Plaintiff and
Respondent.

**Opinion**

ARMSTRONG, Acting P.J.

**\*1** In our original opinion in this matter filed March 28,
2007, we reversed a judgment in favor of Davis against
Robert Bosch Corporation. Davis petitioned for a rehearing
contending that the judgment should be affirmed because we
had erroneously concluded that Robert Bosch Corporation
had filed a timely notice of appeal. We granted re-
hearing, vacated our decision, and requested briefing. Having
reviewed the briefs of the parties, we have determined, for a
reason different than the one stated in the original opinion,

that Robert Bosch Corporation's notice of appeal was timely.
Thus, there is no change in the judgment in this restated
opinion.

Ralph Kenneth Davis sued the Robert Bosch Tool
Corporation ("Bosch"), the Robert Bosch Corporation
("the Parent"), and Bosch executive Gary Tharp for
misrepresentation and deceit, breach of an implied contract
not to discharge except for good cause, age discrimination
in violation of FEHA, wrongful termination based on age in
violation of public policy, invasion of privacy, defamation,
and Labor Code violations.

The case went to trial on causes of action for breach of
implied contract not to fire without good cause, wrongful
termination based on age, defamation, and for unpaid wages.
Davis prevailed on the causes of action for breach of contract
and for unpaid wages. Defendants prevailed on the causes of
action for age discrimination and defamation.

Bosch and the Parent appealed, challenging the sufficiency
of the evidence for the jury verdict and the inclusion of the
Parent in the judgment. Davis cross-appealed, raising issues
concerning damages and costs. We reverse the judgment as to
the Parent, and in all other respects affirm.

Summary[1]

Bosch manufactures power tools. Davis was a Bosch
salesman. He began work at Bosch in 1982, and did well,
winning awards and receiving good performance evaluations.
He was paid a salary and commissions.

The facts concerning his dismissal involve a Bosch program
called SPIFF (Special Promotional Incentive Fund Field
Staff), under which Bosch, through district sales managers
like Davis, made small payments to store salesclerks who
sold specified Bosch tools. Bosch's evidence was that early
in 2002, it observed that Davis's SPIFF payments were
exceptionally large and that his SPIFF accounting was
otherwise problematic. It conducted an internal audit, put
Davis on an unpaid suspension, then hired an investigator,
Kroll and Associates, to further investigate. According to
Bosch, Davis was fired because he had falsified and forged
documents and violated the company's policies concerning
the SPIFF program. Davis's evidence was that many of his
SPIFF practices were in compliance with rules and/or had
been approved by supervisors, and that in any event he used

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 181 of 206    Page ID
#:209
Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)

the SPIFF program to sell more tools, for the benefit of the company. Further, Bosch's investigation was defective. Davis's case was that he was terminated due to his age.

On special verdicts, the jury found that Bosch or the Parent had promised by words or conduct not to discharge Davis except for good cause, that Davis had performed his job duties, that Bosch or the Parent had discharged him without good cause, and that he had suffered economic losses of $195,000; and, on the wage claim, that Bosch or the Parent had willfully withheld wages of $68,025. The jury found against Davis on the age discrimination and defamation causes of action. The court found that the wage claim was encompassed within the breach of contract award, and awarded waiting time penalties for the willfully withheld wages and prejudgment interest on those wages. On Davis's motion for attorney fees (Lab.Code, § 218.5) the court awarded $45,350. Both Davis and Tharp were awarded costs.

The appeal

   1. The notice of appeal
 **\*2**  Bosch's argument is that the trial court erred in denying its motion for judgment notwithstanding the verdict. Davis contends that we have no jurisdiction to hear the question, because the ruling is not encompassed in the notice of appeal.

We see no such obstacle. Bosch's notice of appeal states that it is an appeal "from the Judgment entered on June 7, 2005." It then states "Notice of Entry of Judgment was mailed by the Clerk in Department 96 on June 7, 2005. Defendant timely filed a Motion for New Trial, a Motion for Judgment not Withstanding the Verdict, and a Motion to Vacate Judgment, all of which were denied on July 19."

Our Supreme Court has instructed us to read a notice of appeal liberally, and given such a reading, we think that this notice of appeal is adequate to challenge the denial of the motion notwithstanding the verdict. *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15 considered a notice of appeal which stated only that the appeal was from an order denying a new trial, a non-appealable order. The Court held that "[b]ecause '[t]he law aspires to respect substance over formalism and nomenclature' [citation] a reviewing court should construe a notice of appeal from an order denying a new trial to be an appeal from the underlying judgment when it is reasonably clear the appellant intended to appeal from the judgment and the respondent would not be

misled or prejudiced." (*Id.* at p. 22, see also *Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 203 [under *Walker,* appeal from order sustaining demurrer without leave to amend is interpreted as appeal from the judgment].)

Here, as Davis argues, unlike *Walker,* the issue concerns not a non-appealable order denying a new trial, but an order which can be appealed. (Code Civ. Proc., § 904.1, subd. (a)(4).) However, *Walker* directs us to look to substance, not form. Bosch's notice of appeal specifically mentions the denial of the motion for judgment notwithstanding the verdict, and we think that it is reasonably clear that Bosch intended to appeal from the ruling. Nor can we find that Davis is prejudiced by our interpretation of the notice. The notice of appeal informed him that the ruling was at issue. Moreover, Bosch most certainly appealed the judgment, and the standard of review for appeal of a judgment notwithstanding the verdict is the same. (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)

   2. Waiver
Bosch's first issues on appeal are challenges to the sufficiency of the evidence for the finding of wrongful termination. Bosch contends that Davis did not present evidence to rebut the presumption of at will employment or prove that his discharge was not for good cause. Bosch also contends that the evidence was insufficient for the jury finding that Bosch owed wages. As Davis contends, Bosch has not presented us with a full record of the evidence presented to the jury. We thus must affirm.

 **\*3**  The missing evidence was proffered by Davis, who, as part of his case-in-chief, played portions of the videotaped depositions of Bosch Chief Financial Officer Katina Xouria, Bosch Director of Human Resources Sharon Glieberman, Bosch regional manager Bryan Jackman, former Bosch employee Noel Kidd, and Tony Alvizu of Kroll. The videotapes were not transcribed by the court reporter, and neither party offered the tapes or any transcript into evidence. Thus, despite the fact that Bosch designated the entire reporter's transcript, our record includes no evidence of the content of the tapes.

We may not reverse a judgment until we have examined "the entire cause, including the evidence." (Cal. Const., art. 6, § 13) We must presume in favor of the judgment, and that error must be demonstrated. "[I]t is settled that: 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it

on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' (3 Witkin, Cal. Procedure (1954) Appeal, § 79, pp. 2238-2239; *Minardi v. Collopy,* 49 Cal.2d 348, 353; *Coleman v. Farwell,* 206 Cal. 740, 742.)" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Bosch's argument on this point is that, since it designated the entire reporter's transcript, it was up to Davis to augment the record with the tapes. (Of course, since the tapes were neither transcribed nor entered into evidence, augmentation is not quite right. An agreed or settled statement would be required. (Cal. Rules of Court, rules 8.134 and 8.137).) In legal support, Bosch relies on *McMahon v. Superior Court* (1946) 29 Cal.2d 515 and *Skoglie v. Crumley* (1972) 26 Cal.App.3d 294.

*McMahon* arose from trial court proceedings to settle a transcript. The petitioner (the case involved a request for writ of mandate) had asked the trial court to settle and certify a transcript, but the motion was denied after a party below objected on grounds of lack of completeness. The Court explained that "It is apparent that the parties have been proceeding under the practice which obtained prior to the adoption of the new Rules on Appeal (22 Cal.2d 1), although these rules, which became effective July 1, 1943, are applicable to and govern this case. Under the new rules the trial judge is not charged with the function of 'settling' or certifying all transcripts; in the absence of a request for correction of an alleged mistake, the record is transmitted with the certification of the reporter (Rule 4(d), 22 Cal.2d 4) and of the clerk. (Rules 5(d), 8(a), 22 Cal.2d 5-6, 8.) The petition herein discloses that respondents in the main appeal filed a document entitled 'Objection to Settlement of Transcripts, Etc.,' in part on the ground that they did not constitute 'a full and complete transcript of the proceedings'; and that petitioner filed an 'Answer to Objections re Settlement of Transcripts,' in which he stated that he was forwarding to the court 'corrections' to be noted in the reporter's transcript. *The objection on the ground of lack of completeness is no longer tenable, and the remedy of a respondent, if he desires a complete transcript, is to designate the balance thereof.* (Rules 4(b), 5(b), 22 Cal.2d 3, 5.) If, however, corrections have been requested by either party, it is the duty of the trial judge to hear and determine the request, and thereafter to certify the transcripts, with such corrections, if any, as he may allow. (Rule 8(b), 22 Cal.2d 8-9.)" (*McMahon v. Superior Court, supra,* 29 Cal.2d at pp. 518-519[emphasis added.)

**\*4** Bosch cites the language italicized above, finding in it a holding that it is a respondent's duty to make up for omissions in the transcript. We see no such holding. *McMahon* does not concern an appellant's duty to provide an appellate court with the record necessary to determine the claims. The disposition tells the story: the Court issued a peremptory writ of mandate directing the trial court "to determine the request for correction of the transcripts, and thereafter to certify the transcripts as correct." (*McMahon, supra,* 29 Cal.2d at p. 519.)

In *Skoglie,* the appellant designated only those portions of the oral transcript he deemed relevant to the sole issue on appeal. Respondent augmented the record to some extent, but argued that because the Court of Appeal could not examine "the entire cause," it could not find error. *Skoglie* disagreed, noting that under the rules of court, "If an appellant, in his notice of appeal, states the point or points to be raised by him on the appeal, he may designate the portions of the oral proceedings to be transcribed or direct the omission of any portions which he deems unnecessary. If a respondent is not satisfied with the omissions of other portions, he may serve and file a designation of any additional oral proceedings he desires included in the record. (Cal. Rules of Court, rule 4(b).) When a reporter's transcript containing only a portion of the oral proceedings is thereafter certified by the judge or the clerk, it is presumed in the absence of proceedings for augmentation that it includes all matters material to a determination of the points on appeal." (*Skoglie, supra,* 26 Cal.App.3d at p. 297.)

In support of the later point, *Skoglie* cited California Rules of Court, rule 52, now California Rules of Court, rule 8.163, which provides that "The reviewing court will presume that the record in an appeal includes all matters material to deciding the issues raised. If the appeal proceeds without a reporter's transcript, this presumption applies only if the claimed error appears on the face of the record."

*Skoglie* concluded that "... although respondent contends we are required to review all of the evidence presented to the trial court before any determination can be made that prejudicial error occurred, he apparently has not considered the effect of rule 52. Respondent did not seek to enlarge the record on appeal by filing a counter-designation in the trial court and, apart from the limited augmentation obtained in this court, he has not sought further augmentation of the record, nor has he contended that the testimony of any other witness is relevant to the sole issue raised by appellant. We

therefore consider that the record before us is adequate for purposes of review, and that a full consideration of such record meets the constitutional requirements of section 13 of article VI." (*Skoglie, supra,* 26 Cal.App.3d at p. 298.)

Bosch's reliance on *Skoglie* misses a critical difference between that case and this one: in *Skoglie,* the appellant designated everything relevant to the sole issue on appeal. Here, Bosch has challenged the sufficiency of the evidence for the jury verdict, which means that *all* the evidence is relevant to its appeal. Evidence sufficient to support the verdict might be found in the testimony of the missing witnesses. We cannot know, and in the absence of such knowledge, we must presume that it is so.

**\*5** An appellant "must affirmatively demonstrate error by an adequate record. In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. '[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.' [Citation.]" (*Bennett v. McCall* (1993) 19 Cal.App .4th 122, 127.)

Bosch could have guaranteed the inclusion of all evidence in the appellate record by requesting transcription in the trial court, or moving to have the tapes marked as exhibits and entered into evidence, or it could have proceeded by settled statement on this appeal. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) It did none of those things, and cannot proceed on its sufficiency of the evidence claims.

3. The judgment against the Robert Bosch Company

As we have seen, there were two defendants at trial, Bosch and the Parent. The jury verdicts asked whether Bosch or the Parent, had, for instance, "promise [d] ... not to discharge Kenneth Davis except for good cause?" During preparation of the verdicts, the parties and the court agreed that the liability of the Parent would be a question for the court, to be decided after the verdict was returned.

Post-verdict, counsel for Davis prepared a judgment which included the Parent as a judgment debtor. Bosch and the Parent filed an objection. The court heard argument, and on June 7 signed a judgment which did *not* include the Parent. Davis then filed a motion under Code of Civil Procedure section 473 to correct the judgment by adding the Parent, titling the motion one to correct a clerical error, nunc pro tunc, and asserting that the Parent "was shown to be the employer of

Plaintiff by uncontroverted evidence." Bosch and the Parent objected.

At oral argument on July 19, 2005, the court indicated that it would grant Davis's motion, but explained that it was not making a ruling on alter ego, but was merely correcting the judgment to reflect the jury verdict. The minute order notes that the ruling was pursuant to Code of Civil Procedure section 473, and specifies the amendments. As amended, the judgment reads "It appearing by reason of said verdict that plaintiff Kenneth Davis is entitled to judgment against defendant Robert Bosch Tool Corporation or defendant Robert Bosch Corporation," and ordering "Plaintiff Kenneth Davis recovers from Defendant Robert Bosch Tool Corporation or defendant Robert Bosch Corporation the sum of $195,000.00...."

In August, during argument on defendants' motion for costs, Davis argued that since the Parent had been added to the judgment, Davis was the prevailing party. The court noted that the issue of the Parent's liability was still open, and requested additional briefing on the question. Something similar happened at a September hearing. At that hearing, the court deferred the issue until October.

**\*6** On October 25 the trial court issued a written ruling which, under the heading "Alter Ego Theory of Liability and/or Parental Liability of Defendant Robert Bosch Corporation," reads:

"On July 19, 2005, the Court added 'or Defendant Robert Bosch Corporation' to the June 7, 2005 judgment in order to more adequately reflect the language of the Special Verdict. By adding this language, the Court did not make a finding that Defendant Robert Bosch Corporation was a judgment debtor or that Defendant Robert Bosch Corporation was liable under an alter ego or parental liability theory. Since the conclusion of the trial, the Court expected and requested further evidence and argument regarding those theories of liability. Although Defendant Robert Bosch Tool Corporation and Defendant Robert Bosch Corporation have set forth substantive arguments regarding these issues, Plaintiff's documents never adequately addressed the issue of parental liability. Accordingly, the Court asked for additional briefing, and, as a result held over a determination on the alter ego and/or parental liability issue on at least three occasions. Plaintiff failed to provide such additional support or argument. [¶] The June 7, 2005 judgment against Defendant Robert Bosch Tool Corporation and/or Defendant Robert Bosch

Corporation is on appeal. Due to this pending appeal, the Court has now lost jurisdiction to make a determination on the alter ego and parental liability questions. CCP § 916. If jurisdiction had not been lost, based upon the Court's review of the evidence presented at trial, the Court would have concluded that Plaintiff had not satisfied the 'integrated enterprise test' set forth in *Laird v. Capital Cities* (1998) 68 Cal.App.4th 727, 737, and, therefore, Defendant Robert Bosch Corporation would not be liable."

In the written ruling and the minute order of that date, the court granted Davis's motion to tax costs, re the Parent, and struck the Parent's Memorandum of Costs.

There were then further proceedings in the trial court, commenced when Davis moved ex parte for a nunc pro tunc correction of the judgment due to an arithmetical mistake in the costs award. A copy of the June 7 judgment, signed by the court, and with the interlineations adding the Parent, was attached to the motion.

Defendants agreed that there was an arithmetical mistake, but opposed the motion on the ground that the judgment was not the correct judgment because it had never been entered as a judgment or served on the parties and because it was contrary to the court's ruling of October 25.

At oral argument on January 6, the Parent asked the court to enter a new judgment which would preserve its appeal rights. The court's January 6 order was that the June 7 judgment be amended nunc pro tunc to change the costs. On January 17, the Parent Corporation filed a new notice of appeal, appealing the January 6 judgment.

On this appeal, the Parent contends that "the January 6, 2006 addition of the Parent Company to the Judgment was legal error." The Parent argues that the evidence was insufficient, and also argues that the amendments to the judgment were not clerical, but substantive, and that the court had no power to make such amendments.

*Timeliness of the Appeal*

**\*7**  There is a threshold issue, the timeliness of the Parent's appeal. Davis argues that the notice of appeal, which was filed on January 17, 2006, was untimely. In Davis's view, the Parent had 60 days from July 19, 2005-the day on which the court amended the judgment nunc pro tunc, on Davis's motion-in which to appeal. In return, the Parent argues that under California Rules of Court, rule 8.104, subdivision (a)

(3), it had 180 days from July 19, 2005, to appeal, making its January notice of appeal timely. We agree with the Parent.

The 60 day rule is found in California Rules of Court, rule 8.104, subdivision (a), which provides that "a notice of appeal must be filed on or before the earliest of: (1)60 days after the superior court clerk mails the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, showing the date either was mailed; (2)60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, accompanied by proof of service; ..."

Here, the only thing served or mailed on July 19 was a copy of the minute order, which is not entitled "notice of entry of judgment." The 60 day rule does not apply. Instead, under California Rules of Court, rule 8.104, subdivision (a)(3), the Parent had 180 days after entry of judgment in which to appeal. The parties agree that (at the earliest) judgment was entered on July 19, 2005.

On re-hearing, the Parent has provided us with the correct calculation under the 180 day rule. When the first day is excluded, and weekends and holidays accounted for, pursuant to California Rules of Court, rule 1.10, the notice of appeal was timely. That is, 180 days from July 19 falls on January 15, a Sunday. The next day was a holiday, Martin Luther King Day. When both Sunday and Monday are excluded, the last day for filing was January 17, and the appeal was timely.

Nor can there be any doubt that the January 17 notice of appeal is sufficient to bring all the issues on the merits before us. "[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." (*Luz v. Lopes* (1960) 55 Cal.2d 54, 59.) Davis has clearly at all times understood that the January 17 notice of appeal is an appeal from the July 19 judgment. He impliedly acknowledged as much when he urged us to find that the notice of appeal was untimely, dated from July 19, and when moved to dismiss the appeal on the ground that the January 17 notice of appeal was not a timely appeal from the July 19 judgment.

*The merits*

We agree with the Parent that the July 19 amendments were not clerical corrections, but a substantive ruling, and were thus outside the court's power. Under Code of Civil Procedure

section 473, subdivision (d) "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, ..."

**\*8** " 'The general rule is that once a judgment has been entered, the trial court loses its unrestricted power to change that judgment. The court does retain power to correct clerical errors in a judgment which has been entered.... [Citation.]" (*Rochin v. Pat Johnson Manufacturing* (1998) 67 Cal.App.4th 1228, 1232.) "An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, ..." (*In re Candelario* (1970) 3 Cal.3d 702, 705.)

Davis's argument on this issue rests on its contention that the jury found that both Bosch and the Parent had breached their employment contract with Davis and owed him unpaid wages. Not so. The jury was asked whether Bosch *or* the Parent had breached a contract or owed wages, an entirely different matter.

Before the July 17 amendments, the Parent was not a judgment debtor, and could move for costs as a prevailing party. After the amendment, it was a judgment debtor, and could not. The July 17 amendments to the judgment were substantive, not clerical.

Davis also relies on the court's comment that it had only corrected a clerical error. The argument is a peculiar one. The court did make that comment, but it did so while under the misapprehension, induced by Davis, that the ruling did not make the Parent liable on the judgment. If that is indeed Davis's interpretation of the amended judgment, he should have no problem with the result we reach here.

Finally, the Parent asks us to find that it was a prevailing party entitled to costs. That is a matter for the trial court on remand.

Davis's Cross-Appeal

1. The ruling on the unpaid wages award
The jury was instructed that in order to determine damages for breach of employment contract, it must "decide the amount that Kenneth Davis would have earned from [Bosch and the Parent] up to today ... Two, add the present cash value of any future wages and benefits that he would have earned after

today for the length of time the employment with [Bosch and the Parent] was reasonably certain to continue. The special verdict form asked "What are Kenneth Davis's damages for breach of employment contract?" and asked the jury to specify past economic lost and future economic loss. The jury put the past lost at $195,000 and the future loss at zero.

The jury was also instructed that to establish his claim for unpaid wages, Davis was required to prove that he worked for Bosch and the Parent, was discharged by Bosch and the Parent, that Bosch and the Parent owed Davis wages under the terms of the employment, and the amount of the unpaid wages. The jury was also instructed that "wages includes all amounts for labor performed by an employee, whether the amount is calculated by time, task, fees, commissions, or other matters."

The special verdict asked whether Bosch or the Parent discharged Davis and whether Bosch or the Parent "owe Kenneth Davis wages under the terms of employment?" Having answered both questions "yes," the jury was then asked "What is the amount of unpaid wages?" and answered "$68,205."

**\*9** Davis's argument references the evidence that he was put on unpaid leave in September 2002, and fired in March 2003. The argument is that the unpaid wages award represented Davis's wages between his suspension in September 2002, and his termination of March 2003; and the award for past economic loss represents amounts owed for the period between Davis's termination and trial.[2]

We simply see nothing in the record which would allow us to agree. The jury was not instructed that past economic losses should be awarded for one time period and unpaid wages awarded for another, and we have no reason to believe that it did so.

2. Fees
Davis moved for attorney's fees under Labor Code section 218.5, which provides that "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." Davis presented evidence that over 2000 attorney hours had been billed and that $841,695 had been spent in fees. He sought a multiplier of two, based

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 186 of 206    Page ID
#:214
Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)

on the risks taken by counsel in pursing the action on a contingency basis, the skill displayed by counsel, and the importance of the case to the public, and sought an award of $1,683,390. The court awarded only $45,350.

Davis contends that the award was an abuse of discretion. He begins his argument by citing the rule that California recognizes the prompt payment of wages due as a fundamental policy. (*Smith v.. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 360.) He then argues that an award of fees under Labor Code section 218.5 should be calculated through the lodestar adjustment method applicable to other kinds of statutory fee awards, such as fees under FEHA or under Code of Civil Procedure section 425.16. With such a calculation, the court determines the lodestar amount by determining reasonable number of hours spent and the prevailing hourly rate, then may increase or reduce the amount based on such factors as the novelty and difficulty of the questions involved, the skill displayed, the extent to which the litigation precluded other employment by the attorneys, and the contingent nature of the fee award. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131-1132.)

Davis argues that the court did not make such a calculation here, but merely applied a mathematical formula, and awarded two-thirds of the award of unpaid wages, which is impermissible. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 322-323.)

Even if Davis is correct that the lodestar method applies, we see no abuse of discretion. First, Labor Code section 218.5 did not entitle Davis to fees for prosecuting his entire case, which included causes of action dismissed prior to trial, and causes of action (defamation, age discrimination, and invasion of privacy) on which Davis did not prevail and which would seem to have nothing to do with proof of the wage claim. Much of the trial was occupied with Davis's proof of the existence of an implied contract to terminate only for good cause, and proof that his SPIFF practices were legitimate and that Bosch's investigation was defective, issues that had little to do with the wage claim. A claim for wages owed does not depend on a finding of wrongful discharge. (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147.) When we presume in favor of the judgment (*Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816), we cannot conclude that the court merely applied a formula, but instead conclude that the court considered the bills and determined the number of hours reasonably spent. We also note that while counsel asked to be compensated at $350 an hour for one plaintiff's lawyer, and $300 an hour for the other, the court was not obliged to accept those requests. (*Ibid.*)

**\*10** We agree with Davis that given the amount of the award it is unlikely that the court applied a multiplier, but given that Davis asked the jury for over $3 million, and recovered much less, we do not see that the court abused its discretion in this regard.

3. The award of costs to Tharp

Bosch executive Gary Tharp was a defendant in the case, named only in the cause of action for defamation. In that cause of action, Davis contended that Tharp (and the other defendants) committed the tort by publishing the statements that Davis had been terminated, that Bosch was giving its files to the FBI, and that Bosch employees should distance themselves from Davis; by representing and implying to the industry and prospective employers that Davis was a criminal; and by "adding the further statement by innuendo that [Davis] was not competent to perform his job and carry out his chosen trade, occupation and profession." Tharp prevailed at trial, and later moved for costs of $19,133. The court made that award.

Davis contends that the award was an abuse of discretion. (*Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1209.) He notes that Tharp, one of three defendants, sought one-third of jury fees, expert witness fees, deposition costs, etc., and argues that none of these costs except a first appearance fee and part of Tharp's deposition costs related to Tharp's defense. In Davis's view, Tharp was entitled only to costs solely attributable to his own defense, and was not entitled to costs for anything that also benefited other defendants.

We see no abuse of discretion here. The trial largely involved Davis's activities relating to the SPIFF program and Bosch's investigation of those activities, directly relevant to the statements allegedly made by Tharp, and thus to the defamation claim. Further, we see no support in law for Davis's theory that Tharp is not entitled to costs if the cost also benefited the other defendants. This essentially amounts to a theory that, for instance, when all defendants request a jury, no defendant may recover those costs.

Davis makes two additional arguments concerning expert witness fees. One is that Tharp was not entitled to those costs because his offer to compromise (Code Civ. Proc., § 998) was not reasonable and in good faith. "A plaintiff who does not

accept a valid pretrial offer to compromise and who fails to obtain a more favorable judgment or award may be required to pay defendant's expert witness costs, so long as the section 998 offer was reasonable and made in good faith." (*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 470-471.) The reasonableness of the offer is determined by an examination of all the circumstances, and is left to the sound discretion of the trial court. (*Ibid.*) Where a defendant obtains a judgment more favorable than its offer, the judgment is prima facie evidence that the offer was reasonable. (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699.)

 **\*11**  Tharp's offer was that Davis would dismiss all claims against him and that each party would bear its own fees and costs. Davis recovered nothing from Tharp, making the offer, which would have spared Davis from paying costs, reasonable.

Davis's other argument about the expert fees is that neither expert was relevant to Tharp's defense. One of the experts testified on damages, surely relevant to any defendant. The other was Michael Robbins, a lawyer and consultant called by Davis, who opined on Bosch's investigation of Davis's malfeasance. As we have noted, the defamation claim was intertwined with the evidence concerning the SPIFF program and the investigation, making that expert's testimony relevant to Tharp. Moreover, our record does not include Robbins's deposition testimony, or the expert declaration relating to him. We thus cannot say what Tharp could have legitimately anticipated regarding Robbins's deposition, and what necessity Tharp saw for participating in that deposition.

Davis also contends that the court erroneously allowed amounts for witness meetings, court equipment, and parking charges. The argument ignores Code of Civil Procedure section 1033.5, subdivision (c)(4), which provides that "[i]tems not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion." Items not specifically allowable under Code of Civil Procedure section 1033.5, subdivision (a) and not prohibited under Code of Civil Procedure section 1033.5, subdivision (b) may be recoverable in the discretion of the court if reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation. (Code Civ. Proc., § 1033.5, subd. (c)(2).) Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and is reviewed for abuse of discretion. (*City of Anaheim v. Department of Transportation* (2005) 135 Cal.App.4th 526, 534-535; *Applegate v. St. Francis Lutheran Church* (1994) 23 Cal.App.4th 361, pp. 363-364.) Davis's bare argument does not establish abuse of discretion.

Disposition

We reverse the judgment as to the Parent, and in all other respects affirm. Gary Tharp and the Parent to recover costs on appeal. All other parties to bear their own costs.

We concur: MOSK and KRIEGLER, JJ.

**All Citations**

Not Reported in Cal.Rptr.3d, 2007 WL 2014301

Footnotes

1    Bosch's motion to augment the record with the transcript of hearings held on October 18 and 25, 2005, is granted.

2    In a footnote, Davis suggests that the possibility of double recovery was discussed (during argument on the special verdict form, and that the form was drafted to avoid that problem. At the cited pages of the record, counsel and the court certainly had some discussion of double recovery, at least with respect to the age discrimination and wrongful discharge causes of action. However, the court and counsel were working from draft forms which we do not have, so that we cannot really follow the conversation. We certainly cannot say (as Davis argues) that the court and counsel agreed that the form submitted to the jury prevented the jury from awarding a double recovery.

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S.
                                                                                           Government Works.

2006 WL 5305734 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, San Diego County, California

## Fred Denenberg v. California Department of Transportation

No. GIC836582

DATE OF VERDICT/SETTLEMENT: September 16, 2006

TOPIC: EMPLOYMENT - SEXUAL ORIENTATION DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE

Clerk Claimed Discrimination Based on Disability, Orientation

**SUMMARY:**
RESULT: Verdict-Plaintiff

The jury did not find any discrimination based on sexual orientation. It did, however, find the defendant failed to provide Denenberg with a reasonable accommodation and discriminated against him on the basis of a disability. The jury awarded Denenberg $119,000 in economic damages and $25,000 in noneconomic damages, for a total $144,000. The judge awarded him an additional $490,000 in attorney's fees and $133,000 in costs, and ordered the department of transportation to award him a retroactive promotion. The promotion will result in an additional $12,000 of annual earnings through his career as well as upward adjustments to his retirement benefits.

**EXPERT WITNESSES:**
Plaintiff: Brian P. Brinig, J.D., C.P.A.; Damage Analysis; San Diego, CA Christopher Benbo, M.D.; Psychiatry; La Jolla, CA George Pratt, Ph.D.; Psychology/Counseling; La Jolla, CA Michael A. Robbins; Human Resources Policies; Bell Canyon, CA Defendant: Mark A. Kalish, M.D.; Psychology/Counseling; San Diego, CA
**ATTORNEYS:**
Plaintiff: Paul D. Jackson; Law Offices of Paul D. Jackson; San Diego, CA (Fred Denenberg); David M. deRubertis; The deRubertis Law Firm; Woodland Hills, CA (Fred Denenberg)
Defendant: Christopher J. Welsh; California Department of Transportation; San Diego, CA (California Department of Transportation); Julie A. Jordan; CalTrans Legal Department; San Diego, CA (California Department of Transportation)

JUDGE: Steven R. Denton

RANGE AMOUNT: $100,000-199,999

STATE: California
COUNTY: San Diego

**INJURIES: Denenberg claimed that he suffered emotional distress and sought treatment from a psychologist. He also sought to recover the income he lost when he took a leave of absence to cope with the distress caused by the way his employer treated him.**

**Facts:**
In 1998 plaintiff Fred Denenberg, a gay man, was hired by the California Department of Transportation as an office technician, an entry-level position. He received excellent performance reviews and was promoted to assistant administrator. Starting in

Fred Denenberg v. California Department of Transportation, 2006 WL 5305734 (2006)

1999, he sought promotion to associate administrator, the next job level above his own. Such a promotion would normally occur in relatively short time, he alleged, but his requests were repeatedly denied. He was told that budgetary constraints had forced the company to put into place a hiring and promotions freeze. When the freeze was lifted on July 1, 2004, Joseph Hull, the deputy director of traffic operations, promised Denenberg that his promotion would be processed.

When Hull had not yet finished processing the paperwork by late August 2004 despite Denenberg's further complaints, Denenberg sought legal counsel. His attorney, Paul Jackson, sent the department's upper management a letter alleging that Denenberg had been the subject of harassment based on his sexual orientation and that the department had failed to promote him because he was gay. Afterward, Denenberg's superiors and co-workers leveled accusations of wrongdoing against him. The alleged wrongdoing included telling a co-worker to "kiss his ass," making derogatory comments about a co-worker's religion, slamming a door in a co-worker's face and acting in a rude manner toward co-workers and management.

In late September 2004, Denenberg, who claimed to be suffering from stress and depression related to his workplace, complained about a sexually related email sent from a co-worker a year earlier. At the instruction of a psychologist, he went on a leave of absence, and the department stopped processing his promotion.

In August 2005, one year after his original stress leave began, Denenberg's psychologist recommended that he be given an accommodation that allowed him to telecommute. Hull did not allow telecommuting, however, and denied the accommodation. The psychologist revised the accommodation to request that Denenberg return to the workplace but that any face-to-face interaction with the co-workers he claimed had retaliated against him be minimized. Hull denied that request as well.

When Denenberg was able to return to work without restriction, the department informed him it had eliminated his position and offered him six other positions that were equivalent or nearly equivalent to his former position. Denenberg declined them all.

Denenberg sued the California Department of Transportation for discrimination and retaliation on the basis of sexual orientation and discrimination and retaliation on the basis of disability. He contended that for a period of about 1.5 years he was harassed based on his sexual orientation; the alleged harassment consisted of perceived sexual advances, derogatory comments about his orientation and a degrading, homophobic email. He claimed that the department's refusal to promote him in September 2004 was in retaliation for the letter his attorney wrote complaining of harassment and discrimination. He also claimed that the department's stated reason for not promoting him--that he went on medical leave--indicated disability discrimination and showed that the company was retaliating against him for seeking accommodation of a disability. He further alleged that when his psychologist approved his return to work with a minimum of interaction with co-workers, there were desks and offices available that could have been used to meet this request.

The defendant denied any wrongdoing. It claimed that the reason Denenberg was not promoted was because he had either failed the promotional exam or did not receive a high enough score for placement. The state budget crises, the department's budget, and the lack of available work prevented promotions for new hires until June 30, 2004. Once the freeze was lifted, the plaintiff was promised a noncompetitive promotion. It contended that it had begun processing a noncompetitive promotion for Denenberg at the time he took his leave but stopped when he was out for almost two years and the department did not know when or whether he would return to work and that, under the Civil Service Act, the promotion could not go through because he was not at work to accept the new appointment. This had implications for his retirement and benefits.

The department also claimed that the request to telecommute was denied because the position required interaction with co-workers and the timely sharing of information. The department noted that over the course of nine months, it offered the plaintiff six alternative positions at the same classification and rate of pay but he refused all of them. Finally, the company denied any knowledge of the claimed harassment.

Before the trial began, the plaintiff dropped the claim that he should have been promoted before 2003. The state had a freeze on promotions and new hires between June 2003 and June 2004.

At trial, the defense impeached Denenberg's credibility by attacking his assertion that he had never been involved in any other lawsuits by introducing numerous lawsuits that he had either filed or were filed against him.

The defendant claimed that it was not his workplace problems that caused the plaintiff's medical condition but rather other stressors, such as a tumultuous relationship with his domestic partner who suffered from chronic medical problems. The defendant introduced evidence of domestic discord, including allegations of domestic abuse.

Insurer:

Self insured California Department of Transportation

ALM Properties, Inc.
Superior Court of San Diego County, at San Diego

PUBLISHED IN: VerdictSearch California Reporter Vol. 7, Issue 4

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT J

JVR No. 1403200023, 2013 WL 8115991 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

Superior Court, Los Angeles County, California.

## ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT

BC469940

DATE OF FILING: September 23, 2011
DATE OF TRIAL/SETTLEMENT: December 17, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $5,681,682**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiffs' complaint: 2011 WL 6463766

Verdict form: 2013 WL 6870002

Verdict form (punitive damages): 2013 WL 6869977

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: James R. Rosen, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Elizabeth L. Bradley, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Jonathan S. Dennis, Rosen Saba LLP, Beverly Hills, CA
Defendant: Eric J. Erickson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Christopher M. Habashy, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Marie Dominguez-Gasson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA

JUDGE: Yvette Palazuelos

RANGE AMOUNT: $5,000,000 - 999,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Martha Aboulafia: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Cheryl B. Colgin: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Patricia Monica: F

Age: Adult, 67

General Occupation: Food Service Worker

Sex: Regina Greene: F

Age: Adult, 46

General Occupation: Food Service Worker

**DEFENDANT:**
Sex: O

General Occupation: Restaurant, Nightclub or Tavern

Organization Type: GACN Inc. d/b/a Cable's Restaurant

**DAMAGES:**
Compensatory Pain & Suffering: Martha Aboulafia: $250,000

Compensatory Past Wages: Martha Aboulafia: $58,164

Compensatory Future Wages: Martha Aboulafia: $53,592

Total Compensatory Award: Martha Aboulafia: $361,756

Compensatory Pain & Suffering: Cheryl B. Colgin: $250,000

Compensatory Past Wages: Cheryl B. Colgin: $66,262

Compensatory Future Wages: Cheryl B. Colgin: $131,372

Total Compensatory Award: Cheryl B. Colgin: $447,634

Compensatory Pain & Suffering: Patricia Monica: $250,000

Compensatory Past Wages: Patricia Monica: $95,588

Compensatory Future Wages: Patricia Monica: $157,486

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 194 of 206   Page ID #:222

Total Compensatory Award: Patricia Monica: $503,074

Compensatory Pain & Suffering: Regina Greene: $250,267

Compensatory Past Wages: Regina Greene: $56,613

Compensatory Future Wages: Regina Greene: $62,338

Total Compensatory Award: Regina Greene: $369,218

Punitive Damages: $1,000,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**Entity Type: Service/Retail Company**
**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
**Primary Name: Age Discrimination**
Primary General Statute Discrimination: true

Specific Statute: General

**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**

58-year-old Martha Aboulafia, 58-year-old Cheryl B. Colgin, 46-year-old Regina Greene, and 67-year-old Patricia Monica, formerly employed as servers, sued GACN Inc. d/b/a Cable's Restaurant, for age discrimination, wrongful termination, in violation of California's public policy, and failure to provide rest periods and/or 30 minute meal periods, pursuant to Cal. Lab. Code Sec. 226.7. The plaintiffs claimed during their employment, they were never the subject of any negative reviews or

disciplinary actions until the restaurant came under new ownership, thereafter, they experienced negative treatment, a reduction in hours, and sudden complaints about job performance. They alleged after the transfer of ownership, suddenly they were systematically harassed, wrongfully terminated, and were replaced by younger female servers. Aboulafia, who worked for the defendant for more than 17 years, contended after the transfer of ownership, two days later she was terminated allegedly because business was slow, and she was told that an unidentified customer had complained about her. Colgin, who worked for the restaurant for more than 14 years, alleged she was also told two days after the transfer that she was no longer needed, but the manager called her again 10 minutes later, and fired her a second time, likely not remembering he had terminated her minutes earlier. Greene, who worked for the restaurant for three years, claimed that after the transfer, she was instructed to train newly hired younger female employees, but seven months later her manager falsely accused her of being under the influence of drugs and/or alcohol, terminated her, and subsequently falsely reported to the California Employment Development Department that she had voluntarily resigned in its attempt to avoid paying her unemployment benefits. Monica, who was employed for 13 years, asserted she was terminated two days after the transfer purportedly because her services were no longer needed, and business was slow. The defendant denied the allegations and contended it used nondiscriminatory factors to facilitate the layoffs, including identifying servers with flexible schedules and a willingness to work with all customers, and that it retained 11 servers employed by former management, and eight of those servers were within the protected class, ranging from 45 to 75 years old. The defendant also claimed the plaintiffs were allowed to take appropriate rest breaks. The jury awarded Aboulafia $1,361,756, Colgin $1,447,634, and Monica $1,503,074 for their age discrimination claims, and Greene's award included $952 for missed rest periods for a total award of $1,369,218.

Jury Verdict Research
COURT: Superior

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:25-cv-03705-SB-SK    Document 3    Filed 04/25/25    Page 197 of 206    Page ID #:225

10 Trials Digest 15th 7, 2011 WL 7447633 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2023 Thomson Reuters/West

United States District Court, C.D. California, Western Division.

## Ward vs. Cadbury Schweppes Bottling Group

**TOPIC:**

Synopsis: Truck drivers claim age discrimination resulted in constructive discharge

Case Type: Labor & Employment; Age; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: 09CV03279(DMG)

STATE: California

COUNTY: Not Applicable

Verdict/Judgment Date: December 7, 2011

JUDGE: Dolly M. Gee

**ATTORNEYS:**

Plaintiff: Michael F. Baltaxe, Law Offices of Michael F. Baltaxe, Westlake Village; Wendy K. Marcus, Law Offices of Timothy B. Sottile, Westlake Village; Timothy B. Sottile, Law Offices of Timothy B. Sottile, Westlake Village.

Defendant: Daryl M. Crone, Crone Hawxhurst, Los Angeles; Joshua Paul Gelbart, Crone Hawxhurst, Los Angeles; Gerald E. Hawxhurst, Crone Hawxhurst, Los Angeles; Diyari Vazquez, Crone Hawxhurst, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $17,899,400

Range: $5,000,000-999,999,999

Plaintiff Ward: $133,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $350,000 for past and future physical impairment, including psyche, hypertension, stomach, sleeplessness, anxiety, and chest pain; $1,800,000 punitive damages. Plaintiff Jones: $44,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $1,214,000 punitive damages. Plaintiff Suhay: $71,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including hernia and shoulder surgeries; $1,542,000 punitive damages. Plaintiff Valadez: $130,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $500,000 past and future physical impairment, including right knee surgery; $2,043,000 punitive damages. Plaintiff Talton: $144,000 past income; $500,000 past and future medical expenses; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including back and stress; $1,753,000 punitive damages. Plaintiff January: $140,000 past income; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including shoulder stress and strain; $1,335,400 punitive damages.

Trial Type: Jury

Trial Length: 13 days.

Deliberations: 1 day.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Jeff Nelken B.S., M.A., R.D., food safety, Woodland Hills, (310) 273-5492.; Karen Lynn Smith, M.A., economist, Adams Smith Economics, San Marino, (626) 796-4040.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiffs Robert M. Ward, Robert E. Jones, Jose M. Valadez, Leonard Talton, Gary Suhay, and Alfonso W. January were employed by defendants Cadbury Schweppes Bottling Group, Cadbury Schweppes Holdings Inc., 7-Up/RC Bottling Company of Southern California, Dr. Pepper Snapple Group, and American Bottling Company.

Plaintiffs alleged defendants, through upper management, implemented and enforced an unwritten policy of discrimination against older employees, including plaintiffs. Plaintiffs claimed defendants assigned the older truck drivers more difficult and physically taxing routes so they would quit or become injured, transferred the older forklift operators to more difficult and strenuous duties so that they would quit or become injured, piled work on plaintiffs so that they would quit or become injured, and wrote some plaintiffs up for frivolous and pre-textual reasons.

Plaintiffs alleged discrimination based on age, failure to prevent discrimination or retaliation, constructive discharge in violation of public policy, failure to engage in good-faith interactive process, and failure to accommodate.

**CLAIMED INJURIES**

According to court records:
Hypertension; stomach; sleeplessness; anxiety; chest pain; hernia; shoulder; knee; anxiety; emotional distress; back.

**CLAIMED DAMAGES**

According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed in Los Angeles Superior Court, case number BC410112. It was removed to federal court on May 8, 2009.

**Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)**

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT K



**MATERN LAW GROUP, PC**

1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
www.maternlawgroup.com
Tel: (310) 531-1900 | Fax: (310) 531-1901

July 16, 2024

**VIA E-MAIL**
Jon Meer
Romtin Parvaresh
Seyfarth Shaw LLP
2029 Century Park East, Suite 2500
Los Angeles, CA 90067-3021
jmeer@seyfarth.com
rparvaresh@seyfarth.com

>   **Re:**   *John Charky v. Beaver-Visitec International, Inc.*

**PERSONAL AND CONFIDENTIAL**
**FOR SETTLEMENT PURPOSES ONLY**

INADMISSIBLE IN ANY COURT PROCEEDING OR ARBITRATION UNDER RULES 408 AND 501 OF THE FEDERAL RULES OF EVIDENCE, CALIFORNIA EVIDENCE CODE §§ 1152 AND 1154, AND ALL OTHER APPLICABLE STATE AND FEDERAL LAWS AND PRIVILEGES

Dear Counsel:

Plaintiff John Charky ("Mr. Charky") hereby reinstates his prior settlement demand to resolve his individual claims against Beaver-Visitec International, Inc. ("BVI"). As detailed below, Mr. Charky was subjected to promissory fraud, age discrimination, failure to take steps necessary to prevent age discrimination, wrongful termination, and intentional infliction of emotional distress during his employment with BVI. Please be advised that the demand set forth herein is for a limited time and should in no way be construed as a ceiling if BVI refuses to accept it. Mr. Charky's demand will only increase if the parties cannot reach a settlement at this time.

**Factual Background**

BVI hired Mr. Charky as a Capital Equipment Specialist in October 2021 while he was still employed at Alcon Surgical in a comparable position, selling surgical capital equipment and disposables throughout California. Mr. Charky had worked at Alcon for nearly 30 years and had built a noteworthy reputation for himself and had developed deep-rooted professional relationships at the time BVI offered him the position. Significantly, Mr. Charky was the beneficiary of numerous accolades at Alcon, including being awarded the Master's Club distinction for being the top four salespersons at Alcon for seven years, and being the top salesperson at Alcon for one year.

**MATERN LAW GROUP, PC**

July 16, 2024
Page 2 of 6

While at Alcon, Mr. Charky also maintained leadership responsibilities, including training account managers at Alcon to assist in uncovering and selling disposables for cataract procedures along with the surgical equipment to remove cataracts in patients.   Moreover, throughout his tenure Mr. Charky sold four generations of cataract surgery systems to approximately 250 ophthalmologists throughout the state.

In order to induce Mr. Charky to leave Alcon and join BVI, BVI Sales Manager Ryan Mikulich, Director of Sales Lindsay Landenburg, and Vice President of US Sales Darin Dixon made the following promises to Mr. Charky:

- BVI would always have strong account managers
- Mr. Charky would receive a BVI credit card for expenses
- BVI's endoscopy system was "cutting edge"
- BVI would provide Beyonics 3D systems for Mr. Charky to sell
- BVI would have a strong cataract surgery system for Mr. Charky to sell

BVI's knowingly made these false promises, and Mr. Charky would not have accepted employment with BVI absent such promises.  In truth, BVI had very few account managers that were "strong."  The endoscopy system that BVI had was approximately 25 years old and far from the "cutting edge" technology promised.  The Beyonics 3D system was never made available for Mr. Charky to sell, which in turn severely impacted Mr. Charky's commissions.  The Beyonics 3D system was so behind in performance that it was removed from the market twice in 2022.  Further, the cataract surgery system promised was also delayed until 2025, and Mr. Charky was never able to sell it.  Finally, Mr. Charky was not issued a company credit card for many months after the start of his employment, and when he was finally issued a company card, there were a number of issues with it, including his name incorrectly spelled on the card.  But for BVI's empty promises, Mr. Charky would not have left his job at Alcon.  Mr. Charky was undeniably fraudulently induced to accept employment with BVI, to his detriment.

BVI also discriminated against Mr. Charky on the basis of his age and wrongfully terminated Mr. Charky's employment.  Mr. Charky performed his job competently and received nothing but praise from his superiors at all times during his employment with BVI.  Shortly after Mr. Charky began his employment, Mr. Mikulich began making comments about Mr. Charky's age in an effort to phase him out of the position and make him aware that he was not welcome.  In November 2021, a mere month after Mr. Charky began his employment with BVI, Mr. Mikulich stated, "If you decide to retire, give me a heads up to transition a new person." Mr. Mikulich repeated this sentiment in March 2022.  On October 26, 2022, BVI inexplicably terminated Mr. Charky's employment in advance of the two busiest months of the year (November and December).  Prior to Mr. Charky's termination, he had never received a poor evaluation, write-up, or warning regarding his performance.  While Mr. Charky was informed by management that he was being terminated due to "company reorganization," the only Capital Equipment Specialists that were terminated were Mr. Charky, age 65 and John McHenry, who was also in his mid-60s.

Based on this, BVI will be found liable for promissory fraud, age discrimination, wrongful termination, and intentional infliction of emotional distress.

**MATERN LAW GROUP, PC**

July 16, 2024
Page 3 of 6

## Mr. Charky Did Not Send "Glitter Bombs"

BVI's contention that Mr. Charky sent "glitter bombs" when he returned company equipment is unsupported and untenably false. Mr. Charky vehemently denies that he engaged in packaging the equipment with a "glitter bomb," and BVI has no evidence to support this claim. BVI's attempt to link Mr. Charky to a Sharkey's box due to a similar pronunciation of his last name is unsustainable. Nevertheless, such assertions are unrelated to Mr. Charky's claims of promissory fraud, age discrimination, wrongful termination, and intentional infliction of emotional distress.

## Promissory Fraud

Pursuant to the California Supreme Court's ruling in *Lazar v. Superior Court* (1996) 12 Cal. 4th 631, "[a]n action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." (*Chelini v. Nieri* (1948) 32 Cal.2d 480 ["tort of deceit" adequately pled where plaintiff alleges "defendant intended to and did induce plaintiff to employ him by making promises…he did not intend to (since he knew he could not) perform" (fn. omitted).]) As in *Lazar*, BVI made various fraudulent promises to Mr. Charky to induce him to leave his former so that BVI could capitalize off of Mr. Charky's three decades of sales experience and professional relationships in the field. It is clear that BVI's representations that it would provide Beyonics 3D systems, a strong cataract surgery system, and "cutting edge" endoscopy systems for Mr. Charky to sell were knowingly false and used as a means to coerce Mr. Charky to leave his former employer. Thus, BVI will be held liable for promissory fraud.

## Age Discrimination, Failure to Take Steps Necessary to Prevent Age Discrimination,  and Wrongful Termination

California Government Code § 12940, *et seq*. prohibits an employer from discriminating against an employee because of his age. Mr. Charky was over the age of forty all times during his employment, was performing his job satisfactorily, and was discharged under circumstances giving rise to an inference of unlawful discrimination. Shortly after Mr. Charky began his employment, BVI Sales Manager Mr. Mikulich began making comments about Mr. Charky's age, such as, "If you decide to retire, give me a heads up to transition a new person," in an effort to phase Mr. Charky out of his position. Mr. Charky and Mr. McHenry, both in their 60's, were the only Capital Equipment Specialists terminated by BVI due to the alleged "reorganization." Mr. Charky and Mr. McHenry were both top sales employees and did not have any performance issues at the time of their termination. Mr. Charky and Mr. McHenry were treated differently and terminated over similarly situated employees because of their age, and BVI failed to take steps necessary to prevent the age discrimination.

Thus, BVI will be found liable for age discrimination, failure to take steps necessary to prevent age discrimination, and wrongful termination in violation of public policy.

**MATERN LAW GROUP, PC**

July 16, 2024
Page 4 of 6

## Damages

### *Lost Wages and Future Loss of Earnings*

Mr. Charky's employment contract included a base salary of $100,000.00 ($3,846.15 paid bi-weekly) with the opportunity to make an additional $125,000.00 for the following calendar year ($10,416.66 each month) in commission payments on a pro rata basis for reaching assigned sales targets. Prior to the start of his employment at BVI, Mr. Charky worked at Alcon for nearly 30 years selling surgical capital equipment and disposables to ophthalmologists in surgery centers and hospitals throughout Los Angeles County. While at Alcon, Mr. Charky was awarded various accolades for exceptional performance, including being awarded the Master's Club distinction for being in the top four in sales on seven different occasions; and one year being awarded the top salesperson in the entire company. Accordingly, Mr. Charky anticipated to be compensated significantly in commission payments for meeting BVI's sales goals.

Mr. Charky was 64 years old at the time of his termination, which has made his ability to obtain subsequent employment extremely difficult. From approximately November 2022 to July 2024, Mr. Charky has incurred approximately $166,666.66 in lost wages due to his base salary, and approximately $208,333.33 in lost commissions, for a total of $375,000.00 in lost wages. Mr. Charky estimates an additional $225,000.00 in lost future wages from the time period of July 2024 to July 2025. Therefore, Mr. Charky's total estimated lost past and future wages are approximately $600,000.00.

### *Emotional Damages*

Mr. Charky has experienced significant emotional distress, including humiliation, anxiety, and insomnia as a result of the fraudulent inducement of employment by BVI. Prior to the fraudulent inducement, Mr. Charky maintained a successful social and professional life. While working at Alcon, Mr. Charky had built a stellar reputation for himself, and had created deep-rooted meaningful relationships with his customers for which he was incredibly proud. As a result of BVI's actions, Mr. Charky feels as though he threw away the prominent career that he had with Alcon, and has experienced a loss of self-esteem for relying on BVI's false promises. The shame and humiliation, and inability to obtain subsequent employment, has caused Mr. Charky anxiety and sleeplessness that continues to this day.

### *Punitive Damages*

Under California law, corporations may be held liable for punitive damages through the malicious acts or omissions of employees with sufficient discretion to determine corporate policy. *Larkin v. Home Depot, Inc.* (N.D. Cal. 2015) 2015 WL 1049716, at *2 (March 9, 2015), citing *Cruz v. HomeBase* (2000) 83 Cal. App. 4th 160, 167. California Civil Code section 3294(b) provides, "With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

**MATERN LAW GROUP, PC**

July 16, 2024
Page 5 of 6

In light of BVI's abhorrent conduct and the numerous violations of law, BVI is liable to Mr. Charky for punitive damages. BVI committed egregious, oppressive, and shocking conduct towards Mr. Charky.  BVI subjected Mr. Charky to fraudulent inducement of employment whereby Mr. Charky relied on BVI's empty promises to leave his stable employer of 30 years. BVI thereafter discriminated against Mr. Charky because of his age and wrongfully terminated his employment.  BVI was fully aware of the false promises and unlawful and egregious conduct, yet failed to take any steps whatsoever to prevent it.

As such, BVI engaged in the unlawful acts and omissions alleged herein, and by ratifying such acts, engaged in intentional, oppressive and malicious conduct, acted with willful and conscious disregard of Mr. Charky's rights, welfare and safety, and caused great physical and emotional harm to Mr. Charky. *See Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1151 (punitive damages appropriate when an employee was guilty of oppression, fraud or malice, and the employer authorized or ratified the wrongful conduct, or when the employer was itself guilty of the oppression, fraud or malice). Therefore, BVI's egregious conduct most certainly exposes it to liability for punitive damages.

### *Attorney's Fees and Costs*

Under the Fair Employment and Housing Act, BVI will be liable for Mr. Charky's attorneys' fees and costs should Mr. Charky prevail in this action.  Mr. Charky has already incurred significant attorney's fees and costs to date.  Given the extensive discovery and depositions that will necessary in this case, this amount will go up considerably in the upcoming months if the parties do not settle at this time.  Matthew J. Matern's current billable rate is $1,125.00 per hour, Deanna S. Leifer's current billable rate is $925.00 per hour, and Ellie D. Goralnick's current billable rate is $675.00 per hour.  If this case proceeds to trial, there is a high likelihood the court will grant a seven-figure award of attorney's fees plus over six figures in costs, in the event that Mr. Charky prevails.

Mr. Charky's counsel has sought—and recovered—multipliers of 2.0 in cases at which they prevailed at trial.  Our firm was awarded a $2.5 million judgment in an eight-day bench trial in front of the Honorable Bryant-Deason in Los Angeles Superior Court.  An attorney's fee award of $958,156.00 was granted after a 2.0 multiplier was awarded. Our firm was also awarded approximately $862,000.00 in a four-week trial of a sexual harassment case in Orange County.  In two sexual harassment cases, *Ventura v. ABM Industries, Inc., et al.,* Los Angeles Superior Court Case No. BC372347, and *Fuentes v. Autozone,* Los Angeles Superior Court Case No. BC312840, the court awarded our firm attorney's fees of approximately $1,000,000.00 in each case. In addition, our firm recently received a verdict of $491,911.00, including $145,000.00 in punitive damages, and an award of attorneys' fees and costs in the amount of $1,103,047.50 in the sexual harassment case *Aguilar v. Blaze Pizza, LLC,* Los Angeles County Superior Court Case No. BC651278.

### Settlement Demand

In an attempt to resolve this matter, Mr. Charky reinstates his former counsel's previous settlement demand in the amount of **$250,000.00** to settle his individual claims against BVI.  If

**MATERN LAW GROUP, PC**

July 16, 2024
Page 6 of 6

you would like to discuss this matter further, please do not hesitate to contact our office.  If we do not receive a response from you by July 29, 2024, we will assume that BVI has rejected Mr. Charky's settlement demand and proceed with litigation.  We look forward to your response and hope to reach a reasonable settlement of Mr. Charky's claims.

Very truly yours,

**MATERN LAW GROUP, PC**

Deanna Leifer